IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

PATRICK ROMANO, JOSHUA WILSON, )
KRYSTAL CHRISTENSEN, JEFFREY )
CORDARO, CARMEN WEAVER, )
MONICA MCGEE, and MARY BOLDEN, )
individually and on behalf of all others )
similarly situated, )
)
      Plaintiffs, )
vs. )
)
TORCH ELECTRONICS, LLC, )
     Serve: MSB Registered Agent, Inc. )
          305 E. McCarty Street, )   Case No.
          Ste. 300 )
          Jefferson City, MO 65101 )   **JURY TRIAL DEMANDED**
)
STEVEN MILTENBERGER, )
     Serve: 17650 Garden Ridge Cir. )
          Wildwood, MO 63038 )
)
WARRENTON OIL COMPANY, )
     Serve: R/A Daniel K. Barklage )
          211 N. Third St. )
          St. Charles MO 63301 )
)
MOHAMMED ALMUTTAN, )
     Serve at: 268 Turnberry Place )
          Wildwood, MO 63011 )
)
MALLY, INC., )
     Serve: R/A Rob A. Lutfiyya, )
          1750 S. Brentwood Blvd. )
          Suite 295 )
          Brentwood, MO 63144 )
)
RAMI ALMUTTAN, )
     Serve at: 516 Shadow Mountain Ct. )
          Ballwin, MO 63011 )
)
     Defendants. )

**CLASS ACTION COMPLAINT**

Plaintiffs Patrick Romano, Joshua Wilson, Krystal Christensen, Jeffrey Cordaro, Carmen Weaver, Monica McGee, and Mary Bolden, individually and on behalf of all others similarly situated, for their Class Action Complaint, allege:

1.      This is a class action lawsuit to recover losses suffered by Missouri consumers who have been injured in their property through their use of one or more of the thousands of illegal slot machines operated by Defendants throughout the State of Missouri.

**Parties, Jurisdiction, and Venue**

2.      Plaintiff Patrick Romano is an individual and a citizen of the State of Missouri.

3.      Plaintiff Joshua Wilson is an individual and a citizen of the State of Missouri.

4.      Plaintiff Krystal Christensen is an individual and a citizen of the State of Missouri.

5.      Plaintiff Jeffrey Cordaro is an individual and a citizen of the State of Missouri.

6.      Plaintiff Carmen Weaver is an individual and a citizen of the State of Missouri.

7.      Plaintiff Monica McGee is an individual and a citizen of the State of Missouri.

8.      Plaintiff Mary Bolden is an individual and a citizen of the State of Missouri.

9.      Defendant Torch Electronics, LLC ("Torch") is a Missouri limited liability company with its primary place of business at 305 E. McCarty Street, Suite 300, Jefferson City MO 65101.

10.      Defendant Steven Miltenberger ("Miltenberger") is an individual residing in St. Louis County, Missouri. He is a citizen of the State of Missouri. He can be served at 17650 Garden Ridge Cir., Wildwood MO 63038. Miltenberger is and has been at all relevant times a member of Torch and its highest ranking officer overseeing its day to day operations.

11.      Defendant Warrenton Oil Company ("Warrenton Oil") is a corporation organized and existing under the laws of the State of Missouri with its principal place of business at 2299

South Spoede Lane, Truesdale, MO 63380.

12.     Defendant Warrenton Oil owns and operates gas stations and convenience stores throughout the State of Missouri, including approximately 54 locations branded as "Fast Lane." The Fast Lane stores are located at the addresses listed on the attached **Exhibit A.**

13.     Defendant Mohammed Almuttan is an individual residing in St. Louis County, Missouri. He is a citizen of the State of Missouri. He can be served at 268 Turnberry Place, Wildwood, MO 63011.

14.     Defendant Rami Almuttan is an individual residing in St. Louis County. He is a citizen of the State of Missouri. He can be served at 516 Shadow Mountain Ct., Balwin MO 63011.

15.     Defendant Mohammed Almuttan and defendant Rami Almuttan (jointly, the "Almuttan Brothers") are brothers. They own and operate gas stations and convenience stores throughout the City of St. Louis and St. Louis County.

16.     Defendant Mally, Inc. ("Mally") is a Missouri corporation with its principal place of business at 7445 W. Florissant Ave., St. Louis MO 63136. At all relevant times, defendant Mohammed Almuttan has served as Mally's President, Secretary, and a member of its Board of Directors. Upon information and belief, the Almuttan Brothers are both shareholders of Mally and together manage its day-to-day operations.

17.      On or about April 6, 2022, defendant Mohammed Almuttan pled guilty to know-ingly violating 18 U.S.C. Sections 371 & 2342(a)) for his involvement in a conspiracy to defraud the United States through the sale of contraband cigarettes.  As part of his guilty plea, defendant Mohammed Almuttan admitted that he was responsible for the illegal sale of approximately 400,000 cartons of contraband cigarettes.

18.     Defendant Mohammed Almuttan was involved in a scheme to bribe Aldermen of

the City of St. Louis, including Board President Lewis Reed, 21st Ward Alderman John Collins-Muhammad, and 22nd Ward Alderman Jeffrey Boyd. This scheme led to the federal criminal conviction of the three Aldermen.

19.    On or about April 6, 2022, defendant Rami Almuttan plead guilty to knowingly violating 21 U.S.C. Section 841(a)(l) for his role in a conspiracy to distribute controlled substances, including 3,528.68 grams of synthetic cannabinoids and 1,018.98 grams of synthetic cathinones.

20.    Mally owns and operates a convenience store at 7445 W. Florissant Ave., St. Louis MO 63136.

21.    Jurisdiction is proper through federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise out of violations of, among other federal statutes, 18 U.S.C. § 1962.

22.    Venue is proper in the Western District of Missouri under:

    a.  18 U.S.C.§ 1965 because defendant Torch resides in this district, can be found in this district, has an agent in this district and transacts its affairs in this district; defendant Warrenton Oil can be found in this district and transacts its affairs in this district; and the affairs of the underlying gambling enterprise described herein are transacted in this district;

    b.   28 U.S.C. § 1391(b)(1) because defendant Torch resides in the district and all of the Defendants reside in the State of Missouri; and

    c.  28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district and a substantial amount of the slot machines giving rise to the claims are located in this district.

23.    Defendants' contacts with the Western District of Missouri are sufficient to subject

4

them to personal jurisdiction in the district if it were a separate state.

## Facts Applicable to All Counts

24.     Torch owns and operates thousands of electronic slot machines in the State of Missouri.

25.     The slot machines are manufactured by a North Carolina company, Banilla Games, Inc. ("Banilla"), which sells them to Torch.

26.     Torch imports the slot machines over state lines into Missouri.

27.     Torch installs and operates the slot machines at convenience stores, gas stations, bars, restaurants, and other public establishments throughout the State of Missouri pursuant to agreements it makes with the owners of such establishments.

28.     Upon information and belief, the agreements between Torch and owners of the establishments provide that Torch will:

    a. install, operate, and maintain the slot machines on the owner's premises;

    b. split the net proceeds generated by each slot machine with the owner of the premises where it is installed and operated; and

    c. indemnify the owner of each establishment for any liability the owner may face arising from the operation of the slot machines.

29.     Upon information and belief, the agreements between Torch and the owners of the establishments further provide that the owners of each establishment will:

    a. allow Torch to install the slot machines on the premises;

    b. employ cashiers to redeem tickets from the machines;

    c. maintain copies of the tickets redeemed the slot machines; and

    d. contact Torch to report any problems that arise from the slot machines.

5

30. Torch entered into agreements like those described above with defendants Warrenton Oil and Mally to operate slot machines at their convenience stores and gas stations.

31. On information and belief, defendant Miltenberger personally negotiated and signed the agreement to place Torch's slot machines in the business establishments.

32. On information and belief, the Almuttan Brothers personally negotiated and signed the agreements allowing Torch to place and operate three (3) slot machines at Mally's convenience store.

33. The Almuttan Brothers' convenience stores and gas stations were among the first locations in Missouri where Torch installed and operated slot machines.

34. On September 27, 2022, Miltenberger wrote a letter of support for defendant Rami Almuttan before his sentencing for his role in the conspiracy to distribute controlled substances. In this letter, Miltenberger stated that Rami Almuttan was "one of Torch Electronics first clients." A copy of Miltenberger's letter is attached here as **Exhibit B**.

35. In addition to the slot machines Torch owns and operates at locations owned by Warrenton Oil and Mally, Torch owns and operates thousands of additional slot machines at convenience stores, gas stations, bars, restaurants, and other places of public accommodation throughout Missouri. Attached as **Exhibit C** is a list of hundreds of known locations of slot machines owned and operated by Torch in Missouri.

36. All of Torch's slot machines operate using substantially similar software.

37. To play one of Torch's slot machines, a consumer must:

    a. deposit cash into the machine;

    b. select an amount to wager of between $0.25 and $2.00; and

    c. press a button causing digital reels on the device's screen to spin.

38. The outcome of each spin on a Torch slot machine depends on the amount wagered by the consumer and the pattern of symbols displayed when the reels stop spinning.

39. When a consumer inserts cash into one of Torch's slot machines, the amount deposited is displayed as a "balance" or as "credits" available to the consumer to wager.

40. When a consumer places a wager on a spin on a Torch slot machine, the amount wagered is deducted from the available balance or credits.

41. If a wager is successful, the winnings are added to the consumer's available balance or credits displayed on the slot machine.

42. When a consumer is done gambling on a Torch slot machine, they can convert a portion of their available balance or credits into cash by printing out a ticket from the slot machine and redeeming the ticket with a cashier or other employee of the establishment where the device is located.

43. Only a portion of the available balance or credits can be converted into cash by a consumer because the establishments where Torch's slot machines are placed round the balance or credits down to the next whole dollar increment, thereby forfeiting between $0.01 and $0.99 of the balance or credits whenever a consumer cashes out.

44. The difference between the cash deposited by consumers into Torch's slot machines and any cash paid out to the consumers playing the slot machines (the "Net Proceeds") is split between Torch and the owner of the establishment where the slot machine is located.

45. On those occasions where the cash to be paid out to a consumer exceeds an established amount, the cash cannot be redeemed locally at the establishment. Instead, a check for the payout is cut at Torch's headquarters in Cole County (in the Western District of Missouri) payable to the consumer for the amount of the cash less taxes withheld. The check is mailed by

7

U.S. Mail to the consumer at the address they provide.

46. Torch's slot machines mimic the appearance and gameplay experience of legal slot machines operated in licensed casinos throughout Missouri.

47. To reenforce the apparent similarity to legal slot machines, Torch's illegal slot machines are programed with game titles to give consumers the impression that significant sums of money can be won while playing. The names of these games include: Kitty Kash; Spook's Loot; Arabian Riches; Lucky's Loot; Major Cash; Oil Rush; St. Patty's Payday; Fabulous Las Vegas; Silver and Gold Spins; and Mega Money Reel.

48. Like the legal slot machines operated in licensed casinos in the State of Missouri, Torch's illegal slot machines are programed to present a dazzling visual display of bright, flashing colors to capture consumers' attention and reinforce the false prospect of winning large sums of money. Below are images showing samples of the gameplay experience available through Torch's illegal slot machines as published by the manufacturer Banilla:



8









49.     Torch's illegal slot machines are also programed with sound effects similar to those emitted by the legal slot machines found in licensed casinos. These sound effects include: jangly

music; the whir of spinning reels; and sequences of beeps, chimes, and rattling coins whenever the outcome of a spin is a win.

50.    Torch does nothing to restrict consumer access to its slot machines.

51.    Torch's illegal slot machines are accessible to vulnerable consumers, including gambling addicts and children, as a result of being placed in convenience stores, gas stations, restaurants, and other establishments open to the general public and patronized by the public for reasons other than gambling.

52.    Tens of thousands of Missouri consumers and children are unable to avoid exposure to Torch's enticing slot machines.

53.    By placing its illegal slot machines in thousands of gas stations, supermarkets, and other places of public accommodation throughout Missouri, Torch bombards consumers and children with frequent and pervasive opportunities to gamble, whether they intend to gamble or not.

54.    Unlike licensed casinos in the State of Missouri, Torch does nothing to restrict compulsive gamblers from placing wagers on its slot machines.

55.    Unlike licensed casinos in the State of Missouri, Torch does nothing to prevent individuals who have voluntarily placed themselves on the List of Disassociated Persons maintained by the Missouri Gaming Commission (a/k/a the "Problem Gambling list") from placing wagers on its slot machines.

56.    Unlike licensed casinos in the State of Missouri, Torch does nothing to prevent intoxicated consumers from wagering on its slot machines.

57.    Even children cannot escape being exposed to Torch's illegal slot machines.

58.    Unlike licensed casinos in the State of Missouri, Torch does nothing to prevent

children from accessing the premises where its slot machines are operated.

59.     Worse yet, Torch does nothing to prevent children from placing wagers on its slot machines.

60.     Children, including pre-teens and even toddlers, have been regularly observed gambling on Torch's illegal slot machines. Plaintiffs, many of whom are regular users of Torch's slot machines, report frequently seeing children playing the machines. Here are a couple of photos of children gambling on Torch's illegal slot machines:





61. Torch does not appear to take any precautions to protect the safety of consumers who play its slot machines. Unlike licensed casinos in the State of Missouri, Torch employs no security at any of the establishments where its slot machines are operated.

62. Unlike licensed casinos in the State of Missouri, Torch does not conduct surveillance of the premises where its slot machines are operated.

63. Torch also does not appear to take steps to ensure the integrity of its slot machines.

64. Unlike licensed casinos in the State of Missouri, Torch does not conduct criminal background checks of individuals with access to its slot machines' programming.

65. Unlike licensed casinos in the State of Missouri, Torch places its slot machines in the hands of convicted felons such as the Almuttan Brothers.

66. Although Torch's illegal slot machines look and sound like the legal slot machines

13

found in licensed casinos, Torch's slot machines do not provide payouts like the slot machines in licensed casinos.

67. The payout ratio between the cash deposited into Torch's slot machines by consumers and the cash paid out to the consumers (the "Net Payout %") is drastically lower than the minimum standard for slot machines established by 11 CSR 45-5.190, which requires a payout percentage of no less than 80% of all wagers, including bonus games, per ten (10) million spins using the volatility index calculated at a ninety-five percent (95%) confidence level.

68. The Net Payout % for Torch's slot machines is drastically lower than the actual payout percentages for slot machines operated at licensed casinos in the State of Missouri, which Net Payout % has exceeded 90% every month for the past five years.

69. Unlike licensed casinos in the State of Missouri, Torch does not display signage on or near its slot machines stating the actual aggregate Net Payout % for all of its devices from the previous calendar month.

70. Instead of paying consumers a payout ratio consistent with that required by the regulations controlling legal slot machines, Torch devotes a portion of its excessive Net Proceeds to hire lobbyists and contribute to political action committees to influence Missouri lawmakers to enact legislation to legalize its illegal slot machines.

71. Torch made at least the following contributions to political action committees in the last five (5) years:

| Date | Recipient | Amount |
|---|---|---|
| 7/18/2018 | United Missouri PAC | $10,000.00 |
| 10/3/2018 | Missouri Growth PAC | $6,250.00 |
| 5/29/2019 | Uniting Missouri PAC | $10,000.00 |
| 6/27/2019 | Missouri Senior PAC | $8,000.00 |
| 6/27/2019 | Missouri Senior PAC | $6,250.00 |
| 6/27/2019 | Missouri C PAC | $8,000.00 |
| 6/27/2019 | Missouri C PAC | $6,250.00 |

14

| Date | Recipient | Amount |
|------|-----------|--------|
| 6/27/2019 | Missouri Growth PAC | $8,000.00 |
| 6/27/2019 | Missouri AG PAC | $8,000.00 |
| 6/27/2019 | Missouri AG PAC | $6,250.00 |
| 6/27/2019 | MO Majority PAC LLC | $8,000.00 |
| 11/15/2019 | CL PAC | $10,000.00 |
| 6/28/2020 | Missouri Growth PAC | $90,000.00 |
| 2/1/2021 | MO Majority PAC LLC | $10,000.00 |
| 6/3/2021 | Missouri AG PAC | $33,333.33 |
| 6/4/2021 | Missouri Senior PAC | $33,333.33 |
| 6/4/2021 | Missouri C PAC | $33,333.00 |
| 6/6/2021 | Conservative Leaders of Missouri | $33,333.00 |
| 6/8/2021 | MO Majority PAC LLC | $33,333.00 |
| 6/9/2021 | Missouri Growth PAC | $33,333.33 |
| 10/27/2021 | MO Majority PAC LLC | $20,000.00 |
| 5/23/2022 | Conservative Leaders of Missouri | $40,000.00 |
| 5/23/2022 | Missouri Senior PAC | $40,000.00 |
| 5/23/2022 | Missouri Growth PAC | $40,000.00 |
| 5/23/2022 | MO Majority PAC LLC | $40,000.00 |
| 5/23/2022 | Missouri C PAC | $40,000.00 |
| 5/23/2022 | Missouri AG PAC | $40,000.00 |
| 12/30/2022 | Parson for Missouri | $2,650.00 |
| | **TOTAL** | **$657,648.99** |

72. Warrenton Oil also uses a portion of its share of the Net Proceeds to hire lobbyists and contribute to political action committees to influence Missouri lawmakers to enact legislation to legalize the illegal slot machines Torch operates at its locations.

73. Warrenton Oil has made at least the following contributions to political action committees in the last five (5) years:

| Date | Recipient | Amount |
|------|-----------|--------|
| 8/16/2018 | Missouri Leadership Forum | $10,000.00 |
| 6/3/2019 | Uniting Missouri PAC | $15,000.00 |
| 9/9/2019 | Missouri Leadership Forum | $15,000.00 |
| 9/9/2020 | Missouri Leadership Forum | $15,000.00 |
| 9/24/2020 | B PAC | $7,500.00 |
| 9/30/2020 | Old Drum Conservative PAC | $7,500.00 |
| 10/9/2020 | Mighty Missouri PAC | $6,000.00 |
| 10/12/2020 | Missouri Senate Leadership PAC | $7,500.00 |

15

| | | |
|---|---|---|
| 10/26/2020 | Tony PAC | $7,500.00 |
| 10/30/2020 | Northwest Missouri Leadership PAC | $7,500.00 |
| 6/3/2021 | Missouri AG PAC | $13,000.00 |
| 6/4/2021 | Missouri Senior PAC | $13,000.00 |
| 6/4/2021 | Conservative Leaders of Missouri | $13,000.00 |
| 6/5/2021 | Missouri C PAC | $13,000.00 |
| 6/9/2021 | MO Majority PAC LLC | $13,000.00 |
| 6/9/2021 | Missouri Growth PAC | $13,000.00 |
| 8/31/2021 | Missouri Leadership Forum | $15,000.00 |
| 6/1/2022 | Conservative Leaders of Missouri | $15,000.00 |
| 6/1/2022 | Missouri Senior PAC | $15,000.00 |
| 6/1/2022 | Missouri Growth PAC | $15,000.00 |
| 6/1/2022 | MO Majority PAC LLC | $15,000.00 |
| 6/1/2022 | Missouri C PAC | $15,000.00 |
| 6/1/2022 | Missouri AG PAC | $15,000.00 |
| 9/12/2022 | Uniting Missouri PAC | $10,000.00 |
| 9/14/2022 | Missouri Leadership Forum | $15,000.00 |
| 12/19/2022 | Liberty and Justice PAC | $1,000.00 |
| | **TOTAL** | **$307,500.00** |

74. Upon information and belief, Torch and Miltenberger each receive and accept:

   a. more than one bet per day for each of Torch's thousands of slot machines installed and operated throughout the State of Missouri; and

   b. more than $100 in bets per day for each of Torch's thousands of slot machines installed and operated throughout the State of Missouri.

75. Upon information and belief, Warrenton Oil, Mally and the Almuttan Brothers each receive and accept:

   a. more than one bet per day for each of Torch's slot machines installed and operated in their respective gas stations and convenience stores in the State of Missouri; and

   b. more than $100 in bets per day for each of Torch's slot machines installed and operated in their respective gas stations and convenience stores in the

16

State of Missouri.

**Plaintiffs' Individual Allegations**

76.    Plaintiff Patrick Romano has played Torch's slot machines on multiple occasions, including:

    a.    February 2, 2023, when he deposited $20 into a Torch slot machine located inside a Fast Lane branded gas station located at 512 N. 1st St., Jonesburg MO 63351, and lost $18;

    b.    January 28, 2023, when he deposited $20 into a Torch slot machine located inside Las Trojas Restaurant at 2930 W. Edgewood Dr., Jefferson City, MO 65109, and lost the entire amount; and

    c.    January 3, 2023, when he deposited $15 into a Torch slot machine located inside a Fast Lane branded gas station 3154 US Hwy 54, Kingdom City, MO 65262, and lost $3 after only a few minutes of play.

77.    Plaintiff Joshua Wilson has played Torch's slot machines multiple times a week for the last two (2) years, including on:

    a.    February 13, 2023, when he deposited $120 into a Torch slot machine located inside a Phillips 66 branded gas station at 2915 High Ridge Blvd., High Ridge MO 63049, and lost the entire amount;

    b.    January 7, 2023, when he deposited $20 into a Torch slot machine located inside a Phillips 66 branded gas station at 2915 High Ridge Blvd., High Ridge MO 63049, and lost $17;

    c.    January 6, 2023, when he deposited $100 into a Torch slot machine located inside a Phillips 66 branded gas station at 2915 High Ridge Blvd., High

17

Ridge MO 63049 and lost the entire amount; and

    d.  Many other occasions when he played Torch's slot machines at the following locations:

        i.  BP branded gas station at 101 Old Sugar Creek Rd., Fenton MO 63026;

        ii.  VP Racing Fuel branded gas station at 1091 Gravois Rd., Fenton MO 63026;

        iii.  House Springs Coin Laundry at 15 Walters Pl., House Springs MO 63051; and

        iv.  American Legion Hall at 910 Montebello Rd., Imperial MO 63052.

78.     Plaintiff Joshua Wilson has witnessed children appearing to be as young 10 years old gambling on Torch's slot machines located at:

    a.  House Springs Coin Laundry, 15 Walters Pl., House Springs MO 63051; and

    b.  BP branded gas station at 101 Old Sugar Creek Rd., Fenton MO 63026.

79.     Plaintiff Krystal Christensen has played Torch's slot machines multiple times a week for the last two (2) years, including on:

    a.  February 4, 2023, when she deposited $200 into a Torch slot machine located inside of a BP branded gas station located at 101 Ole Sugar Creek Rd., Fenton MO 63026, and lost the entire amount; and

    b.  Many other occasions when she played Torch's slot machines at the following locations:

        i.  Phillips 66 branded gas station at 2915 High Ridge Blvd., High

Ridge MO 63049;

    ii.  VP Racing Fuel branded gas station at 1091 Gravois Rd., Fenton MO 63026; and

    iii.  House Springs Coin Laundry at 15 Walters Pl., House Springs MO 63051.

80.    Plaintiff Jeffrey Cordaro has played Torch's slot machines multiple times a week over the last 3 years, including on:

    a.  February 16, 2023, when he deposited $20 into a Torch slot machine located inside a Fast Lane branded gas station at 301 Salt Lick Rd., St. Peters MO 63376, and lost the entire amount;

    b.  February 3, 2023, when he deposited approximately $450 into a Torch slot machine located inside a Fast Lane branded gas station at 301 Salt Lick Rd., St. Peters MO 63376, and lost the entire amount; and

    c.  Many other occasions when he played Torch's slot machines at the following locations:

        i.  Mobil branded gas station at 403 Mid Rivers Mall Dr., St. Peters MO 63376;

        ii.  Midwest Petroleum branded gas station at 2675 W. Clay St., St. Charles MO 63301; and

        iii.  LP Mart branded gas station located at 699 Salt Lick Rd., St. Peters MO 63376.

81.    Plaintiff Jeffrey Cordaro has previously seen individuals appearing to be under the age of 18 play Torch's slot machines at a gas station located in and around Southeastern Missouri.

19

82.     Plaintiff Carmen Weaver has played Torch's slot machines multiple times a week over the last few years, including:

      a.  On or about February 14 or 15, 2023, when she deposited $40 into a Torch slot machine located inside a Midwest Petroleum branded gas station at 8729 Jennings Station Rd., Jennings MO 63136, and lost the entire amount;

      b.  In early January, 2023, when she deposited approximately $15 into a Torch slot machine located inside of Mally Supermarket at 7445 W. Florissant Ave., St. Louis MO 63136, and lost the entire amount; and

      c.  Many other occasions when she played Torch's slot machines at both of these locations.

83.     Plaintiff Monica McGee has played Torch's slot machines multiple times a week over the last few years, including:

      a.  March 1, 2023, when she deposited $45 into a Torch slot machine located inside Hotshots Sports Bar & Grill at 12154 St. Charles Rock Rd., Bridgeton MO 63044, and lost the entire amount;

      b.  February 19, 2023, when she deposited $20 into a Torch slot machine located inside a BP branded gas station at 7430 Natural Bridge Road., Normandy MO 63121, and lost the entire amount;

      c.  on or about February 9 or 10, 2023, when she deposited $100 into a Torch slot machine located inside Hotshots Sports Bar & Grill at 12154 St. Charles Rock Rd., Bridgeton MO 63044, and lost the entire amount;

      d.  February 6, 2023, when she deposited $55 into a Torch slot machine located inside Beverly Hills Supermarket at 6714 Natural Bridge Rd., St. Louis MO

20

63121, and lost the entire amount; and

e. Many other occasions when she played Torch's slot machines at the aforementioned locations as well as Acapulco Restaurant & Lounge located at 10114 St. Charles Rock Rd., St. Ann, MO 63074

84. Plaintiff Monica McGee has seen children who look as young as 10 years old gambling on Torch's illegal slot machines.

85. Plaintiff Mary Bolden has played Torch's slot machines multiple times a week over the last few years, including:

a. February 16, 2023, when she deposited $40 into a Torch slot machine located inside a gas station at Wellston Food Market at 6250 Page Ave., St. Louis MO 63133.

b. many other occasions when she played Torch's slot machines at the following locations:

i. gas station located at 7329 St. Charles Rock Rd., St. Louis MO 63133; and

ii. Phillips 66 branded gas station located at 6150 Natural Bridge Ave., St. Louis MO 63120.

**Plaintiffs' Class-Wide Allegations**

86. Plaintiffs seek to represent a class of Missouri consumers defined as follows: All natural persons who deposited money into any electronic gaming device owned or operated by Torch Electronics, LLC, in the State of Missouri and not located on the premises of a Missouri-licensed casino, on any one or more days on or after March 3, 2018, and who received back following their play an amount of money less than the amount deposited that day. The proposed

class excludes the following persons: the individual defendants; any owner or officer of a corporate defendant; any lobbyist for Torch Electronics, LLC, or Warrenton Oil Company; and any person who owns a Missouri public place of accommodation that has an agreement with Torch Electronics, LLC, to have its slot machines or other electronic gaming devices on site.

87. The proposed class includes thousands of individuals members. The membership of the proposed class is so numerous that joinder of all of the members would be impracticable.

88. The claims of the individual members of the proposed class share common questions of law and fact which predominate over any individual issues. These common questions include the following:

    a. Whether Torch's electronic gaming devices are "slot machines" as defined in Section 572.010(11), RSMo.;

    b. Whether playing Torch's slot machines constitutes "gambling" as defined in Section 572.010(4), RSMo.;

    c. Whether Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers' placement and operation of slot machines, including Torch's entry into its agreements with the other defendants and with the owners of multiple places of public accommodation, constitutes the illegal "promotion of gambling" prohibited by Section 572.030.1, RSMo.;

    d. Whether Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers' daily receipt and acceptance of more than one bet and of more than $100 per day constitutes the illegal "promotion of gambling" prohibited by Section 572.030.1, RSMo.;

    e. Whether Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan

Brothers' receipt of more than $100 per day in money played on Torch's slot machines constitutes the illegal "promotion of gambling" prohibited by Section 572.030.1, RSMo.;

f.   Whether Torch's transmission of bets or wagers or other wire communications between its slot machines and its offices in Cole County and elsewhere is the knowing use of a wire communication facility in criminal violation of 18 U.S.C. § 1084;

g.   Whether Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers' placement and operation of slot machines in hundreds of locations in the State of Missouri is the conduct, financing, management, supervision, direction, or ownership of an illegal gambling business as prohibited by 18 U.S.C. § 1955;

h.   Whether Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers' actions involving gambling is chargeable as a crime punishable by more than one year in prison under Missouri state law;

i.   Whether Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers' actions as described in subparagraphs (c) through (f) above is "racketeering activity" as defined in 18 U.S.C. § 1961(1);

j.   Whether Torch, Miltenberger, Warrenton Oil, Mally and the Almuttan Brothers' actions as described above is a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5);

k.   Whether the conduct of the owners of the places of public accommodation who enter into agreements with Torch to host its slot machines and to make

23

such devices accessible to members of the consuming public, as defendants Warrenton Oil and Mally do, are: (1) chargeable as a crime punishable by more than one year in prison under Missouri law; (2) racketeering activity; and (3) part of a pattern of racketeering activity;

l.  Whether an association-in-fact enterprise exists among and between Torch, Miltenberger, Warrenton Oil, Mally, the Almuttan Brothers, and the other persons, both natural and artificial, who own the convenience stores, gas stations, bars, restaurants, and other places of public accommodation where Torch's slot machines are operated in the State of Missouri;

m. Whether Torch, Miltenberger, Warrenton Oil, Mally, or the Almuttan Brothers, either individually or in combination, conducted the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c);

n.  Whether Torch, Miltenberger, Warrenton Oil, Mally, or the Almuttan Brothers conspired to conduct the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d);

o.  Whether members of the Class suffered damages resulting from Torch, Miltenberger, Warrenton Oil, Mally, or the Almuttan Brothers' violations of 18 U.S.C. § 1962(c)-(d);

p.  Whether the operation of Torch's slot machines is an unlawful business practice under Section 407.020, RSMo.;

q.  Whether the Net Payout % of Torch's slot machines was a "material fact" as defined in 15 CSR 60-9.010(1)(C) required to be disclosed to consumers

of these gambling services;

r.  Whether the difference between the Net Payout % of Torch's slot machines and the payout percentages of legal slot machines in licensed casinos in the State of Missouri was a "material fact" as defined in 15 CSR 60-9.010(1)(C) required to be disclosed to consumers of these gambling services;

s.  Whether Torch's slot machines are programed with a "deceptive format" as that term is defined in 15 CSR 60-9.030(1);

t.  Whether Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers unlawful business practices as alleged would cause a reasonable consumer to play Torch's slot machines;

u.  Whether the amounts members of the Class lost playing Torch's slot machines can be calculated with a reasonable degree of certainty; and

v.  Whether Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers intentionally caused consumers of Torch's slot machines to lose money so as to justify the imposition of punitive damages under Section 510.261, RSMo.;

w.  Whether Torch's slot machines constitute a "game" or "gambling device" as either of those terms are used in Section 434.030, RSMo.;

x.  Whether the wagers made by consumers using Torch's slot machines constitute either a "bet" or "wager" as those terms are used in Section 434.030, RSMo.;

y.  Whether Torch's slot machines provide something of value to a player depending upon elements of chance;

25

z. Whether the outcome of any game played on Torch's electronic gaming devices depends upon elements of chance;

aa. Whether the Net Payout % of Torch's slot machines is less than the minimum standard for slot machines established in 11 CSR 45-5.190, which requires a payout totaling at least 80% of all wagers, including bonus games, per ten (10) million spins using the volatility index calculated at a ninety-five percent (95%) confidence level;

bb. Whether the Net Payout % of Torch's slot machines is less than the payout percentages for legal slot machines operated at licensed casinos in the State of Missouri, which has exceeded 90% every month for the past five years;

cc. Whether the visual and audio presentation of Torch's slot machines has a tendency or capacity to mislead consumers;

dd. Whether the operation of Torch's slot machines presents a risk of substantial injury to consumers;

ee. Whether the operation of Torch's slot machines causes substantial injury to consumers;

ff. Whether Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers' operated Torch's slot machines; and

gg. Whether individual consumers lost money playing Torch's slot machines.

89. The named Plaintiffs are typical of the other members of the Class.

90. Torch, Miltenberger, Warrenton Oil, Mally, the Almuttan Brothers anticipated defenses to the claims of the Class members present common issues and are expected to include:

a. their anticipated contention that Torch's slot machines are not "slot

26

machines" as defined under Section 572.010(11), RSMo.; and

    b.  their anticipated contention that Torch's slot machines do not depend on elements of chance.

91.    The named Plaintiffs will fairly and adequately protect the interests of the Class and of the absent Class members.

A class action is proper under Rule 23(b)(1) of the Federal Rules of Civil Procedure because requiring each individual member of the class to separately prosecute an individual action would create a risk of inconsistent or varying results which would establish inconsistent standards of conduct for the defendants and would result in similarly situated plaintiffs having different results. Furthermore, as a practical matter, the individual claims of the class members are generally too small to allow separate cases to be brought individually on those claims.

92.    A class action is also proper under Rule 23(b)(3) of the Federal Rules of Civil Procedure because the common questions of law and fact described above predominate over any questions affecting only individual members and because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## <u>COUNT I – CIVIL RICO</u>

93.    Plaintiffs incorporate the allegations above as though fully restated here.

94.    The Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

27

**The Enterprise**

95.     An associated-in-fact enterprise promoting and engaging in illegal gambling exists among Torch and Miltenberger and the owners of the convenience stores, gas stations, bars, restaurants, and other places of public accommodation where Torch's slot machines are installed and operated in the State of Missouri. The owners of such places of public accommodation include the other named defendants. This enterprise is referred to hereafter as the "Gambling Enterprise."

96.     The common purpose of the Gambling Enterprise is to attract consumers to, and generate illegal gambling profits from, Torch's slot machines.

97.     The Gambling Enterprise is organized as follows:

     a.  Torch and Miltenberger recruit the owners of places of public accommodation where Torch's slot machines might be installed (the "Location Owners") to join the Gambling Enterprise.

     b.  Torch purchases the slot machines from the manufacturer Banilla, installs the slot machines in the locations owned by the Location Owners, performs any maintenance or other services needed to keep the slot machines operating,  and handles the high dollar cash payouts.

     c.  The Location Owners, including defendants Warrenton Oil and Mally, provide locations where the slot machines can be operated exposure to the consumers who play the slot machines, and staff to oversee the day-to-day operation of the slot machines and handle the small dollar cash payouts.

98.     The Gambling Enterprise has an ascertainable structure that is distinct from the pattern of racketeering activity in that:

     a.  The Location Owners operate convenience stores, gas stations, bars,

28

restaurants, and other legitimate consumer businesses separate and apart from the slot machines at the locations where the slot machines are installed;

b.  The Location Owners benefit both from their share of the illegal gambling revenue and from the increased sales enjoyed by their legitimate businesses as a result of the increased consumer traffic of gamblers attracted to their locations;

c.  The Location Owners did not have to engage in the details of the illegal gambling business because Torch dealt directly with the manufacturer of the slot machines, imported them into the state, and set up and operated the slot machines; and

d.  Many of Gambling Enterprise's participants, including Torch and Warrenton Oil, made significant political contributions to elected officials in Missouri, both to disincentivize them from enforcing against members of the Gambling Enterprise laws prohibiting this illegal gambling and to encourage the enactment of new laws legalizing Torch's slot machines.

**Pattern of Racketeering Activity**

99.   Racketeering activity as defined by RICO includes any transmission of wagering information in violation of 18 U.S.C. § 1084. *See* 18 U.S.C. § 1961(1).

100.   Racketeering activity as defined by RICO includes conducting, financing, managing, supervising, directing, or owning all or part of an illegal gambling business in violation of 18 U.S.C. § 1955. *See* 18 U.S.C. § 1961(1).

101.   Racketeering activity as defined by RICO includes "any act or threat involving … gambling … which is chargeable under State law and punishable by imprisonment for more than

one year." *See* 18 U.S.C. § 1961(1).

102.    A "'pattern of racketeering activity' requires at least two acts of racketeering activity … the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

103.    The Gambling Enterprise and each of the defendants were involved in the transmission of wagering information using interstate facilities of wire communications in violation of 18 U.S.C. § 1084.

104.    The Gambling Enterprise and each of the defendants were involved in conducting, financing, managing, supervising, directing, or owning all or part of an illegal gambling business in violation of 18 U.S.C. § 1955.

105.    The Gambling Enterprise and each of the defendants knowingly profited from unlawful gambling activity by setting up and operating any slot machine. The Gambling Enterprise and each of the defendants have therefore each committed the offense of promoting gambling in the first degree under Missouri law. § 572.030, RSMo.

106.    The offense of promoting gambling in the first degree is punishable by a term of imprisonment of up to four years under Missouri law. § 558.011.1(5), RSMo.

107.    Under the Missouri law establishing the offense of promoting gambling in the first degree, a "slot machine" is defined as:

> a gambling device that as a result of the insertion of a coin or other object operates, either completely automatically or with the aid of some physical act by the player, in such a manner that, depending upon elements of chance, it may eject something of value. A device so constructed or readily adaptable or convertible to such use is no less a slot machine because it is not in working order or because some mechanical act of manipulation or repair is required to accomplish its adaptation, conversion or workability. Nor is it any less a slot machine because apart from its use or adaptability as such it may also sell or deliver something of value on a basis other than chance.

30

§ 572.010(11), RSMo.

108.    Torch's machines are slot machines under this Missouri statute because Torch's machines only operate after a consumer inserts money into the machine and the machine may return money to the consumer following play based on elements of chance.

109.    Under the Missouri law establishing the offense of promoting gambling in the first degree, "gambling" is defined as

> a person engages in gambling when he or she stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome. Gambling does not include bona fide business transactions valid under the law of contracts, including but not limited to contracts for the purchase or sale at a future date of securities or commodities, and agreements to compensate for loss caused by the happening of chance, including but not limited to contracts of indemnity or guaranty and life, health or accident insurance; nor does gambling include playing an amusement device that confers only an immediate right of replay not exchangeable for something of value. Gambling does not include any licensed activity, or persons participating in such games which are covered by sections 313.800 to 313.840.

§ 572.010(4).

110.    Playing one of Torch's slot machines is gambling under this Missouri statute because the consumers who use the machines risk money they have deposited into the machine based upon the outcome of the machine's spins and future results, which are outside of the consumer's control.

111.    Because Torch's slot machines are "slot machines" under Missouri law and playing these slot machines constitutes "gambling" under Missouri law, Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers have each committed a separate offense of promoting gambling in the first degree under Missouri law for each slot machine they have knowingly set up, operated, and profited from.

112.    Because of their violations of 18 U.S.C. § 1084, 18 U.S.C. § 1955, and of the

31

Missouri offense of offense of promoting gambling in the first degree, each of the defendants have committed acts of racketeering as defined by 18 U.S.C. § 1961(1), and each has engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1961(5).

113.   On September 22, 2020, the Circuit Court of Linn County, Missouri convicted an unrelated entity, Integrity Vending, LLC, in Cause No. 20LI-CR00411-01 (the "Linn County Conviction") for the crime of promoting gambling in the first degree by operating slot machines manufactured by Banilla which were essentially identical to the slot machines owned by Torch and operated by the Gambling Enterprise.

114.   The Linn County Conviction was fully litigated through trial, resulting in a criminal conviction, notwithstanding the vigorous defense mounted by Integrity Vending, LLC.

115.   The Linn County Conviction required proof beyond a reasonable doubt that the Banilla slot machines owned and operated by Torch in the State of Missouri are slot machines under § 572.010(11), RSMo.

116.   Torch and the other defendants should be collaterally estopped from disputing that the Banilla slot machines are slot machines for purposes of § 572.010(11), RSMo., by the Linn County Conviction on the basis of non-mutual offensive collateral estoppel.

117.   Application of the doctrine of non-mutual offensive collateral estoppel here would not be unfair because the Linn County Conviction required the use of the far higher burden of proof applicable in criminal proceedings, compared to that used in a civil action, and because the defendant in the Linn County Conviction was represented by counsel and mounted a vigorous defense.

118.   Beginning in 2018, if not earlier, Torch and Miltenberger committed thousands of separate offenses of promoting gambling in the first degree in violation of § 572.030, RSMo.

119.     Torch and Miltenberger each committed a separate offense of promoting gambling in the first degree each time they:

   a.   Set up and operated one of Torch's thousands of slot machines in the State of Missouri;

   b.   Received or accepted in any one day more than one bet and more than $100 in bets on Torch's slot machines; and

   c.   Received more than $100 in any one day of money played on their slot machines in the State of Missouri.

120.     Beginning in 2018, if not earlier, Warrenton Oil, Mally, and the Almuttan Brothers committed thousands of separate offenses of promoting gambling in the first degree in violation § 572.030, RSMo.

121.     Warrenton Oil, Mally, and the Almuttan Brothers each committed a separate offense of promoting gambling in the first degree each time they:

   a.   Set up and operated one of Torch's slot machines at their respective gas stations and convenience stores in the State of Missouri;

   b.   Received or accepted in any one day more than one bet and more than $100 in bets on the Torch's slot machines operating at their respective gas stations and convenience stores in the State of Missouri; and

   c.   Received more than $100 in any one day of money played on Torch's slot machines at their respective gas stations and convenience stores in the State of Missouri.

122.     Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers engaged in racketeering activity through conducting, financing, managing, supervising, directing and owning

33

all or part of an illegal gambling business in violation of 18 U.S.C. § 1955(a) with respect to the operation of Torch's thousands of slot machines in the State of Missouri, in that their activity:

    a.  Violates Missouri law;

    b.  Involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of the business; and

    c.  Was and remains in substantially continuous operation for a period in excess of 30 days and generating gross revenue of at least $2,000 in any single day.

**Defendants Conducted the Affairs of the Gambling Enterprise
Through A Pattern of Racketeering Activity**

123.    Torch conducted the affairs of the Gambling Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c) by knowingly setting up, operating, and profiting from thousands of slot machines throughout the State of Missouri.

124.    Miltenberger conducted the affairs of the Gambling Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c) by personally negotiating and entering into agreements on Torch's behalf with owners of the convenience stores, gas stations, bars, restaurants, and other places of public accommodation, knowingly setting up, operating, and profiting from Torch's thousands of slot machines throughout the State of Missouri.

125.    Warrenton Oil and Mally conducted the affairs of the Gambling Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c) by knowingly authorizing Torch to set up the illegal slot machines on the premises of their otherwise legitimate businesses, overseeing the day-to-day operations of the slot machines on their premises, and profiting from the slot machines.

126.    The Almuttan Brothers conducted the affairs of the Gambling Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c) by personally negotiating and

entering into agreements on Mally's behalf with Torch to knowingly set up, operate, and profit from illegal slot machines on their business premises in the State of Missouri.

### Defendants Conspired to Conducted the Affairs of the Gambling Enterprise Through A Pattern of Racketeering Activity

127. Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers further conspired to conduct the affairs of the Gambling Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(d) by each knowingly and purposefully entering into an agreement to participating in operating and profiting from Torch's illegal slot machines by installing them throughout the State of Missouri with knowledge that the conduct was illegal gambling.

### Damages

128. As a direct result of Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers' violations of 18 U.S.C. §1962(c)-(d):

    a. Plaintiff Patrick Romano lost the $38 identified above;

    b. Plaintiff Josh Wilson lost the $240 identified above and considerably more in addition;

    c. Plaintiff Krystal Christensen lost the $200 identified above and considerably more in addition;

    d. Plaintiff Jeff Cordaro lost the $470 identified above and considerably more in addition;

    e. Plaintiff Carmen Weaver lost the $55 identified above and considerably more in addition;

    f. Plaintiff Monica McGee lost the $120 identified above and considerably more in addition;

35

g.  Plaintiff Mary Bolden lost the $40 identified above and considerably more in addition; and

h.  The absent members of the class each lost amounts unknown at this time, but which are believed cumulatively to exceed $5,000,000.

129.  Pursuant to RICO statutory remedies, plaintiffs are each entitled to recover three times their actual damages plus their costs of bringing this action, including their reasonable attorney fees.

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, requests the Court grant them the following relief:

a.  Enter an order certifying this action as a class action and appointing Plaintiffs as the class representatives;

b.  Enter an order appointing Amundsen Davis, LLC and Jacobson Press P.C. as class counsel;

c.  Enter an order requiring defendants to pay the costs and expenses of class notice and claims administration;

d.  Enter judgment in favor of Plaintiffs and the class against Torch, Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers for three times their damages, prejudgment and post-judgment interest, and attorney fees as authorized by 18 U.S.C. § 1964;

e.  Grant declaratory and injunctive relief stopping defendants from continuing with their illegal gambling business; and

f.  Award Plaintiff and the class such further and other relief as to which they may be entitled.

36

## COUNT II: VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT ("MMPA") (All Defendants)

130.    Plaintiffs incorporate the allegations above as though fully restated here.

131.    Under the MMPA: "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce … is declared to be an unlawful practice." § 407.020, RSMo.

132.    Torch, Miltenberger, Warrenton Oil, Mohammed Almuttan, Rami Almuttan, and Mally are each a "person" as that term is defined in the MMPA. §407.010(5), RSMo.

133.    By inserting money into Torch's slot machines, Plaintiffs each purchased "merchandise" as that term is defined in the MMPA § 407.010(4), RSMo. *See Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120, 131 (Mo. App. E.D. 2009) ("The casino player, by dropping a token into the machine, is purchasing the intangible chance of winning or, in other words, the intangible right to a product upon the happening of certain conditions").

134.    Each of Plaintiffs' purchase of "merchandise" by gambling on Torch's slot machines was for personal, family, or household purposes.

135.    The Net Payout % of Torch's slot machines is a "material fact" as defined under 15 CSR 60-9.010(1)(C) because a reasonable consumer would likely consider the fact to be important in making a purchasing decision, or because it would be likely to induce a person to manifest their assent to the purchase, or because the seller knows that the fact would be likely to induce a particular consumer to manifest their assent, or because it would be likely to induce a reasonable consumer to act, respond, or change their behavior in a substantial manner.

136.    That the Net Payout % of Torch's slot machines was less than the minimum standard for slot machines established by 11 CSR 45-5.190 (which requires a payout totaling at

least 80% of all wagers, including bonus games, per 10 million spins using the volatility index calculated at a 95% confidence level) is a "material fact" as defined under 15 CSR 60-9.010(1)(C) because a reasonable consumer would likely consider the fact to be important in making a purchasing decision, or because it would be likely to induce a person to manifest their assent to the purchase, or because the seller knows that the fact would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change their behavior in a substantial manner.

137.     The difference between the Net Payout % of Torch's illegal slot machines and the actual payout percentages of legal slot machines in licensed casinos in the State of Missouri devices is a "material fact" as defined under 15 CSR 60-9.010(1)(c) because a reasonable consumer would likely consider the fact to be important in making a purchasing decision, or because it would be likely to induce a person to manifest their assent to the purchase, or because the seller knows that the fact would be likely to induce a particular consumer to manifest their assent, or because it would be likely to induce a reasonable consumer to act, respond or change their behavior in a substantial manner.

138.     Defendants engaged in the following unlawful business practices in violation of the MMPA and the regulations under the MMPA:

a.   Operating illegal slot machines in violation of gambling laws intended to protect the public presents a risk of, and in fact do cause, substantial injury to consumers. *See* 15 CSR 60-8.90 ("It is an unfair practice for any person in connection with the advertisement or sale of merchandise to engage in any method, use or practice which— (A) Violates state or federal law intended to protect the public; and (B) Presents a risk of, or causes

substantial injury to consumers.");

b. Concealing, suppression, omitting, and otherwise failing to disclose the Net Payout % of Torch's slot machines;

c. Concealing, suppression, omitting, and otherwise failing to disclose that the Net Payout % of Torch's slot machines was less than minimum standard for slot machines established by 11 CSR 45-5.190;

d. Concealing, suppression, omitting, and otherwise failing to disclose the difference between the Net Payout % of Torch's illegal slot machines and the actual payout percentages of legal slot machines in licensed casinos in the State of Missouri; and

e. Operating illegal slot machines with gameplay software constituting a "deceptive format" as that term is defined by 15 CSR 60-9.030(1) by suggesting an exaggerated possibility of winning money while playing the slot machines.

139.    As a direct result of Defendants' unlawful practices in violation of the MMPA as described, Plaintiffs suffered damages consisting of:

a. the cash each inserted into Torch slot machines lost while playing and not returned; or

b. alternatively, the difference between the amounts Plaintiffs each actually lost playing Torch's slot machines and what each would have likely lost had the Torch slot machines' Net Payout % satisfied the minimum standards established by 11 CSR 45-5.190; or

c. alternatively, the difference between the amounts Plaintiffs each actually

39

lost playing Torch's slot machines and what each would have likely lost had the Torch slot machines' Net Payout % been consistent with the payout percentages of legal slot machines operated in licensed casinos in the State of Missouri.

140.    Plaintiffs' individual damages can therefore be supported with sufficiently definitive and objective evidence to allow their loss to be calculated with a reasonable degree of certainty as stated in § 407.025(2)(c), RSMo.

141.    At all times, Plaintiffs acted as reasonable consumers.

142.    Defendants' unlawful practices directly caused or contributed to cause Plaintiffs to play Torch's slot machines.

143.    Plaintiffs are entitled to recover their actual damages and their attorneys fees and costs incurred to bring this lawsuit as provided by § 407.025, RSMo.

144.    Defendants' conduct was willful, intentional, and exhibited deliberate indifference to the property rights of Plaintiffs, the absent class members, and Missouri consumers generally

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, requests the Court grant them the following relief:

a. Enter an order certifying this action as a class action and appointing Plaintiffs as the class representatives;

b. Enter an order appointing Amundsen Davis, LLC and Jacobson Press P.C. as class counsel;

c. Enter an order requiring defendants to pay the costs and expenses of class notice and claims administration;

d. Enter judgment in favor of Plaintiffs and the class against Torch,

40

Miltenberger, Warrenton Oil, Mally, and the Almuttan Brothers for treble damages and attorneys' fees as provided by the Missouri Merchandising Practices Act, and award Plaintiffs and the class prejudgment and post-judgment interest;

e.  Grant declaratory and injunctive relief stopping defendants from continuing with their illegal gambling business; and;

f.  Award Plaintiff and the class such further and additional relief as to which they may be entitled.

**COUNT III: MONEY LOST UNDER § 434.030, RSMO.**

145.    Plaintiffs incorporate the allegations above as though fully restated here.§ 434.030, RSMo., states: "Any person who shall lose any money or property at any game, gambling device or by any bet or wager whatever, may recover the same by a civil action."

146.    Plaintiffs and the absent class members lost money by playing Torch's slot machines and are entitled to recover the same under § 434.030.

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, requests the Court grant the following relief:

a.  Enter an order certifying this action as a class action and appointing Plaintiffs as the class representatives;

b.  Enter an order appointing Amundsen Davis, LLC and Jacobson Press P.C. as class counsel;

c.  Enter judgment in favor of Plaintiffs and the class against defendants refunding the money they lost playing Torch's slot machines, and awarding Plaintiffs and the class prejudgment and post-judgment interest on such

41

sums;

d. Enter an order requiring defendants to pay the costs and expenses of class notice and claims administration; and

e. Award Plaintiff and the class such further and additional relief as to which they may be entitled.

Respectfully submitted,

Jacobson Press P.C.

/s/ Joe D. Jacobson
Joe D. Jacobson #33715
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Tel: (314) 899-9789
Direct: (314) 899-9790
Fax: (314) 899-0282
Jacobson@ArchCityLawyers.com

Amundsen Davis LLC

/s/ Christopher O. Miller
Gene J. Brockland #32770
Christopher O. Miller #70251
120 S. Central Ave., Suite 700
Clayton, Missouri 63105
Tel: (314) 719-3700
Fax: (314) 719-3721
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com