# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| PATRICK ROMANO, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 23-04043-CV-BCW |
| TORCH ELECTRONICS, LLC, et al., | ) ) ) |
| Defendants. | ) |

## SUGGESTIONS IN SUPPORT OF PARTIAL MOTION TO DISMISS

Defendants Torch Electronics, LLC ("Torch"), Steven Miltenberger ("Miltenberger"), and Warrenton Oil Company ("Warrenton Oil") (collectively "Defendants") respectfully submit the following Suggestions in Support of their Partial Motion to Dismiss Plaintiffs' Complaint.

## I. INTRODUCTION

Plaintiffs are seven individuals claiming damages for money they allegedly lost playing Torch's amusement devices. Plaintiffs allege Torch's amusement devices are illegal gambling devices under Missouri law and that playing them constitutes gambling. Plaintiffs assert three claims against Defendants: (1) Count I – alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) Count II – alleged violation of the Missouri Merchandising Practices Act (the "MMPA"); and (3) Count III – a request for money lost brought under RSMo. § 434.030. Defendants dispute Plaintiffs' claims and allegations. At the motion to dismiss stage, however, Defendants are limited to pointing out only the most glaring deficiencies in Plaintiffs' Complaint. As explained below, based on the allegations contained in Plaintiffs' Complaint, Plaintiffs cannot state a viable civil RICO claim. Additionally, while Plaintiffs attempt to seek reimbursement of funds allegedly spent playing Torch's amusement devices in *years* past, Plaintiffs' claims for money lost brought pursuant to RSMo. § 434.030 are subject to a *three-month*

statute of limitations. *See* RSMo. § 434.090. As a result, the Court should issue an Order dismissing (a) Plaintiffs' civil RICO claim and (b) any claim asserted under Count III that accrued before December 3, 2022, because such claims are time-barred.

Specific to Plaintiffs' civil RICO claim, Plaintiffs allege Torch and those who operate its machines form a racketeering enterprise. Plaintiffs then seek to recover under the civil RICO statute by claiming that their own decision to participate in alleged illegal gambling caused them harm. "To have [statutory] standing to make a RICO claim, a party must have 1) sustained an injury to business or property 2) that was caused by a RICO violation." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (quoting *Asa–Brandt, Inc. v. ADM Investor Servs., Inc.,* 344 F.3d 738, 752 (8th Cir.2003)). "[A] showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest*."* *Gomez*, 676 F.3d at 660 (quoting *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 728 (8th Cir. 2004)) (internal quotations omitted). According to federal courts across the country, Plaintiffs' claims, by their nature, cannot meet this statutory civil RICO standing requirement. "[C]ourts have specifically found that 'gambling losses are not sufficient injury to business or property for RICO standing' because they do not present a tangible injury to property." *Brill v. Postle*, 2:19-CV-02027 WBS AC, 2020 WL 2936688, at *9 (E.D. Cal. June 3, 2020) (collecting cases); *see also Green v. Aztar Corp*., No. 02 C 3514, 2003 WL 22012205, at *2 (N.D. Ill. Aug. 22, 2003) ("Courts consistently hold that private plaintiffs alleging injuries resulting from their own gambling cannot establish 'injury to business or property' under RICO.").

Again, Defendants deny the Torch amusement devices are illegal gambling devices. However, if Plaintiffs' allegations are assumed true for purposes of this Motion to Dismiss only, Plaintiffs seek to recover their own gambling losses, which has been squarely and repeatedly

rejected as an injury sufficient to confer statutory civil RICO standing. This presents a binary and insurmountable hurdle for Plaintiffs' civil RICO claim. Either, under Plaintiffs' theory of the case, Plaintiffs' alleged losses are "gambling losses [that] are not sufficient injury to business or property for RICO standing,"[1] or, under Defendants' theory of the case, Plaintiffs have no civil RICO claim because Plaintiffs were not gambling on "illegal gambling devices" in contravention of Missouri law. This civil RICO statutory standing problem dooms Plaintiffs' civil RICO claim. Moreover, Plaintiffs cannot cure the lack of statutory standing through amendments to their Complaint.

While the Court can (and should) dismiss Plaintiffs' civil RICO claim for lack of statutory standing, that is not the only reason to dismiss Plaintiffs' civil RICO claim. Civil RICO liability must be based on proper predicate acts. Plaintiffs claim Defendants' alleged violations of Missouri gambling laws support their claims as one predicate act. However, based on the doctrine of *in pari delicto* (*i.e.*, the "principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing"[2]), Plaintiffs cannot allege violations of Missouri gambling laws as the underlying racketeering activity because Plaintiffs' theory of the case (*i.e.*, they were gambling) implicates Plaintiffs in wrongdoing under those same laws.[3] Plaintiffs other alleged predicate acts (alleged violations of the Wire Act and violations of the federal statute that prohibits illegal gambling) fare no better. The Wire Act is not applicable outside the context of sports gambling, and the federal statute prohibiting illegal gambling relies on underlying state laws determining what constitutes gambling. For those independent reasons, Plaintiffs have failed to plead a cognizable civil RICO claim and Count I of the Complaint should be dismissed.

---

[1] *See Brill*, 2020 WL 2936688 at *9
[2] *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2005) (quoting Black's Law Dictionary 806 (8th ed. 2004)) (internal quotations omitted).
[3] *See, e.g.,* RSMo. § 572.020.

Separately, Count III of Plaintiffs' Complaint asserts a statutory claim for lost gambling money. That statute, however, only has a three-month statute of limitations. Plaintiffs' Complaint generally alleges events measured in years, not months; such claims are barred. The Court should enter an order dismissing any claims asserted under Count III that accrued before December 3, 2022, as such claims are time-barred.

## II. FACTUAL BACKGROUND[4]

On March 3, 2023, Plaintiffs filed this lawsuit. There are seven plaintiffs: Patrick Romano, Joshua Wilson, Krystal Christensen, Jeffrey Cordaro, Carmen Weaver, Monica McGee, and Mary Bolden, each alleged to be an individual person and citizen of Missouri. Compl., ¶¶ 2-8. Plaintiffs sued six defendants and allege the following general facts about them:

- **Torch Electronics, LLC.** Torch is an importer of alleged "electronic slot machines" that are manufactured by Banilla Games, Inc. Compl., ¶ 25. Torch installs and operates these devices in various places of public accommodation, including convenience stores, gas stations, bars, and restaurants. *Id*. at ¶ 27.

- **Steven Miltenberger.** Miltenberger is a member and the highest-ranking officer of Torch who oversees Torch's day-to-day operations. *Id*. at ¶ 10.

- **Warrenton Oil Company.** Warrenton Oil is a Missouri corporation that owns and operates gas stations and convenience stores (including those branded "Fast Lane") throughout Missouri. *Id*. ¶¶ 11-12. Warrenton Oil operates Torch's devices at its gas stations and convenience stores. *Id*. at ¶ 30.

- **Mohammed & Rami Almuttan (the "Almuttan Brothers").** The Almuttan Brothers are Missouri citizens who own and operate gas stations and convenience stores in St. Louis County and the City of St. Louis. *Id*. ¶¶ 13-15.

- **Mally, Inc.** Mally is a Missouri corporation, managed by the Almuttan Brothers, which owns and operates a convenience store in St. Louis. *Id*. at ¶¶ 16, 20. Mally allegedly operates three Torch devices at its convenience store. *Id*. at ¶ 32.

---

[4] All facts stated, summarized, or otherwise presented in this "Factual Background" section or otherwise discussed in these Suggestions are taken from the Plaintiffs' Complaint. Defendants do not adopt or admit to any averment within Plaintiffs' Complaint by way of their Motion or these Suggestions.

The common thread among defendants in Plaintiffs' allegations is some connection to Torch's amusement devices; in turn, Plaintiffs each allegedly played these devices (though not all at Warrenton Oil's or Mally's locations). *See id*. at ¶¶ 76-85. Citing to RSMo. §§ 572.010 *et seq*., Plaintiffs allege the Torch amusement devices are "illegal slot machines" that violate Missouri's gambling laws. *See id*. at ¶¶ 1, 47-70, 107-08. Plaintiffs claim Defendants have, accordingly, committed "thousands of separate offenses of promoting gambling in the first degree[.]" *Id*. at ¶¶ 118, 120. Plaintiffs also specifically allege that playing Torch's amusement devices constitutes "gambling" under Missouri law. *Id*. at ¶¶ 110-11.

Plaintiffs assert three counts: Civil RICO (Count I), Violations of the MMPA (Count II), and Money Lost under § 434.030, RSMo. (Count III). For their civil RICO count, Plaintiffs seek damages in the amounts they allege individual plaintiffs spent playing the machines, statutory treble damages, attorney fees, pre- and post-judgment interest, and declaratory and injunctive relief regarding Defendants' alleged "illegal gambling business[.]" *Id*. at p. 36. Plaintiffs' statutory "money lost" claim seeks a refund of money spent playing the devices and pre- and post-judgment interest on those amounts. *Id*. at pp. 41-42. Plaintiffs also include class-based allegations, seeking to represent a class of Missouri consumers who played Torch's amusement devices. *Id*. at ¶¶ 86-92. Each count seeks an order of certification, an appointment of class counsel, and an order that Defendants must pay the costs of class notice and claims administration. *See id*. at pp. 36, 40-42.

## III. Legal Standard

Defendants' Motion to Dismiss should be granted for any claim for which the Complaint does not "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reviewing the Complaint to determine if it states a claim for relief, the Court assumes the truth of factual allegations and makes reasonable

inferences in favor of the nonmoving party, but it is "not bound to accept the truth of legal conclusions couched as factual allegations" and "labels and conclusion" or "formulaic recitation[s] of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and quotations omitted).

## IV. ARGUMENT

### A. Plaintiffs' Complaint Fails to State a Civil RICO Claim

Civil RICO "is considered an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Nettles v. UMB Bank, N.A.*, 03-00082-CV-W-GAF, 2010 WL 11618679, at *3 (W.D. Mo. Sept. 13, 2010) (quotation marks omitted). Because "[t]he mere filing of civil RICO charges can have a stigmatizing effect," such claims "regularly receive heightened scrutiny at the motion to dismiss stage of litigation[.]" *Id.*; *see also Mondelus v. August W. Dev., LLC*, 19CV4832LDHLB, 2022 WL 182363, at *5 (E.D.N.Y. Jan. 20, 2022) ("[C]ourts have an obligation to scrutinize civil RICO claims early in the litigation—to separate the rare complaint that actually states a claim for civil RICO[.]"). Plaintiffs' civil RICO claim fails for several reasons, and it cannot withstand scrutiny – heightened or otherwise.

A plaintiff wishing to use RICO as a basis for a private cause of action not only has to satisfy Article III constitutional standing but must also satisfy a heightened RICO statutory standing test. This requires both (1) proof of a concrete injury to business or tangible property and (2) well-pleaded facts demonstrating the existence of both "but for" *and* proximate causation. *See Gomez*, 676 F.3d at 660; *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010). Plaintiffs cannot satisfy either requirement here. Plaintiffs' attempt to use civil RICO to recover alleged gambling losses is not novel. And Defendants are not the first to seek dismissal of such claims based on a lack of statutory standing. As discussed below, seemingly every court presented with a

similar attempt to use civil RICO to recover alleged gambling losses and asked whether such a claim can withstand a motion to dismiss has concluded it cannot.

Additionally, to maintain a civil RICO claim, a plaintiff must present evidence of a pattern of racketeering premised upon the existence of predicate acts. Plaintiffs' Complaint fails to plead viable predicate act sufficient to maintain their civil RICO claim. Plaintiffs' civil RICO claim fails for this separate and independent reason.

### 1. Civil RICO imposes heightened statutory standing requirements that Plaintiffs cannot satisfy here.

Only one section in RICO grants private parties a right to assert civil RICO claims – 18 U.S.C. § 1964(c). "To have [statutory] standing to make a RICO claim, a party must have 1) sustained an injury to business or property 2) that was caused by a RICO violation." *Gomez*, 676 F.3d at 660 (quoting *Asa–Brandt,* 344 F.3d at 752) (internal quotations omitted). The injury must be a "concrete financial loss." *Gomez*, 676 F.3d at 660. An "injury to a valuable intangible property interest" does not confer statutory RICO standing. *Gomez*, 676 F.3d at 660; *see also Subramanian v. Tata Consultancy Servs. Ltd.*, 352 F. Supp. 3d 908, 915-17 (D. Minn. 2018) (analyzing both Article III standing and civil RICO "statutory standing"; granting motion to dismiss because only an "injury to a valuable intangible property interest" was presented).

In addition to requiring a specific showing of an injury to a valuable business or tangible property interest, statutory RICO standing involves a heightened pleading standard for causation. Section 1964(c) states the RICO injury to "business or property" must have been "by reason of" the alleged RICO violation. 18 U.S.C. § 1964(c). The Supreme Court has repeatedly interpreted "by reason of" as requiring a plaintiff to plead facts demonstrating not merely "but for" causation, but also "proximate causation" to satisfy RICO statutory standing. *See Homes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 266 (1992) (rejecting an interpretation of § 1964(c) that would read "by

reason of" to require only allegations of "but for" causation); *Hemi Grp.*, 559 U.S. at 9 ("[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well.") (quotation marks omitted). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation *led directly to* the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added). If the answer is "no," the claim fails.

### 2. Gambling losses are not an injury to tangible business or property.

Plaintiffs' civil RICO claim is only cognizable if losing money on an allegedly illegal gambling transaction constitutes a direct injury to a tangible business or property interest. This issue is not novel, nor is the correct answer to it controversial. The many courts that have addressed the issue have held alleged gambling loses amount to, at best, alleged injury to a valuable *intangible* property interest – an injury that cannot, as a matter of law, confer civil RICO standing. Plaintiffs' civil RICO claim should be dismissed without leave to amend because Plaintiffs have not and cannot prove they suffered a direct injury to tangible business or property.

An instructive case, on facts closely resembling those here, is *Adell v. Macon County Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1229–36 (M.D. Ala. 2011). In *Adell*, 853 plaintiffs sued a group of defendants that manufactured and operated electronic bingo machines. *Id*. The Plaintiffs alleging the electronic bingo games violated state Alabama's state gaming laws, and, in relevant part, they asserted a civil RICO claim in an attempt to recover money they allegedly lost playing the electronic bingo machines. *Id*. Similar to Plaintiffs here, the *Adell* plaintiffs alleged the electronic bingo operation amounted to "an illegal gambling operation" and the defendants' alleged illegal gambling racketeering caused the plaintiffs loss of money. *Id*. at 1236.

On a Rule 12(b)(6) motion to dismiss, the court dismissed the Plaintiffs' civil RICO claims. *Id.* at 1241. Relevant to the discussion here, the court held the plaintiffs had failed to allege losses

8

Case 2:23-cv-04043-BCW   Document 29   Filed 04/28/23   Page 8 of 17

that could confer RICO standing. *Id*. at 1241. In doing so, the court noted there was already a large body of federal case law holding gambling losses do not confer RICO standing. *Id*. at 1238 (citing cases); *see, e.g.*, *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (affirming dismissal of similar gambling-based civil RICO claims involving odds of receiving special playing cards for failure to satisfy the injury prong of RICO statutory standing and, in doing so, noting it agreed "with all other courts that have considered" the issue); *Green*, 2003 WL 22012205 at *2 ("Courts consistently hold that private plaintiffs alleging injuries resulting from their own gambling cannot establish ' injury to business or property' under RICO. The reasoning of these courts makes good sense . . . [the plaintiff's] disappointment at not winning his bets does not constitute an 'injury to property' sufficient to confer RICO standing.") (internal citations omitted); *Price v. Pinnacle Brand, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) (affirming order granting defendant Pinnacle's motion to dismiss a civil RICO claim alleging Pinnacle violated New York and New Jersey gaming laws; "it does not follow that any injury for which a plaintiff might assert a state law claim is necessarily sufficient to establish a claim under RICO"); *Rodriquez v. Topps Co., Inc.*, 104 F. Supp. 2d 1224, 1227 (S.D. Cal. 2000) (dismissing gambling civil RICO claims after issuance of order to show cause on statutory standing finding no cognizable RICO injury; "[T]he act of gambling *per se* is not sufficient to show an injury to one's business or property under RICO."). Looking at the language of § 1964(c) and cases cited above, the court in *Adell* concluded "gambling losses are nothing more than self-inflicted wounds" and gamblers are voluntary participants that do not suffer a RICO property loss just because they do not win the games they voluntarily play. 785 F. Supp. 2d at 1238. The court concluded, like the other courts asked to weigh in on the question, the injuries the plaintiffs alleged were "not the sort of injuries contemplated" under the civil RICO statute. *Id*.

Like the plaintiffs in *Adell*, Plaintiffs allege they were injured by playing a game of chance.[5] *See, e.g.,* Compl. at ¶¶ 90, 108-10, 133. Like the 853 plaintiffs in *Adell*, Plaintiffs seek to recover as alleged damages their alleged gambling losses. *See id*. at ¶ 128. Plaintiffs' alleged gambling losses are "not the sort of injuries contemplated" under the civil RICO statute, and Plaintiffs' Count I should be dismissed for failure to state a claim due to Plaintiffs' lack of statutory standing. *Adell*, 785 F. Supp. 2d at 1241; s*ee also McLeod v. Valve Corp.*, C16-1227-JCC, 2016 WL 5792695, at *2 (W.D. Wash. Oct. 4, 2016) ("[G]ambling losses are not sufficient injury to business or property for RICO standing."); *Price*, 138 F.3d at 607; *Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 51-52 (E.D.N.Y. 2000) ("Just as a card purchaser may realize a gambling loss, so a card purchaser may also find an insert card and sell it or keep it for value. The chance is real, and having paid for it and received it, the card purchaser has not suffered any financial loss or RICO property injury."); *Schwartz v. Upper Deck Co.*, 104 F. Supp. 2d 1228, 1231 (S.D. Cal. 2000), *aff'd sub nom. Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083 (9th Cir. 2002); *Brill*, 2020 WL 2936688 at *9 (E.D. Cal. June 3, 2020) ("Private plaintiffs alleging injuries resulting from their own gambling cannot establish 'injury to business or property' under RICO because there is no concrete financial loss.") (quotation marks omitted). Plaintiffs' alleged gambling-loss injury is not "injury to business or property" within the meaning of § 1964(c). Plaintiffs lack statutory standing to assert their civil RICO claim.

### 3. Plaintiffs also fail to satisfy the proximate cause element of RICO statutory standing.

---

[5] Again, Defendants deny Torch amusement devices are games of chance or "gambling devices" under Missouri law. That does not alter Plaintiffs' pleading or resolve Plaintiffs' RICO statutory standing issues. If Torch is correct and there is no violation of Missouri gambling laws, Plaintiffs cannot point to racketeering activity and, obviously, have no RICO claim.

As discussed directly above, Plaintiffs have failed to allege a cognizable RICO injury, which is sufficient, standing alone, to dismiss the claim. However, Plaintiffs have also failed to satisfy the second element of civil RICO statutory standing – direct proximate causation.

Courts have noted that even if gambling losses *could* be considered concrete injury to property (again, they are not), such losses are not *proximately* caused by racketeering activity as required for RICO standing. *See Hemi Grp.*, 559 U.S. at 9 (2010) (injuries must be proximately caused by RICO violation); *see also* Section IV.A.1, above (discussing the heightened causation standard). In evaluating proximate cause for RICO purposes, courts look to whether there is a "direct relationship" between the alleged injury and the alleged RICO violation. *Id*. at 10. The rationale here is simple, under Plaintiffs' theory of the case, Plaintiffs voluntarily and willfully made an independent decision to play a Torch amusement device. Plaintiffs' decision to play is the *direct* and superseding cause of any alleged loss. *See Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 187–88 (3d Cir. 2000) ("Unlike an ordinary RICO victim, in this case the allegedly injured plaintiffs, *i.e.*, the players, can avoid any injury simply by walking away from the alleged wrongdoers, the casinos, by not playing[.]"); *Adell*, 785 F. Supp.2d at 1244 ("There are no allegations that any Plaintiff was forced to seek out Victoryland or to spend their money playing the electronic bingo machines there . . . Plaintiffs could have made a conscious decision not to enter Victoryland's doors and to turn around and go home. Instead, they chose to enter, deposit money into the electronic bingo machines and press the button that commenced the spinning of the electronic 'wheels' . . . When they lost, they did not concomitantly win a private right of action to bring a federal RICO claim to recover those losses.").

As the court concluded in *Adell*, Plaintiffs' "own acts of playing the electronic bingo machines are intervening causes that break the chain of causation with respect to the defendants'

alleged [RICO] activities, even if they were illegal." *See Adell*, 785 F. Supp.2d at 1244 (quoting *In re MasterCard Intern. Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002)) (internal quotations omitted); *see also Green*, 2003 WL 22012205 at *3 ("[Plaintiff]'s knowing and voluntary gambling interrupted the causal chain between defendants' alleged RICO violations and plaintiff's injuries. . . . Green cannot use RICO to avoid meeting obligations he voluntarily took on."). Plaintiffs cannot satisfy the proximate cause RICO statutory standing requirement, and Plaintiffs' civil RICO claim should be dismissed.

### 4. Plaintiffs do not properly plead racketeering activity.

As an independent basis for dismissal, Plaintiffs' RICO claim should be dismissed for failure to allege racketeering activity. To establish a pattern of "racketeering activity," Plaintiffs must plead two or more related predicate acts. *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 358 (8th Cir. 2011). Here, the underlying predicate acts are alleged to be conducting or controlling an illegal gambling business under 18 U.S.C. § 1955, transmission of wagering information in violation of 18 U.S.C. § 1084 (known as the "Wire Act"), and the Missouri law offense of promoting gambling. *Id*. at ¶¶ 99-100; 103-05. Plaintiffs allege Defendants conducted the affairs of an enterprise through racketeering by placing and profiting from the Torch amusement devices in violation of these laws. *See* Compl., ¶¶ 123-26. However, the Wire Act does not apply here, and Plaintiffs' own theories bar them from pursuing claims for Missouri gambling law violations as a predicate act.

Regarding Plaintiff's attempt to use alleged violation of the Wire Act as a RICO predicate act, Plaintiff's reliance on the Wire Act is misplaced. Plaintiffs allege Defendants knowingly transmitted bets or wagers between slot machines and Torch's Cole County offices, but there is an additional element of a Wire Act violation that is lacking. The Wire Act only applies to *sports* gambling, and Plaintiffs' Complaint lacks any averments pertaining to sports betting. *See In re MasterCard Int'l Inc.*, 313 F.3d 257, 262–63 (5th Cir. 2002) (civil RICO plaintiffs failed to allege

Wire Act predicate acts because as a matter of statutory interpretation, the Wire Act only concerns gambling on sporting events or contests); *see also New Hampshire Lottery Comm'n v. Rosen*, 986 F.3d 38, 61-62 (1st Cir. 2021) (agreeing with the Fifth Circuit and holding that the Wire Act does not apply outside the sporting context); *see also, generally*, Compl. Accordingly, Plaintiffs have not alleged violations of the Wire Act.

Regarding Plaintiffs' reliance on alleged violations of Missouri gaming laws, the doctrine of *in pari delicto* bars Plaintiffs from using alleged violations of Missouri gambling statutes as a RICO predicate act. Under RSMo. § 572.020, any person who knowingly engages in gambling "commits the offense of gambling[.]" Plaintiffs' theory compels them to argue that they were gambling while playing the Torch amusement devices. *See* Compl., ¶ 110 ("Playing one of Torch's slot machines is gambling[.]").[6] "Under the *in pari delicto* doctrine, a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." *Dobbs v. Dobbs Tire & Auto Ctrs., Inc*., 969 S.W.2d 894, 897 (Mo. Ct. App. 1998); *accord Grassmueck*, 402 F.3d at 837. "The principle is well settled that no court will lend its aid to a man who founds his cause of action upon an illegal act. This is a principle founded upon public policy, not for the sake of the defendant, but for the law's sake, and that only." *Dobbs*, 969 S.W.2d at 897 (quoting *Schoene v. Hickam,* 397 S.W.2d 596, 602 (Mo. banc 1966)). This doctrine can be decided on the pleadings alone. *See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149 (11th Cir. 2006) (affirming dismissal of civil RICO complaint on *in pari delicto* grounds).

---

[6] Again, Defendants deny the Torch amusement devices are "gambling devices," but that does not alter Plaintiffs' allegations.

13

Case 2:23-cv-04043-BCW   Document 29   Filed 04/28/23   Page 13 of 17

This doctrine is directly implicated here. Because Plaintiffs cannot demonstrate that the Torch amusement devices were illegal gambling devices under RSMo. §§ 572.010 *et seq.* without also showing that Plaintiffs violated Missouri's prohibition on gambling, they are barred by the doctrine of *in pari delicto* from pursuing arguments under this statute. This doctrine also forecloses Plaintiffs' claim for violations of 18 U.S.C. § 1955, which is dependent on an underlying finding of a state law gambling violation. *See United States v. Bala*, 489 F.3d 334, 338 (8th Cir. 2007) ("A violation of § 1955 requires proof that the gambling business 'is a violation' of state law."); *accord Ward v. Crow Vote LLC*, SACV211110FWSDFMX, 2022 WL 17887530 (C.D. Cal. Oct. 7, 2022) (section 1955 cannot be RICO predicate act without determination that subject activity was illegal gambling under state law).

Accordingly, Plaintiffs have failed to allege racketeering activity, and their RICO claim should be dismissed on this independent basis.

### 5. Plaintiffs fail to plead a civil RICO conspiracy claim.

In paragraph 127 of the Complaint, Plaintiffs assert Defendants violated a subpart (d) to § 1962, which makes it makes it unlawful "for any person to conspiracy to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]." 18 U.S.C. § 1962(d). Plaintiffs did not plead this violation as a separate count, and they include only threadbare allegations regarding it. Regardless, because Plaintiffs fail to plead a claim under subsection (c) for the reasons stated above, this derivative claim must also be dismissed.

### B. Claims for Money Lost Pursuant to RSMo. § 434.030 that Accrued on or Before December 1, 2022 Are Time Barred

In Count III of the Complaint, Plaintiffs assert entitlement to recover the money they allegedly spent playing Torch's amusement devices. Plaintiffs base this claim on a Missouri statute providing: "Any person who shall lose any money or property at any game, gambling device or by

any bet or wager whatever, may recover the same by a civil action." RSMo. § 434.030. However, "[a]ny action for money or property brought under this chapter shall be commenced ***within three months*** from the time the right of action accrued, ***and not afterward***." RSMo. § 434.090 (emphasis added).

In the Complaint, Plaintiffs allege they played Torch's amusement devices during a span of two to three years (or more). *See* Compl. at ¶¶ 77, 79, 80, 82, 83 and 85. These claims accrued well before the three-month statute of limitation. There is little Missouri law under this statute, but the case law notes that its statute of limitation imposes a strict requirement. *See Cutshall v. McGowan*, 98 Mo. App. 702, 73 S.W. 933, 934 (1903); *Connor v. Black*, 132 Mo. 150, 33 S.W. 783, 784 (1896).

Because Plaintiffs filed their Complaint on March 3, 2023, any claims brought under this statute must have accrued on or before Friday, December 2, 2022. Any claims that accrued on or before Thursday, December 1, 2022, are therefore time barred, and the Court should enter an order dismissing such claims with prejudice.

## V. CONCLUSION

For the foregoing reasons, Defendants Torch, Miltenberger, and Warrenton Oil respectfully request the Court dismiss Count I of the Complaint with prejudice, enter an order limiting Count III to claims accruing on or after Friday, December 2, 2022, and further grant any additional relief the Court deems just and proper.

Dated: April 28, 2023                    Respectfully submitted,

                                         GRAVES GARRETT LLC

                                         By: */s/ Todd P. Graves*
                                             Todd P. Graves #41319 (MO)
                                             J. Aaron Craig #62041 (MO)
                                             1100 Main Street, Suite 2700
                                             Kansas City, MO 64105

Phone: (816) 256-3181
Fax: (816) 256-5958
tgraves@gravesgarrett.com
acraig@gravesgarrett.com

**Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger**

## CERTIFICATE OF SERVICE

      I hereby certify that on April 28, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

      /s/ Todd P. Graves
Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger