IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
Central Division

| | |
|---|---|
| PATRICK ROMANO, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TORCH ELECTRONICS, LLC, *et al.*,<br><br>Defendants. | Case No.: 2:23-cv-04043-BCW<br><br>JURY TRIAL DEMANDED |

## DECLARATION OF JOE D. JACOBSON

I, Joe D. Jacobson, declare under penalty of perjury that my statements in this declaration, are true and correct and based upon my personal knowledge.

1. I am a 1986 *magna cum laude* graduate of the Boston University School of Law. I am a 1983 graduate of Washington University in St. Louis.

2. I am a member in good standing of the Missouri, Illinois, and District of Columbia Bars. I am admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Second, Third, Sixth, Seventh, Eighth, Ninth, and Federal Circuits, the United

States Court of Federal Claims, and the United States District Courts for the Eastern and Western District of Missouri, Southern and Central Districts of Illinois, and the District of Columbia. (I was until recently also admitted to practice before the United States Court of Appeals for the Fifth Circuit, but my admission there expired through long non-use.) My law license has never been subject to discipline and I have never been sanctioned by any court.

3. I have tried more than 65 cases to a verdict or judgment in a mix of bench and jury trials. I have also been the sole or primary attorney in more than 100 appeals. The cases I have tried or have handled on appeal (or both) involved diverse subject areas, including arson, Bar discipline, breach of contract, breach of fiduciary duty, civil rights (Section 1983), computer fraud and abuse, copyright infringement, defamation, defective design, duty of fair representation, eminent domain, employment discrimination, ERISA, fraud, First Amendment rights, insurance coverage, Lanham Act, Missouri Merchandising Practices Act, partnership disputes, patent validity and infringement, premises liability, Railway Labor Act, RICO, securities fraud, surface waters, and trademarks.

4. About two-thirds of my work is on the plaintiff side, including plaintiff class actions. I have obtained judgments in excess of $1 million in multiple complex business cases. I have also obtained punitive damages awards in excess of $1 million in several cases. I have represented plaintiff classes in cases that have resulted in judgments in the tens of millions of dollars, including one for in excess of $65 million and a second for $53 million, and a class action settlement without trial of $490 million in cash.

5. I also represent defendants in litigation, including the defense of class actions. My most recent defense trial was a two-week jury trial in the Eastern District of Missouri in January 2023 before District Judge Matthew Schelp, Case No. 4:19-cv-01562. The case was unusually complex: it involved 10 plaintiffs against 7 defendants asserting a multiple of state and federal claims. (The federal claims were dismissed at the beginning of trial.) The jury received 555 separate jury instructions and 25 verdict forms. The resulting verdict was a substantial defense victory: The jury awarded plaintiffs a total of $13,382 on their $7.8 million in claims.

6. Some of the class actions that I have tried to a verdict or judgment include:

*Knowlton v. Anheuser-Busch Cos. Pension Plan*, 849 F.3d 422 (8th Cir. 2017). Along with two co-counsel, I represented a class of Anheuser-Busch salaried employees who were denied enhanced pension benefits provided for by their ERISA plan upon a change in control of the employer. I prepared a successful motion for judgment on the pleadings to obtain the class members their enhanced pension benefits. The district court entered judgment, but declined to calculate the amount due to each class member, instead simply ordering the defendant to make whatever payments it deemed necessary. I assisted on the appeal. The Eighth Circuit affirmed the judgment on the pleadings and reversed the district court on its refusal to calculate damages for past unpaid benefits. Upon remand, damages were established at an amount in excess of $65 million for past unpaid enhanced benefits, plus an undetermined amount (estimated at more than $25 million) for additional future benefits.

*Brady v. Air Line Pilots Ass'n, Int'l*, Civil Action No. 02-2917 (JEI), 2014 U.S. Dist. LEXIS 73814, at *1 (D.N.J. May 29, 2014). Along with my law partners and co-counsel, I represented a class of TWA pilots against their union on a claim of breach of the duty of fair representation (DFR).

4

A 5-1/2 week jury trial in 2011, which I second chaired, resulted in a verdict for the class on liability. The case settled for $53 million cash in 2014 about a month before trial on the damages phase of the case. It was at the time the largest ever cash settlement in a DFR case under the Railway Labor Act. Aspects of the judgment approving the settlement were challenged on appeal. I wrote the briefs and argued the appeals. The judgment was affirmed in all respects.

*Eisel v. Midwest BankCentre*, 230 S.W.3d 335 (Mo. 2007). I represented a class of borrowers who were charged illegal document preparation fees by their lender. After a one-day bench trial, the Circuit Court awarded the class treble damages under Section 484.020, RSMo., the "law business" statute. I briefed and argued the case successfully in both the Missouri Court of Appeals and Missouri Supreme Court.

*Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697 (Mo. 2008). A similar case to *Eisel*, I represented a different class of borrowers against a different lender, but on the same theory and with the same successful results. I again successfully briefed and argued the case both in the Court of Appeals and Supreme Court.

7. Although not a class action, I did try a civil RICO case on behalf of the defendants in a two-week jury trial in the City of St. Louis. At the time, it was reported to be the first civil RICO case tried in state court in Missouri. *Smith vs. Lipton*, Cause No. 892-03316. I was second chair at trial. Although the jury found in favor of the plaintiff on its RICO counts as well as against defendants on their counterclaim for fraud, I prepared and argued a successful motion for judgment notwithstanding the verdict. The trial court entered judgment for defendants on both the plaintiff's claims, including the RICO claim, and on their fraud counterclaim.

This case is interesting not just because of the civil RICO aspect but also because of side litigation generated from plaintiff's attempt to obtain recordings from an FBI's wiretap of corrupt St. Louis politicians, some of which recorded conversations with one of the defendants I represented. I handled the wiretap litigation without assistance. The district court denied the motion to unseal the recordings. A panel of the Eighth Circuit reversed. I filed a motion for rehearing en banc, which was granted, and the court en banc affirmed the district court. *In re Motion to Unseal Electronic Surveillance Evidence*, 990 F.2d 1015 (8th Cir. 1993).

6

8. As a result of the experiences described above, I have the experience and ability to represent the class in this case and have developed knowledge of the applicable law. At the request of the court, I can provide addition information on my non-class action trials, class action settlements, and significant appeals I have handled to further demonstrate my adequacy to serve as class counsel.

9. I was nominated for a seat on the Missouri Supreme Court by the Missouri Appellate Judicial Commission in 2011. Missouri Court of Appeals Judge George W. Draper III was appointed to the seat.

10. I first began investigating the case against Torch and the other defendants in the fall of 2021, having been approached by lawyers already investigating the potential case. I reviewed their investigation work-product, published media reports, and other disputes about these unlicensed slot machines.

11. I also began extensive legal research and analysis. Along with co-counsel, I considered a variety of potential legal theories and researched and analyzed those theories. I concluded that the federal RICO and Missouri Merchandising Practices Act were the most applicable grounds

7

for a lawsuit. I was introduced by co-counsel to a relatively ancient and obscure Missouri statute authorizing the recovery of money lost through a gambling device. I concluded this statute was also a valid basis for recovery, albeit without the treble damages and attorney fee remedies provided by RICO and the MPA.

12. Since filing the lawsuit, I have been contacted by members of the proposed class who have asked to be included in the class and to be represented against Torch and the other defendants. They have shared with me their personal experiences of loss resulting from Torch's illegal slot machines. This is typical. In all of my class actions I have spent the time needed to communicate with not only my direct clients, the plaintiffs, but with any member of the class who contacts me because I represent their interests and owe them a duty as well.

In the TWA pilots class action, which included about a thousand highly-motivated class members, my law partners and I spent hundreds of hours in telephone calls, emails, and even in-person meetings with class members not named as plaintiffs. Class members were present in court

8

every day of the jury trial — different class members attending the trial as their respective work schedules allowed.

In the ERISA class action for the former SeaWorld salaried employees against AB-InBev, which involved about 900 class members, some of whom ultimately recovered awards in the mid to high six figures, I personally spoke on the phone with more than 40 class members who were not named plaintiffs. Some class members called me routinely for updates on the case. We held several meetings in our St. Louis law offices open to all class members who wished to attend. At one critical point in the litigation, my co-counsel and I went on a road show to St. Louis, Florida, and California to hold open forum meetings with the class, giving us as class counsel an opportunity to talk to and more importantly hear from over 120 class members in total at the three meetings.

13. Together with our co-counsel, we will use our resources in representing the class, including not just our financial resources but the time and willingness to communicate with the absent class members that enables all of the class members to feel and be represented in a class action that will deeply affect their lives and their family's finances.

I have practiced almost my entire career in small law firms. I have financed my class actions using fees generated by the rest of my law practice. My law firms have in the past invested over a million dollars in out-of-pocket expenses in multiple class actions by these means and in recent years I have partnered with co-counsel to help ensure that the financial resources to prosecute the class action to its conclusion are available.

14. I have no relationship with any of the defendants and no pre-existing relationship with any of the named plaintiffs. I am not aware of any facts that raise or could give rise to any actual or perceived conflict of interest between myself or my law firm and the proposed class.

The foregoing statements in my declaration are all true and correct to the best of my personal knowledge and belief, and are made subject to the penalty for perjury under 28 U.S.C. § 1746.

_____  Dated:  2 May 2023
Joe D. Jacobson
Missouri Bar No. 33715

10

Case 2:23-cv-04043-BCW   Document 30-5   Filed 05/05/23   Page 10 of 10