IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
Central Division

| | | |
|---|---|---|
| PATRICK ROMANO, *et al.*, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 2:23-cv-04043-BCW |
| vs. | ) ) | JURY TRIAL DEMANDED |
| TORCH ELECTRONICS, LLC, *et al.*, | ) ) | |
| Defendants. | ) | |

**SUGGESTIONS IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Joe D. Jacobson #33715
JACOBSON PRESS P.C.
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Tel: (314) 899-9789
Direct: (314) 899-9790
Fax: (314) 899-0282
Jacobson@ArchCityLawyers.com

Gene J. Brockland #32770
Christopher O. Miller #70251
120 S. Central Ave., Suite 700
Clayton, Missouri 63105
Tel: (314) 719-3700
Fax: (314) 719-3721
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com

Attorneys for plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    Class Certification Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.   Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    Common Questions of Law and Fact . . . . . . . . . . . . . . . . . 9

      C.    Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      D.    Adequacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.  Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      A.    Predominance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      B.    Superiority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.   Class representatives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

V.    Rule 23(g) — Class counsel . . . . . . . . . . . . . . . . . . . . . . . . . . 24

      A.    Work done identifying and investigating claims . . . . . . . . 25

      B.    Experience in handling class actions, other complex
            litigation, and the types of claims asserted in the
            action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Case 2:23-cv-04043-BCW   Document 32   Filed 05/05/23   Page 2 of 37

C.     Knowledge of applicable law. . . . . . . . . . . . . . . . . . . . . . . . . 26

D.     Resources counsel will commit to representing the
class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI.    Rule 23(c)(2)(B) — Class notice . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

**Cases**                                                **Pages**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) . . . . . . . . . . . 16, 18, 21

*Arkansas Education Ass'n v. Board of Education*,
446 F.2d 763 (8th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) . . . . . . . . . . . . . . 6

*Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639 (2008) . . . . . . . 22

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) . . . . . . 22

*Cox v. Zurn Pex, Inc. (In re Zurn Pex Plumbing Prods.
Liab. Litig.)*, 644 F.3d 604 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . 24

*Custom Hair Designs by Sandy v. Central Payment Co., LLC*,
984 F.3d 595 (8th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . 13, 19, 20–21

*Day v. Celadon Trucking Services*, 827 F.3d 817 (8th Cir. 2016) . . . . . 19

*Drennan v. PNC Bank, NA (In re Comty. Bank of N. Va. &
Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.)*,
622 F.3d 275 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Johannessohn v. Polaris Industries*, 9 F.4th 981 (8th Cir. 2021) . . . . . 21

*Klay v. Humana, Inc.*, 382 F.2d 1241 (11th Cir. 2004) . . . . . . . . . . . . . 22

*Luiken v. Domino's Pizza, LLC*, 705 F.3d 370 (8th Cir. 2013) . . . . . . . 5, 6

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) . . . . . . . . . . . . . . . . . . 16

*Paxton v. Union National Bank*, 688 F.2d 552 (8th Cir. 1982) . . . . . 7, 14

iii

*Portz v. St. Cloud State University*,
297 F. Supp. 3d 929 (D. Minn. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Postawko v. Missouri Department of Corrections*,
910 F.3d 1030 (8th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

*Sciaroni v. Consumer (In re Target Corp. Customer Data
Sec. Breach Litig.)*, 847 F.3d 608 (8th Cir. 2017) . . . . . . . . . . . . . . . 14–15

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) . . . . . . . . . 18, 19

*Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753 (8th Cir. 2020) . . . . 13, 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) . . . . . . . . . . . . . 9–10

*Williams v. Mohawk Industries, Inc.*,
568 F.3d 1350 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## Statutes

18 U.S.C. § 1084 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 1955 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Section 434.030, RSMo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Section 572.010, RSMo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Section 572.030, RSMo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

iv

## Rules

Rule 23(a), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Rule 23(a)(1), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7–9

Rule 23(a)(2), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9–12, 17

Rule 23(a)(3), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12–14

Rule 23(a)(4), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14–17

Rule 23(b)(3), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 17–22, 27

Rule 23(c)(1), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Rule 23(c)(2)(B), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Rule 23(g), F.R.Civ.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 24–26

## Other Authorities

2 W. Rubenstein, *Newberg on Class Actions* §4:50 (5th ed. 2012) . . . . . 18

Conte & Herbert B. Newberg, *Newberg on Class Actions*
§ 9:12 (4th ed. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## Other Citations

*St. Louis Post Dispatch* (February 24, 2022), available at
　　　　https://www.stltoday.com/news/local/govt-and-
　　　　politics/casino-cities-in-missouri-call-for-crackdown-
　　　　on-illegal-gambling/article_8f0f7de4-e89e-5620-a4
　　　　09-5536f784d457.html. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

## SUGGESTIONS IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs Patrick Romano, Joshua Wilson, Krystal Christensen, Jeffrey Cordaro, Carmen Weaver, Monica McGee, and Mary Bolden move under Rule 23, F.R.Civ.P., for an order (a) certifying plaintiffs' proposed Rule 23(b)(3) class, (b) appointing the seven plaintiffs as class representatives, (c) appointing attorneys Joe D. Jacobson of Jacobson Press P.C. and Gene J. Brockland and Christopher O. Miller of Amundsen Davis LLC as class counsel, and (d) providing for appropriate notice to the class members.

The bases for class certification and the definition of the proposed class are set out in the complaint. The factual bases for the appointment of the proposed class representatives and class counsel are stated in the attached declarations of plaintiffs and proposed class counsel. The factual basis for the suggested appropriate class notice is stated in the declarations of proposed class counsel.

## BACKGROUND

This case involves defendants' ownership, operation, or hosting of electronic gaming devices that appear in all relevant respects to be illegal

1

slot machines operated as part of an illegal gambling enterprise and the losses sustained by thousands of consumers playing those gaming devices.

Defendant Torch Electronic, LLC ("Torch") owns the electronic gaming devices. The devices are located at thousands of places of public accommodation in Missouri, including gas stations, convenience stores, bars, and restaurants.[1] Torch's devices are all made by the same manufacturer and all run the same or substantially the same software. If one of Torch's devices is an illegal slot machine, they all are because there is no meaningful distinction among them.

Defendant Steven Miltenberger runs Torch and is reportedly co-owner of Torch along with his wife. Miltenberger created Torch's business and is the principal person running the gambling enterprise described in the complaint.

The remaining defendants host Torch's electronic gaming devices at their places of public accommodation and serve the customers who use the devices. Defendant Warrenton Oil Company (Warrenton) owns many gas

---

[1]    The *St. Louis Post Dispatch* reported February 24, 2022 that Torch owns up to 14,000 of these electronic devices. *Https://www.stltoday.com/news/local/govt-and-politics/casino-cities-in-missouri-call-for-crackdown-on-illegal-gambling/article_8f0f7de4-e89e-5620-a409-5536f784d457.html.*

stations and convenience stores and is a major host of Torch's electronic gaming devices. Defendants Mohammed Almuttan, Rami Almuttan, and Mally, Inc., also host Torch's devices, albeit on a smaller scale than Warrenton.

Plaintiffs allege that Torch's electronic gaming devices appear in all relevant aspects to be slot machines as defined by Missouri statute. If these devices are what they appear to be, then these devices are illegal slot machines under Missouri law: Illegal because they are unlicensed, illegal because they are located outside of licensed casinos, and illegal because they pay out less than required under the minimum standards for slot machines established by Missouri law.

If these devices are what they seem to be, then defendants are illegally owning, operating, managing, promoting, and profiting from an illegal gambling enterprise, conduct illegal under Missouri law and punishable by imprisonment for more than one year. Defendants' conduct would thus be predicate acts for plaintiffs' claims under the federal Racketeer Influenced and Corrupt Organizations Act (RICO) and would constitute unlawful business practices under the Missouri Merchandising Practices Act (MPA).

Defendant Torch contends publicly that the devices are not slot machines because they are, purportedly, "no-chance games," meaning that they are games in which the element of chance does not play a part. Torch bases this claim on the devices' design, which allow players the option to peek ahead and see in advance the result of the next play.

For numerous reasons, this creative effort to place the slot machines and defendants outside the bounds of Missouri's prohibition of illegal gambling devices and of the illegal promotion of gambling cannot survive a proper interpretation and application of Missouri law. *The question of the merits of the case, however, is not the issue to be resolved on this motion for class certification.* The issue to be resolved is whether plaintiffs' claims are so similar to those of the absent class members, and whether defendants' defenses to the claims are as similarly uniform across the board, that the case ought to be certified as a class action so that all of the common claims and defenses can be uniformly resolved at one go on behalf of both the named plaintiffs and all of the absent class members.

This is an appropriate case to be certified as a class action because any individual issue affecting an individual plaintiff or class member is

completely dominated by the common issues that control the claims of all of the plaintiffs and class members.

## ARGUMENT

### I. Class Certification Standard.

Class certification is controlled by Rule 23, F.R.Civ.P.

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *Postawko v. Missouri Department of Corrections*, 910 F.3d 1030, 1036 (8th Cir. 2018) (citations omitted).

The four requirements of Rule 23(a) are numerosity, commonality, typicality, and the fair and adequate representation of the absent class members. *Id., quoting Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).

Plaintiffs seek class certification under Rule 23(b)(3), which requires a showing that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3).

5

In deciding whether to certify a class, the court makes only a preliminary inquiry into, and does not decide, the merits of the case. "The preliminary inquiry of the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case." *Luiken*, 705 F.3d at 372, *quoting Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005).

Here, class certification is not a close question. As discussed below, plaintiffs' claims easily qualify for class action treatment because each meets the threshold requirements of Rule 23(a) and the specific requirements of Rule 23(b)(3). The court should therefore certify a Rule 23(b)(3) class defined as follows:

> All natural persons who deposited money into any electronic gaming device owned or operated by Torch Electronics, LLC, in the State of Missouri and not located on the premises of a Missouri-licensed casino on any one or more days on or after March 3, 2018 and who received back following their play an amount of money less than the amount deposited that day.

## II.   Rule 23(a).

### A.   Numerosity.

Numerosity means at its most basic that "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1).

> A number of factors are relevant to this inquiry, the most obvious of which is, of course, the number of persons in the proposed class. No arbitrary rules regarding the necessary size of classes have been established. In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members.

*Paxton v. Union National Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982).

"Generally, a putative class size of forty will support a finding of numerosity, and much smaller classes have been certified by courts in the Eighth Circuit." *Portz v. St. Cloud State University*, 297 F. Supp. 3d 929, 944 (D. Minn. 2018) (citations, internal quotations and brackets omitted); *see Arkansas Education Ass'n v. Board of Education*, 446 F.2d 763, 765 (8th Cir. 1971) (affirming class with 20 members)

Here, although we do not know the exact number — or even a solid approximate number — of potential class members, it seems obvious that

7

the number is in the thousands. The *Post-Dispatch*'s estimate of the number of Torch machines in operation is 14,000. In St. Louis County alone, Torch operated nearly 400 illegal slot machines in 2022. *Miller Declaration* at ¶¶ 7-9. Each machine is played by multiple consumers over the course of a day, month, and year. Nearly all of the plaintiffs play Torch's slot machines multiple times a week and regularly see other individuals playing the devices as well. *See Declarations of Joshua Wilson, Krystal Christensen, Jeffrey Cordaro, Carmen Weaver, Monica McGee, and Mary Bolden*, all filed with this motion.

Thus, even if the *Post-Dispatch*'s estimate is grossly overstated, the putative class must contain at least thousands of individuals.

The class size alone is sufficient to satisfy numerosity.[2] If the class is not certified, thousands of Missouri consumers injured by defendants' conduct would have no recourse but to file thousands of individual lawsuits

---

[2]     Other factors can be considered in determining numerosity, such as the size of class member claims, with smaller dollar claims weighing in favor of class certification and larger dollar claims supporting individual lawsuits. These other factors are more important when the potential class size is smaller, perhaps close to 40 members, than they are in cases where class size is at least in the thousands and likely the tens or even hundreds of thousands. Consequently, these other factors are not analyzed here.

in courts across the state for damages generally too small to attract a lawyer to take the case. The alternative to a class action is thousands of separate lawsuits — or, more likely, thousands of meritorious claims foregone. Either alternative would be impracticable and a burden upon the courts and the public.

### B. Common Questions of Law and Fact.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class" as a condition of class certification. The Supreme Court explains that this commonality cannot be superficial, "since any competently crafted class complaint literally raises common questions." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citation and internal quotations and brackets omitted). Rather,

> Their claims must depend upon a common contention — for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

9

*Id.* at 350. To satisfy the Rule 23(a)(2) requirement, "even a single common question will do." *Id.* at 359 (quoting dissent in same opinion) (internal quotations and brackets omitted).

Here, there are more than just a single common question that will be decisive to the validity of every class member's claims in one stroke. There are multiple common questions and they are set out at length in the Complaint at pages 22-26, ¶ 88(a)-(gg). Among them are (citing to the paragraph subparts by the letters used in the complaint):

(a) Whether the Torch electronic gaming devices are "slot machines" as is defined in Section 572.010(11), RSMo.

(b) Whether playing Torch's slot machines constitutes "gambling" as defined in Section 572.010(4), RSMo.

(c) Whether defendants' placement and operation of slot machines constitutes the illegal "promotion of gambling" prohibited by Section 572.030.1, RSMo.

(f) Whether Torch's transmission of bets or wagers or other wire communications between its slot machines and its offices in Cole County,

10

Missouri and elsewhere is the knowing use of a wire communication facility in criminal violation of 18 U.S.C. § 1084.

(g) Whether defendants' placement and operation of slot machines is the conduct, financing, management, supervision, direction, or ownership of an illegal gambling business as prohibited by 18 U.S.C. § 1955.

(h) Whether defendants' actions involving gambling are chargeable as a crime punishable by more than one year in prison under Missouri state law.

(I) Whether defendants' individual actions as alleged are "racketeering activity" as defined in 18 U.S.C. § 1961(1).

(j) Whether defendants' actions taken collectively establish a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

(w) Whether Torch's slot machines constitute a "game" or "gambling device" as those terms are used in Section 434.030, RSMo.

(x) Whether a play by a consumer on one of Torch's slot machines constitutes a "bet" or "wager" as those terms are used in Section 434.030, RSMo.

11

(z) Whether the outcome of any game played on Torch's electronic gaming devices depends upon elements of chance.

And, of course, there is the defense publicly proclaimed by Torch based on its devices' "prize viewer" function. Whether that function causes Torch's electronic gaming devices to be legal is another common question at the heart of the plaintiffs' claims that could resolve the claims en mass.

All these issues are essential to each class member's individual claims. None require individualized proof. *All of the issues focus on the defendants and their actions*. The peculiarities of any individual plaintiff or class member is falls outside of the analysis of these common issues.

Accordingly, the requirement of commonality is satisfied.

## C.  Typicality.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

> Typicality is fairly easily met so long as other class members have claims similar to the named plaintiff. Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory. When typicality and commonality

12

> arguments overlap significantly, the analysis for
> commonality largely determines typicality.

*Custom Hair Designs by Sandy v. Central Payment Co., LLC*, 984 F.3d 595, 604 (8th Cir. 2020) (citations and internal quotations omitted), *following Postawko*, 910 F.3d at 1039.

"Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Postawko*, 910 F.3d at 1039 (citation and internal quotations omitted). "[P]erfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. ... To forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 767 (8th Cir. 2020) (citation and internal brackets omitted).

Here, there will no doubt be variations among the class members. Some will be gambling addicts; some will be casual gamblers. Some could lawfully enter a licensed casino and some are barred from entry. Some will be children. Some have the option to shop locally in a store where there are

no unlicensed slot machines; some will have no choice but to face an unlicensed slot machine every time they go shopping or buy gas. Yet none of these variations among the class members will make the claims of any one of them materially different from those of the plaintiffs for purposes of typicality analysis.

"Perfect symmetry" is not the requirement. The requirement is typicality. That requirement is satisfied here.

### D. Adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The test of adequacy is "whether: (1) the class representatives[3] have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63. "The linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Sciaroni v. Consumer (In re Target*

_____

[3]     Representative parties are often referred to as class representatives.

14

*Corp. Customer Data Sec. Breach Litig.),* 847 F.3d 608, 613 (8th Cir. 2017) (citation and internal quotations and brackets omitted).

The first aspect of adequacy focuses on the alignment of the class representative with the class members and if there is a potential for intra-class conflict if potential outcomes of the case would benefit the class representative but not the absent class members. *Vogt,* 963 F.3d at 767-68.

Here, there is no misalignment between the interests of plaintiffs and the rest of the class. Plaintiffs seek to recover *for all class members* the money *each class member lost* playing Torch's devices. Plaintiffs also seek an order halting the ongoing operation of defendants' illegal gambling enterprise. Both outcomes would benefit the absent class members the same as they would benefit the plaintiffs.

Moreover, the proposed class representatives have an adequate understanding of their role as fiduciaries to the absent class member and also understand their role to ensure that class counsel effectively pursue the interests of the class. *See Declaration of Patrick Romano,* filed with this motion. *See also Declarations of Joshua Wilson, Krystal Christensen, Jeffrey Cordaro, Carmen Weaver, Monica McGee, and Mary Bolden.*

15

Consequently, the interests of the plaintiffs and of the absent class members are aligned. Plaintiffs would be adequate class representatives, satisfying the requirements of the first part of Rule 23(a)(4).

The second aspect of adequacy set out in Rule 23(a)(4) focuses on the proposed class representatives' retention of lawyers sufficiently experienced, skilled, and dedicated to properly prosecuting the case on behalf of the class. "[T]he adequacy of representation enquiry is also concerned with the 'competency and conflicts of class counsel.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 n.31 (1999), *quoting Amchem Prods. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).

"Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) those questions have, since 2003, been governed by Rule 23(g)." *Drennan v. PNC Bank, NA (In re Comty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.)*, 622 F.3d 275, 292 (3d Cir. 2010) (ellipsis omitted).

Consequently, the adequacy of proposed class counsel is discussed below in the discussion about appointment of class counsel under Rule

16

23(g). Suffice it to state at this point, proposed class counsel are experienced in class actions and complex litigation and have no interests in conflict with the interests of the class. *See Declarations of Joe D. Jacobson, Gene J. Brockland, and Christopher O. Miller*, all filed with this motion.

In short, the four requirements for class certification set out in Rule 23(a) are satisfied. The analysis, therefore, turns to the requirements of Rule 23(b)(3).

## III. Rule 23(b)(3).

Rule 23(b) establishes three types of class actions. This action is brought as the third type, class actions where "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy..."

### A. Predominance.

While plaintiffs have already shown that the case presents common questions of law and fact in satisfying the requirement of Rule 23(a)(2), the test under Rule 23(b)(3) is more stringent. Not only must there be common questions determinative of the outcome of the case for all class members,

17

those common questions must be more significant and important to the

case overall than any individual questions that might arise.

> The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U. S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or the issue is susceptible to generalized, class-wide proof." 2 W. Rubenstein, *Newberg on Class Actions* §4:50, pp. 196-197 (5th ed. 2012) (internal quotation marks omitted). The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.*, §4:49, at 195-196. When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (holding that

the use of a study establishing average times for donning and doffing work

clothes was admissible and eliminated the need for consideration of the time used by each individual class member for this activity, thus allowing the common issues on the admissibility of the study to predominate over the individual issue of the time actually spent donning and doffing by each member of the class).

Here, there is nothing individual to any particular plaintiff under the legal theories pled except the amount of each plaintiff's losses — that is, damages. And individual differences in damages unattached to liability issues is not the type of issue that would ordinarily prevent class certification. "Slight variation in actual damages does not defeat predominance if there are common legal questions and common facts." *Custom Hair Designs by Sandy*, 984 F.3d at 602. "When there are issues common to the class that predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Day v. Celadon Trucking Services*, 827 F.3d 817, 833 (8th Cir. 2016), *quoting Tyson Foods*, [577 U.S. 442,] 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016).

19

Here, the court need not look at any of the individual facts relating to the plaintiffs or the absent class members in determining liability under any of the causes of action. Rather, with respect to every issue required to establish liability (other than a class member's status as a consumer for application of the MPA), *the focus is entirely on the defendants and their actions*. The defendants' actions in establishing and running their illegal gambling enterprise is essentially the same with respect to every class member, and thus the common issues predominate.

## B. Superiority.

Rule 23(b)(3) not only requires that the common issues predominate over any individual issues in the case, but also that a class action would be superior to other means — *e.g.*, individual cases — of resolving the disputes between the class members and the defendants.

While it would seem at first blush that pursuing a single class action would always be superior to pursuing thousands or ten of thousands of repetitive individual actions, the decision is not always that easy.

"Class actions are superior when the class members' claims are generally small and unlikely to be pursued individually." *Custom Hair*

20

*Designs by Sandy*, 984 F.3d at 605. This is because class actions permit the aggregation of "relatively paltry recoveries into something worth someone's ... labor." *Amchem Products*, 521 U.S. at 617 (1997). However, if "the underlying issues in the case would present a significant risk of jury confusion and would create enormous challenges to trial management," a class action may not be a superior mechanism regardless of how small the individual claims are. *See Johannessohn v. Polaris Industries*, 9 F.4th 981, 986 (8th Cir. 2021) (no error denying certification where a class action would require jury to apply "the laws of four different states to forty-three different vehicle configuration") (internal quotations omitted).

Here, in contrast with *Johannessohn*, a jury would only have to apply Missouri and federal law to a single or limited configuration of electronic gaming devices. It should not be significantly more difficult than trying a single-plaintiff case. The most difficult part of managing this case will not be trial management but locating and getting notice to all of the class members — a difficult task that is nevertheless performed all the time through a variety of notices, postings, traditional and social media advertisements, and the like.

21

The extraordinary case of *Johannessohn* notwithstanding, concerns about the manageability of a class action "will rarely, if ever, be in itself sufficient to prevent certification of a class." *Klay v. Humana, Inc.*, 382 F.2d 1241, 1272 (11th Cir. 2004), abrogated in part on other grounds by *Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639 (2008); Conte & Herbert B. Newberg, *Newberg on Class Actions* § 9:12 (4th ed. 2013). The question is not whether there will be difficulties managing the proposed class action — any big case will bring with it management difficulties — but rather whether certifying a class will create "more management problems than any of the alternatives." *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (citation omitted).

Predominance and superiority are not entirely separate considerations. If the predominance requirement is satisfied, "then a class action will likely be more manageable than and superior to individual actions." *Id.* The fact that a class will be large is not an appropriate reason to consider the class unmanageable. "[T]he more claimants there are, the more likely a class action is to yield substantial economies in litigation." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

22

Given all this, it is reasonable to certify the proposed class.

## IV. Class representatives.

It is also reasonable to certify plaintiffs as the class representatives. Unlike with the appointment of class counsel, Rule 23 does not state explicit requirements for a plaintiff to qualify as a class representative. The requirements are implicit: If a proposed class is such that a plaintiff's claims are typical of those of the class members, and if a plaintiff does not suffer from a lack of alignment with members of the class such that the plaintiff could not adequately protect their interests, then the plaintiff qualifies as a class representative.

Rule 23 directs the court to decide whether to certify a class "[a]t an early practicable time after a person sues … as a class representative…" Rule 23(c)(1)(A). It is not necessary to delay the class certification decision until there has been discovery or until key legal issue have been decided. The court does not have to be sure it is right in its certification decision even in the face of unknowns in the case because the court can revisit class certification anytime before final judgment. Rule 23(c)(1)(C). "[A] court's inquiry on a motion for class certification is 'tentative,' 'preliminary,' and

'limited.' … As class certification decisions are generally made before the close of merits discovery, the court's analysis is necessarily prospective and subject to change." *Cox v. Zurn Pex, Inc. (In re Zurn Pex Plumbing Prods. Liab. Litig.)*, 644 F.3d 604, 613 (8th Cir. 2011).

## V. Rule 23(g) — Class counsel.

Rule 23(g) sets out the requirements the court must consider in appointing class counsel for the class. The required factors are:

> (i) the work counsel has done in identifying or investigating potential claims in the action;

> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

> (iii) counsel's knowledge of the applicable law; and

> (iv) the resources that counsel will commit to representing the class …

Here, plaintiffs request that the court appoint their lawyers, Joe D. Jacobson, Gene J. Brockland, and Christopher O. Miller, class counsel. The lawyers are qualified to serve as class counsel. The specifics of their relevant qualifications and experience is described in their declarations filed with this motion. Rather than add pages recapitulating their qualifications

24

and experience described in their declarations, the declarations are incorporated into this brief as though restated in full.

## A. Work done identifying and investigating claims.

The work done by proposed class counsel to identify and investigate the claims is described in the declarations. It includes field investigation, conversations with the plaintiffs, review of published media reports, review of court files, and extensive legal research. *Jacobson Declaration* at ¶¶ 10, 11; *Miller Declaration* at ¶¶ 11-15.

## B. Experience in handling class actions, other complex litigation, and the types of claims asserted in the action.

Jacobson and Brockland each has more than 35 years of relevant litigation experience, including in class actions, other complex litigation, and in cases involving civil RICO claims and claims under the MPA. *Jacobson Declaration* at ¶¶ 2-8; *Brockland Declaration* at ¶¶ 3-8. While Miller has fewer years of experience, his time has been well spent in complex litigation, including a civil RICO case and multiple cases under the MPA. *Miller Declaration* at ¶¶ 2-4.

### C. Knowledge of applicable law.

The lawyers are each familiar with RICO and the MPA as well as the Federal Rules of Civil Procedure applicable to class actions. They've gained this familiarity both from their work in preparing this lawsuit and from past litigation experience. *Jacobson Declaration* at ¶¶ 2-11; *Brockland Declaration* at ¶¶ 3-8; *Miller Declaration* at ¶¶ 3-4, 6.

### D. Resources counsel will commit to representing the class.

Brockland is a partner in Amundsen Davis, a Chicago-headquartered midwestern law firm with multiple offices and 235 lawyers. They have committed the financial resources necessary to represent the class. *Brockland Declaration* at ¶¶ 9, 10.

Jacobson is a partner in a three-lawyer law firm in St. Louis. While Jacobson's law firm's financial resources are obviously less than those of Amundsen Davis, he and his law firms over the years have successfully managed multiple class action cases to solid recoveries, largely financing those cases with fees earned on other cases. *Jacobson Declaration* at ¶ 13.

26

## VI.  Rule 23(c)(2)(B) — Class notice.

Upon certification of a Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."

Here, there is no ready source of individual contact information for most class members. Consumers play Torch's electronic gaming devices using cash. Credit cards and debit cards, which might identify the individual consumers, are not accepted by Torch's devices. Moreover, based on the plaintiffs' experience, Torch and the locations where Torch's devices are hosted do not collect contact information on the consumers who use the devices.

Consequently, United States mail is not, at least as of this time, an appropriate means of providing class notice. That does not mean, however, that there are not available and effective means to provide the class members "the best notice that is practicable under the circumstances."

27

Class counsel propose that the following appropriate means be used to provide notice to the absent class members about class certification:

1.      Establishment of an internet website dedicated to the class action, designed for Search Engine Optimization (SEO), which is the use of keywords and other techniques designed to maximize the likelihood of a class member using a search engine to find out about Torch machines and slot machines in Missouri to find the class action website. The website would provide a description of the case and would be set up to encourage visitors who believe that they are part of the class to enter their contact information, including names, mailing address, and email address.

2.      Placement of signs at each location where Torch devices are hosted, providing a brief message and information linking to the class action website, both in the form of a URL and a QR-Code. The message would state, in substance, "A class action has been filed on behalf of consumers of these video gaming devices. If you have lost money playing these devices, please visit the following website for more information about the case."

3.    Placement of internet ads keyed to keywords such as, "Torch Electronics," "Torch Gaming," "Missouri Slot Machines," "Missouri gas station slots," and the like, which would provide a similar message to the signs.

4.    Class counsel would develop a contact list for potential class members who entered their information on the website. respond to those individuals with additional information about the class action, and request that the visitors inform family members and friends whom they know play the Torch devices to visit the website and enter their information as well.

Class counsel believe that following this approach will allow them to build up a good contact list of potential class members. But this approach will take time. Consequently, early class certification would be useful to provide more time to build up the contact list of class members.

## CONCLUSION

Plaintiffs motion for class certification, appointment of class representatives, appointment of class counsel, and provision for class notice as described above, should be granted.

29

JACOBSON PRESS P.C.

By:   /s/ Joe D. Jacobson
      Joe D. Jacobson #33715
      222 South Central Ave., Suite 550
      Clayton, Missouri 63105
      Tel: (314) 899-9789
      Direct: (314) 899-9790
      Fax: (314) 899-0282
      Jacobson@ArchCityLawyers.com

      and

      AMUNDSEN DAVIS LLC

      Gene J. Brockland #32770
      Christopher O. Miller #70251
      120 S. Central Ave., Suite 700
      Clayton, Missouri 63105
      Tel: (314) 719-3700
      Fax: (314) 719-3721
      gbrockland@amundsendavislaw.com
      comiller@amundsendavislaw.com

      Attorneys for plaintiffs Patrick
      Romano, Joshua Wilson, Krystal
      Christensen, Jeffrey Cordaro, Carmen
      Weaver, Monica McGee, and Mary
      Bolden

30

## CERTIFICATE OF SERVICE

The filing attorney certifies that on May 5, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic case filing system upon all participants in the Court's electronic case filing system.

The filing attorney further certifies that on that same date a paper copy was mailed to defendant Rami Almuttan, 516 Shadow Mountain Ct., Ballwin, MO 63011, by U.S. Mail, first-class postage prepaid.