IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
Central Division

| | | |
|---|---|---|
| PATRICK ROMANO *et al.*, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.: 2:23-cv-04043-BCW |
| TORCH ELECTRONICS, LLC, *et al.*, | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

**PLAINTIFFS' OPPOSITION TO PARTIAL MOTION TO DISMISS**

Joe D. Jacobson #33715
JACOBSON PRESS P.C.
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Tel: (314) 899-9789
Direct: (314) 899-9790
Fax: (314) 899-0282
Jacobson@ArchCityLawyers.com

Gene J. Brockland #32770
Christopher O. Miller #70251
120 S. Central Ave., Suite 700
Clayton, Missouri 63105
Tel: (314) 719-3700
Fax: (314) 719-3721
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com

Attorneys for plaintiffs

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     Consumers have statutory standing to sue under RICO. . . . . . . . . . . . . 2

II.    Consumers did not "voluntarily" gamble so as to break the causation between Slot Operators' RICO violations and Consumers' damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.   The Wire Act is not aimed exclusively at sports betting . . . . . . . . . . . . 8

IV.   Consumers are victims of Slot Operators' crimes and their claims are not barred by *in pari deliciti* . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Adell v. Macon Cty. Greyhound Park, Inc.*,
785 F. Supp. 2d 1226 (M.D. Ala. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Brill v. Postle*, No. 2:19-cv-02027 WBS AC, 2020 WL 2936688,
2020 U.S. Dist. LEXIS 97697 (E.D. Cal. June 3, 2020) . . . . . . . . . . . . . . . . . 2, 4

*Burton v. Pet, Inc.*, 509 S.W.2d 95 (Mo. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Doug Grant v. Greate Bay Casino Corp.*,
232 F.3d 173 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Green v. Aztar Corp.*, No. 02 C 3514, 2003 WL 22012205,
2003 U.S. Dist. LEXIS 14699 (N.D. Ill. Aug. 20, 2003) . . . . . . . . . . . . . . . . . 2, 3

*Green v. Corrigan*, 87 Mo. 359 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10–11

*Hobbs v. Boatright*, 93 S.W. 934 (Mo. 1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Mastercard Int'l Inc.*, 132 F. Supp. 2d 468 (E.D. La. 2001) . . . . . . . . . . . 7

*Interstate Agri Servs., Inc. v. Bank Midwest,N.A.*,
982 S.W.2d 796 (Mo. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Major League Baseball Properties, Inc. v. Price*,
105 F. Supp. 2d 46 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021) . . . . . . . . . . . . . . 10

*Schwartz v. Upper Deck Co.*, 104 F. Supp. 2d 1228 (S.D. Cal. 2000) . . . . . . . 5

*Twiehaus v. Rosner*, 245 S.W.2d 107 (Mo. 1952) . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. v. Lombardo*, 639 F. Supp. 2d 1271 (D. Utah 2007) . . . . . . . . . . . . . . 9, 10

*U.S. v. Vinaithong*, 188 F.3d 520 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 9

*White v. McCoy Land Co.*, 87 S.W.2d 672 (Mo. App. 1935) . . . . . . . . . . . . . . . 11

*Zayed v. Associated Bank, N.A.*, 779 F.3d 727 (8th Cir. 2015) . . . . . . . . . . . . 12

*Zayed v. Associated Bank, N.A.*, No. 13-232(DSD/JSM),
2015 U.S. Dist. LEXIS 101685 (D. Minn. Aug. 4, 2015) . . . . . . . . . . . . . . . . . 12

**Statutes**

18 USC § 1964(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

18 U.S.C. § 1084 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Section 434.030, RSMo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Section 572.020, RSMo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Other Authorities**

*HR Rep No. 967*, 87th Cong, 1st Sess, reprinted in
1961 *US Code Cong & Admin News* 2631 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Reconsidering Whether the Wire Act Applies to Non-Sports
Gambling*, 42 Op. O.L.C. 1, 2018 OLC LEXIS 10,
2018 WL 7080165 (Nov. 2, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8–9

## PLAINTIFFS' OPPOSITION TO PARTIAL MOTION TO DISMISS

Defendants Torch Electronics, Inc. ("Torch"), Steven Miltenberger, and Warrenton Oil Company ("Warrenton") (together, "Slot Operators") moved [Doc. 28] to dismiss Count I of plaintiffs' complaint on the ground that Count I fails to state a claim. Slot Operators also moved to limit damages under Count III to gambling losses incurred in the three months before the complaint was filed.

The motion to dismiss Count I should be denied. An illegal gambling operation is a quintessential racketeering enterprise and if gamblers have losses because of the use of rigged slot machines, then statutory standing under RICO exists notwithstanding that the losses were gambling losses.

Moreover, persons gambling at an illegal gambling enterprise — especially one where the games are rigged — are not *in pari delicto* with the persons operating the illegal gambling enterprise. They are victims, and a victim is not *in pari delicto* with the wrongdoer.

On Count III, plaintiffs (hereafter, "Consumers") agree that the recovery of gambling losses under Section 434.030, RSMo., is limited by a three-month statute of limitations and thus losses suffered before December 2, 2022 cannot be recovered. Consumers are agreeable to an order imposing such a limitation.

1

## I. Consumers have statutory standing to sue under RICO.

Slot Operators contend Consumers lack statutory standing to bring a civil suit under RICO because gambling losses are not injuries to business or property. RICO Section 1964(c) requires a civil RICO plaintiff to allege injury to business or property directly resulting from a RICO violation to state a cause of action:

> *Any person injured in his business or property by reason of a violation of section 1962* of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee …"

18 USC § 1964(c) (emphasis added).

Many cases, including the two cases cited by Slot Operators,[1] have held that gambling losses cannot *without something more* satisfy Section 1966(c)'s requirement of an injury to business or property. That something more is typically that the game is rigged so that the gambler does not get the fair chance of winning for which he or she paid.

---

[1] Slot Operators cite two unreported district court cases in support of their position, *Brill v. Postle*, No. 2:19-cv-02027 WBS AC, 2020 WL 2936688, 2020 U.S. Dist. LEXIS 97697 (E.D. Cal. June 3, 2020), and *Green v. Aztar Corp.*, No. 02 C 3514, 2003 WL 22012205, 2003 U.S. Dist. LEXIS 14699 (N.D. Ill. Aug. 20, 2003). Slot Operators do not cite any reported decision in support of their position. *See Slot Operators' Suggestions in Support of Partial Motion to Dismiss* ("Suggestions") at 2.

*Green*, one of the cases cited by Slot Operators, explains: "Green appears to mistakenly equate property *interest* (i.e. the consideration tendered during a gambling act) with **property *injury* (i.e. lost opportunity to win as would be the case, for example, with a 'rigged' or fraudulent gambling mechanism)**." *Green*, 2003 U.S. Dist. LEXIS 14699, at *7 n.1 (bold added); *see also id.* at *8, in which the district court explained the holding in a case on which it was relying as, "voluntary participation in **illegal but non-fraudulent** gambling not compensable as plaintiff can avoid any injury simply by walking away" (emphasis added, internal quotations omitted) (emphasis added).

In dismissing Green's RICO claim, the district court concludes:

> Also, Green does [not] allege that defendants lied to him about his bets or that he was swindled or defrauded out of money. Rather, all Green alleges is that he made a conscious decision to borrow money from and place bets with the defendants. Green's gambling losses are nothing more than self-inflicted wounds. Accordingly, Green cannot establish that defendants proximately caused his injuries.

*Id.* at *9 (N.D. Ill. Aug. 20, 2003).[2]

The other unreported district court case on which Slot Operators rely provides little analysis on the RICO standing issue. Indeed, no discussion of the

---

[2] The word "not" was omitted from the decision, although it is clear from the context that "not" was intended. The risk of less careful proofreading is a reason why reliance on unreported decisions is not advisable.

3

issues of fraud or rigged games appear in its discussion of the civil RICO claims. *Brill*, 2020 U.S. Dist. LEXIS 97697 at *27-*28. Thus *Brill* provides no useful guidance in this case.

Other cases do, however, discuss the issue of rigged games and those cases consistently state that a person who loses money in illegal gambling has statutory standing under RICO to bring a civil action *if* they allege that the gambling was rigged, causing them to lose more money than they would in a fair game.

In *Adell v. Macon Cty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226 (M.D. Ala. 2011), plaintiffs alleged defendant's electronic bingo games were rigged to allow local political leaders to win large sums of money. This allegation was held insufficient to support RICO statutory standing *because there was no allegation that any machine was rigged to the **disadvantage of plaintiffs***:

> The more fundamental pleading flaw is that there are no allegations that the rigging of the machines for Mr. Langford's advantage worked to Plaintiffs' disadvantage and deprived them of an opportunity to win. Plaintiffs do not allege that their odds of winning electronic bingo were adversely impacted because of the alleged game rigging for Mr. Langford. Plaintiffs do not allege that they had no opportunity to win when they deposited money into the electronic bingo machines at Victoryland. The Complaint fails to demonstrate how the rigging of Mr. Langford's machines (for a big jackpot) resulted in Plaintiffs winning no jackpot.

*Id.* at 1240.

In *Schwartz v. Upper Deck Co.*, 104 F. Supp. 2d 1228 (S.D. Cal. 2000), another court laid out the requirement that a gambling plaintiff allege something more, namely that the defendants acted with fraud or dishonesty in the gambling activity, to state a RICO claim. In *Schwartz*, the RICO claim was dismissed for failure to plead something more:

> In trying to devise a § 1964(c) standing argument, Plaintiffs appear to equate property *interest* (i.e. the consideration tendered during a gambling act) with property *injury* (i.e. a lost opportunity to win as would be the case, for example, with a "rigged" or fraudulent gambling mechanism). …
>
> To confer standing under § 1964(c), Plaintiffs must show that they have suffered an economic harm to business or personal property that would constitute the sort of injury contemplated under § 1964(c) **as, for example, in the case of a fraudulent gambling scheme**.
>
> Here, **Plaintiffs allege no fraud or dishonesty with respect to Defendant's gambling activity**. Plaintiffs struck a bargain with Defendant and received the benefit of their bargain. …
>
> There is no allegation that Defendant has engaged in any sort of fraudulent or dishonest conduct such as misrepresenting to purchasers the odds of winning a chase card.

*Schwartz*, 104 F. Supp. 2d at 1230, 1230-31 (emphasis added); *accord Major League Baseball Properties, Inc. v. Price,* 105 F. Supp. 2d 46, 52 (E.D.N.Y. 2000) ("mere illegality of a gambling transaction" insufficient; "More important is whether the activity is run fairly and honestly").

5

Here, Consumers allege that Slot Operators' games are rigged. Complaint [Doc. 1] at ¶¶ 66-68. Consumers thus satisfy their RICO pleading obligation.

## II. Consumers did not "voluntarily" gamble so as to break the causation between Slot Operators' RICO violations and Consumers' damages.

Slot Operators argue that because gambling is a voluntary activity, there can been no causation between their alleged RICO violations and the damages suffered by Consumers and the members of the class.

Here, however, Consumers allege that they did not voluntarily seek out the opportunity to gamble with Slot Operators' gaming devices but, rather, that the slot machines were thrust upon them unwanted, irresistible like the Sirens of Greek myth. The complaint alleges Slot Operators' gambling devices are unavoidable, being placed not in separate gambling venues or in some corner of the internet where one has to seek them out, but inserted throughout the public accommodations of daily life in plaintiffs' community, including in gas stations, restaurants, convenience stores, coin laundries, supermarkets, and bars. *Complaint* at ¶¶ 27, 33, 35, 50-59, 76-85.

In many of the cases addressing the applicability of RICO to plaintiffs with gambling losses, the courts note as a factor defeating causation that plaintiffs made a *voluntary choice to gamble* and thus were the cause of their own losses. In the electronic bingo case, for example, the court stated,

6

> there are no allegations suggesting anything other than that Plaintiffs had the option of foregoing the 'Las Vegas style gambling experience' at Victoryland. There are no allegations that any Plaintiff was forced to seek out Victoryland or to spend their money playing the electronic bingo machines there …

*Adell*, 785 F. Supp. 2d at 1244. In a frequently-cited Court of Appeals decision arising out claims by blackjack players, the court held, "the players, can avoid any injury simply by walking away from the alleged wrongdoers, the casinos, by not playing blackjack in casinos." *Doug Grant v. Greate Bay Casino Corp.*, 232 F.3d 173, 187-88 (3d Cir. 2000).

Finally, for plaintiffs who went online to an internet casino:

> Although plaintiffs cry out as victims in this case, they are in a precarious position because of their own voluntary acts of internet gambling. Plaintiffs' own acts of accessing the internet, locating the casinos, entering their information, and playing electronic casino games, are all intervening causes that break the chain of causation with respect to the defendants' alleged activities, even if they were illegal.

*In re Mastercard Int'l Inc.*, 132 F. Supp. 2d 468, 496 (E.D. La. 2001).

Here, in contrast, Consumers are not individuals who chose to go to a casino, stop in a bingo parlor, or search the internet for online gambling. They are individuals who chose to buy groceries for their families, fill their tank with gas to get to work, or to eat a meal at a restaurant. And, wherever they turned, the illegal slot machines were there, tempting them to give up their grocery

7

money, their gas money, their rent, to Torch and the other members of its criminal enterprise. In short, Consumers are victims.

The Slot Operators' practice of blanketing the community with these slot machines materially distinguishes this case from those finding defendants not liable for a plaintiff's voluntary decision to gamble. Here, the clear implication of the complaint is that Consumers' gambling is not voluntary. It is a sufficient allegation to avoid dismissal.

### III. The Wire Act is not aimed exclusively at sports betting.

Slot Operators contend the RICO claims should be dismissed because the Wire Act, 18 U.S.C. § 1084, only applies to wire communications *connected to sport betting* and not betting in general. *Suggestions* at 3, 12-13. While there are cases so holding, the Eighth Circuit has not adopted this position, the Department of Justice ("DOJ") says it is not an accurate reading of the statute, and the plain language of the Wire Act itself weighs against the contention.

In 2010, the Criminal Division of the DOJ asked the Office of Legal Counsel ("OLC") whether the Wire Act conflicted with the Unlawful Internet Gambling Enforcement Act ("UIGEA") with respect to States using the internet to sell lottery tickets to in-state adults. The Criminal Division believed the Wire Act prohibited the conduct, but that the UIGEA might permit it. *See Reconsidering Whether the Wire Act Applies to Non-Sports Gambling*, 42 Op. O.L.C. 1 (Nov.

8

2, 2018) ("2018 Opinion"), 2018 OLC LEXIS 10, 2018 WL 7080165. In a surprise to the Criminal Division, which "had successfully brought Wire Act prosecutions for offenses not involving sports gambling," the OLC concluded in a 2011 Opinion that the Wire Act applied only to sports gambling and thus did not apply to state lotteries at all. 2018 Opinion, 2018 OLC LEXIS 10 at *2.

The Criminal Division asked OLC to reconsider its 2011 Opinion. OLC did and concluded it had previously gotten it wrong:

> We do not lightly depart from our precedents, and we have given the views expressed in our prior opinion careful and respectful consideration. Based upon the plain language of the statute, however, we reach a different result. While the Wire Act is not a model of artful drafting, we conclude that the words of the statute are sufficiently clear and that all but one of its prohibitions sweep beyond sports gambling.

*Id.* The 2018 Opinion is attached and its analysis is adopted herein.

The 2018 Opinion cites numerous cases holding that the Wire Act was not confined to sports betting, including *U.S. v. Vinaithong*, 188 F.3d 520 (10th Cir. 1999) ("mirror lottery"), and *U.S. v. Lombardo*, 639 F. Supp. 2d 1271, 1281 (D. Utah 2007) (online casino). *Lombardo* held that while "the language of the statute limits the prohibition on the transmission of *actual bets or wagers* to those on sporting events or contests," the remaining prohibitions were not restricted to sporting events or contests. *Id.* at 1281-82

9

Indeed, the Wire Act's legislative history states:

> The purpose of the bill is to assist various States and the District of Columbia in the enforcement of their laws pertaining to gambling, bookmaking, and like offenses and to aid in the suppression of organized gambling activities by prohibiting the use of wire communication facilities which are or will be used for the transmission of bets or wagers and gambling information in interstate and foreign commerce.

*HR Rep No. 967*, 87th Cong, 1st Sess, reprinted in 1961 *US Code Cong & Admin News* 2631, *quoted in Lombardo*, 639 F. Supp. 2d at 1280-81.

This Congressional purpose is not limited to sports betting. *But see N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 61-62 (1st Cir. 2021) (Wire Act applies only to sports betting).

### IV. Consumers are victims of Slot Operators' crimes and their claims are not barred by *in pari delicto*.

The doctrine of *in pari delicto* is frequently raised by defendants, but is often not successful. The Missouri Supreme Court long ago recognized that, "in cases where both parties are *in delicto*, concurring in an illegal act, it does not always follow they stand *in pari delicto*, for there may be and often are very different degrees in their guilt." *Green v. Corrigan*, 87 Mo. 359, 370 (1885). *In pari delicto* does not apply "where the parties to the transaction, although concurring in the illegal act, are regarded as not equally guilty in consequence of fraud, oppression, imposition or hardship practiced by one party upon the

10

other, thereby attaining an unconscionable advantage." *Id.*; *White v. McCoy Land Co.*, 87 S.W.2d 672, 687 (Mo. App. 1935) (same).

*In pari delicto* also does not bar the claim of a plaintiff, *equal in guilt to the defendant*, when permitting the action to go forward advances the public good. The public good is of greater importance than the guilt of any party. *Hobbs v. Boatright*, 93 S.W. 934, 935 (Mo. 1906) (plaintiff who joined conspiracy to defraud persons betting on a footrace was actually the victim of a fraud by his supposed partner in crime and the supposed victims; suit allowed).

"The nature or terms of a statute or rule of law will also sometimes indicate that it is intended for the protection of one class of individuals against another, and where this is the case the party belonging to the class whose protection was intended may recover what he has paid." *Twiehaus v. Rosner*, 245 S.W.2d 107, 112 (Mo. 1952) (citation omitted). For example, "the debtor of a usurious note has a cause of action against the maker," even though the note and the interest paid are both illegal. *Interstate Agri Servs., Inc. v. Bank Midwest,N.A.*, 982 S.W.2d 796, 801 (Mo. App. 1998); *accord Burton v. Pet, Inc.*, 509 S.W.2d 95, 101 (Mo. 1974) (distinguishing case of an "innocent victim of a scheme"). "A paramount public interest may call for judicial intervention in favor of one wrongdoer against the other in order to effectuate the enforcement of a public policy which overrides considerations of a benefit inuring to a wrongdoer."

11

*Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 737 (8th Cir. 2015) (Minnesota law; citation and ellipsis omitted).³

Here, it seems obvious that the Missouri laws criminalizing gambling businesses are intended for the protection of one class of persons — that is, the persons who might get sucked in and lose their money to an illegal gambling business. Similarly, it seems obvious that RICO is intended for the protection of those whose business or property might be injured by racketeering activity. Since Consumers are in the class of persons intended to be protected by these laws, it would be contrary to the intent of the General Assembly and Congress, respectively, to hold that they cannot bring suit to recover their damages from those who organized, owned, managed, and profited from the illegal schemes.

The Complaint details Slot Operators' illegal conduct in exquisite detail. What is the crime that Consumers engaged in that Slot Operators assert so conveniently bar Consumers from seeking relief? The only "misconduct" to which Slot Operators point to show Consumers *in pari delicto* with Slot Operators is that Consumers were gambling. *See Suggestions* at 3 & n.3. Except as permitted in a constitutionally-authorized casino, gambling is a criminal offense. "A person

---

³ The district court in *Zayed* cited multiple cases holding that *in pari delicto* should not be applied at the motion to dismiss stage because it is a fact-bound equitable principle subject to the court's discretion. *Zayed v. Associated Bank, N.A.*, No. 13-232(DSD/JSM), 2015 U.S. Dist. LEXIS 101685, at *9 (D. Minn. Aug. 4, 2015) (citations omitted).

commits the offense of gambling if he or she knowingly engages in gambling." Section 572.020, RSMo.

Yes, Consumers were gambling. And the Slot Operators were owning, operating, managing, and making a profit from thousands of illegal slot machines as part of an Enterprise engaged in a pattern of racketeering activity. The *delicti* was definitely not *in pari*. One cannot say as a matter of law that Consumers role as the victims in Slot Operators' illegal scheme disqualifies them from bringing this action to recover their losses and benefit the public in general.

## CONCLUSION

The motion for dismissal of Count I should be denied.

Damages under Count III should be limited to those accruing on and after December 2, 2022, three months before this suit was filed.

JACOBSON PRESS P.C.

By: /s/ Joe D. Jacobson
Joe D. Jacobson #33715
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Tel: (314) 899-9789
Direct: (314) 899-9790
Fax: (314) 899-0282
Jacobson@ArchCityLawyers.com

and

(continued next page)

Amundsen Davis LLC

Gene J. Brockland #32770
Christopher O. Miller #70251
120 S. Central Ave., Suite 700
Clayton, Missouri 63105
Tel: (314) 719-3700
Fax: (314) 719-3721
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com

Attorneys for plaintiffs Patrick Romano, Joshua Wilson, Krystal Christensen, Jeffrey Cordaro, Carmen Weaver, Monica McGee, and Mary Bolden

**CERTIFICATE OF SERVICE**

The filing attorney certifies that on May 12, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic case filing system upon all participants in the Court's electronic case filing system.

The filing attorney further certifies that on that same date a paper copy was mailed to defendant Rami Almuttan, 516 Shadow Mountain Ct., Ballwin, MO 63011, by U.S. Mail, first-class postage prepaid.

14