IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
Central Division

PATRICK ROMANO, *et al.*,　　　　)
individually and on behalf of　　　)
all others similarly situated,　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　)
　　　　　　　　　　　　　　　　)　　Case No.: 2:23-cv-04043-BCW
　　vs.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　JURY TRIAL DEMANDED
TORCH ELECTRONICS, LLC, *et al.*,　)
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　)

## SUGGESTIONS IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Joe D. Jacobson #33715
JACOBSON PRESS P.C.
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Tel: (314) 899-9789
Direct: (314) 899-9790
Fax: (314) 899-0282
Jacobson@ArchCityLawyers.com

Gene J. Brockland #32770
Christopher O. Miller #70251
AMUNDSEN DAVIS LLC
120 S. Central Ave., Suite 700
Clayton, Missouri 63105
Tel: (314) 719-3700
Fax: (314) 719-3721
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com

Attorneys for plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

I.    Class Certification Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

II.   Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      A.    Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      B.    Common Questions of Law and Fact . . . . . . . . . . . . . . . . . . . . .  5

      C.    Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

      D.    Adequacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

III.  Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

      A.    Predominance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

      B.    Superiority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

IV.   Class representatives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

V.    Rule 23(g) — Class counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

      A.    Work done identifying and investigating claims . . . . . . . . . . . . .  14

      B.    Experience in handling class actions, other complex liti-
            gation, and the types of claims asserted in the action . . . . . . . .  14

      C.    Knowledge of applicable law. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

      D.    Resources counsel will commit to representing class  . . . . . . . .  15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

i

# TABLE OF AUTHORITIES

**Cases**                                                                        **Pages**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . 9, 12

*Arkansas Education Ass'n v. Board of Education*,
446 F.2d 763 (8th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) . . . . . . . . . . . . . . . . . 4

*Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639 (2008) . . . . . . . . . . . 13

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) . . . . . . . . . . 13

*Cox v. Zurn Pex, Inc. (In re Zurn Pex Plumbing Prods.*
*Liab. Litig.)*, 644 F.3d 604 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Custom Hair Designs by Sandy v. Central Payment Co., LLC*,
984 F.3d 595 (8th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 12

*Day v. Celadon Trucking Services*, 827 F.3d 817 (8th Cir. 2016) . . . . . . . . . . 11

*Drennan v. PNC Bank, NA (In re Comty. Bank of N. Va. &*
*Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.)*,
622 F.3d 275 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Johannessohn v. Polaris Industries*, 9 F.4th 981 (8th Cir. 2021) . . . . . . . . . . 12

*Klay v. Humana, Inc.*, 382 F.2d 1241 (11th Cir. 2004) . . . . . . . . . . . . . . . . . 13

*Luiken v. Domino's Pizza, LLC*, 705 F.3d 370 (8th Cir. 2013) . . . . . . . . . . . 3, 4

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) . . . . . . . . . . . . . . . . . . . . . . 9

*Paxton v. Union National Bank*, 688 F.2d 552 (8th Cir. 1982) . . . . . . . . . . 5, 8

*Portz v. St. Cloud State University*,
297 F. Supp. 3d 929 (D. Minn. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ii

*Postawko v. Missouri Department of Corrections,*
910 F.3d 1030 (8th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

*Sciaroni v. Consumer (In re Target Corp. Customer Data*
*Sec. Breach Litig.),* 847 F.3d 608 (8th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . 8

*Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442 (2016) . . . . . . . . . . . . . . . . . 11

*Vogt v. State Farm Life Ins. Co.,* 963 F.3d 753 (8th Cir. 2020) . . . . . . . . . . 7, 8

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) . . . . . . . . . . . . . . . . . . . . 6

*Williams v. Mohawk Industries, Inc.,*
568 F.3d 1350 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Rules

Rule 23(a), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Rule 23(a)(1), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rule 23(a)(2), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5–6, 10

Rule 23(a)(3), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rule 23(a)(4), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8–9

Rule 23(b), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Rule 23(b)(3), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10–12

Rule 23(c)(1), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Rule 23(g), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 14–15

**Other Authorities**

Conte & Herbert B. Newberg, *Newberg on Class Actions*
§ 9:12 (4th ed. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Other Citations**

*St. Louis Post Dispatch* (February 24, 2022), available at https://
           www.stltoday.com/news/local/govt-and-politics/casino-
           cities-in-missouri-call-for-crackdown-on-illegal-gambling/
           article_8f0f7de4-e89e-5620-a409-5536f784d457.html . . . . . . . . 1, 5

Case 2:23-cv-04043-BCW   Document 36   Filed 05/15/23   Page 5 of 21

Plaintiffs move under Rule 23, F.R.Civ.P., for an order (a) certifying plaintiffs' proposed Rule 23(b)(3) class, (b) appointing plaintiffs class representatives, and (c) appointing attorneys Joe Jacobson of Jacobson Press P.C. and Gene Brockland and Christopher Miller of Amundsen Davis LLC as class counsel.

The bases for class certification and the definition of the proposed class are set out in the complaint. The factual bases for the appointment of the proposed class representatives and class counsel are stated in the attached declarations of plaintiffs and proposed class counsel.

## BACKGROUND

This case involves defendants' ownership, operation, or hosting of thousands of electronic gaming devices that appear in all respects to be illegal slot machines and the losses sustained by thousands of Missouri consumers playing those gaming devices.

Defendant Torch Electronic, LLC (Torch) owns the electronic gaming devices. Torch has installed thousands of its devices at gas stations, convenience stores, bars, restaurants, and other places of public accommodation in Missouri.[1] Torch's devices are all made by the same manufacturer and all run the same or substantially similar software. If one of Torch's devices is an illegal slot machine, then they all are because there is no meaningful distinction among them.

---

[1]     The *St. Louis Post Dispatch* reported February 24, 2022 that Torch owns up to 14,000 of these electronic devices. *Https://www.stltoday.com/ news/local/govt-and-politics/casino-cities-in-missouri-call-for-crackdown-on-illegal-gambling/article_8f0f7de4-e89e-5620-a409-5536f784d457.html.*

1

Defendant Steven Miltenberger owns Torch and is the principal person running the gambling enterprise described in the complaint.

The remaining defendants host Torch's electronic gaming devices at their places of public accommodation and serve the customers who use the devices. Defendant Warrenton Oil Company owns many gas stations with convenience stores and is a major host of Torch's electronic gaming devices. Defendants Mohammed Almuttan, Rami Almuttan, and Mally, Inc., also host Torch's devices, albeit on a smaller scale than Warrenton.

Plaintiffs allege Torch's electronic gaming devices appear in all relevant aspects to be slot machines as defined by Missouri statute. If these devices are what they appear to be, then these devices are illegal slot machines under Missouri law because they are unlicensed, located outside of licensed casinos, and pay out less than required under the minimum standards for slot machines established by Missouri law.

If these devices are what they appear to be, then defendants are illegally owning, operating, managing, promoting, and profiting from an illegal gambling enterprise, conduct illegal under Missouri law and punishable by imprisonment for more than one year. Defendants' conduct would thus be predicate acts for plaintiffs' claims under the federal Racketeer Influenced and Corrupt Organizations Act (RICO) and would constitute unlawful business practices under the Missouri Merchandising Practices Act (MPA).

2

Defendant Torch contends its devices are not slot machines because they are "no-chance games" in that they allow players to peek ahead and see the result of the next play, thus allegedly eliminating the element of chance.

Torch's creative effort to place their slot machines outside the bounds of Missouri's prohibition of illegal gambling devices cannot survive proper interpretation and application of Missouri law. *The merits of the case, however, is not an issue to be resolved for class certification.* The issue to be resolved is whether plaintiffs' claims are so similar to those of the absent class members, and whether defendants' defenses are as similarly uniform across the board, that the case ought to be certified as a class action so that the common claims and defenses can be uniformly resolved at one go.

This is an appropriate case to be certified as a class action because the common issues dominate over any individual issues affecting a class member.

## ARGUMENT

### I. Class Certification Standard.

Class certification is controlled by Rule 23, F.R.Civ.P. "To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *Postawko v. Missouri Depart. of Corrections*, 910 F.3d 1030, 1036 (8th Cir. 2018) (citations omitted).

The four requirements of Rule 23(a) are numerosity, commonality, typicality, and fair and adequate representation. *Id., quoting Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).

3

Plaintiff move under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The court makes only a preliminary inquiry into, and does not decide, the merits of the case. "The preliminary inquiry of the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case." *Luiken*, 705 F.3d at 372, *quoting Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005).

Here, class certification is not a close question. The court should therefore certify a Rule 23(b)(3) class defined as follows:

> All natural persons who deposited money into any electronic gaming device owned or operated by Torch Electronics, LLC, in the State of Missouri and not located on the premises of a Missouri-licensed casino on any one or more days on or after March 3, 2018 and who received back following their play an amount of money less than the amount deposited that day.

## II. Rule 23(a).

### A. Numerosity.

Numerosity means at its most basic that "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1).

> A number of factors are relevant to this inquiry, the most obvious of which is, of course, the number of persons in the proposed class. No arbitrary rules regarding the necessary size of classes have been established. In addition to the size of the class, the court may also consider the nature of the

4

> action, the size of the individual claims, the inconvenience
> of trying individual suits, and any other factor relevant to
> the practicability of joining all the putative class members.

*Paxton v. Union National Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982).

"Generally, a putative class size of forty will support a finding of numerosity, and much smaller classes have been certified by courts in the Eighth Circuit." *Portz v. St. Cloud State University*, 297 F. Supp. 3d 929, 944 (D. Minn. 2018) (citations, internal quotations and brackets omitted); *see Arkansas Educ. Ass'n v. Board of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (20 members)

Here, although we do not know the exact number of class members, the number is obviously in the thousands. The *Post-Dispatch*'s estimate of the number of Torch machines in operation is 14,000. In St. Louis County alone, Torch operated nearly 400 illegal slot machines in 2022. *Miller Declaration* at ¶ 8. Each machine is played by multiple consumers over the course of a day, month, and year. Nearly all of the plaintiffs play Torch's slot machines multiple times a week and regularly see other individuals playing the devices as well. *See Declarations of Joshua Wilson, Krystal Christensen, Jeffrey Cordaro, Carmen Weaver, Monica McGee, and Mary Bolden*, all filed with this motion.

Thus, even if the *Post-Dispatch*'s estimate is overstated, the class must contain at least thousands of individuals. Class size satisfies numerosity.

## B. Common Questions of Law and Fact.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class" as a condition of class certification. The Supreme Court explains that

5

this commonality cannot be superficial, "since any competently crafted class complaint literally raises common questions." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citation and internal quotations and brackets omitted).

> Their claims must depend upon a common contention … That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* at 350. To satisfy the Rule 23(a)(2) requirement, "even a single common question will do." *Id.* at 359 (internal quotations and brackets omitted).

Here, there are more than just a single common question decisive to the validity of every class member's claims. There are multiple common questions. They are set out at length in the Complaint at pp. 22-26, ¶ 88, which paragraph is incorporated by reference. There is also the key defense publicly proclaimed by defendants based on Torch's devices' "prize viewer" function. Whether that look-ahead function causes Torch's devices not to be illegal slot machines is a common question at the heart of the case that could resolve the claims en mass.

All these issues are essential to each class member's individual claims. None require individualized proof. *All of the common issues focus on the defendants and their actions.* The peculiarities of any individual plaintiff or class member thus falls outside of the analysis of these common issues.

Commonality is satisfied.

6

**C.    Typicality.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

> Typicality is fairly easily met so long as other class members have claims similar to the named plaintiff. Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory. When typicality and commonality arguments overlap significantly, the analysis for commonality largely determines typicality.

*Custom Hair Designs by Sandy v. Central Payment Co., LLC*, 984 F.3d 595, 604 (8th Cir. 2020) (citations and internal quotations omitted), *following Postawko*, 910 F.3d at 1039.

"Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Postawko*, 910 F.3d at 1039 (citation and internal quotations omitted). "[P]erfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. … To forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 767 (8th Cir. 2020) (citation and internal brackets omitted).

Here, there will no doubt be variations among class members. Some will be gambling addicts; some will be casual gamblers. Some could lawfully enter a

licensed casino and some are barred from entry. Some will be children. Some have the option to shop locally in a store where there are no unlicensed slot machines; some will have no choice but to face an unlicensed slot machine every time they go shopping or buy gas. Yet none of these variations among the class members make the claims of any materially different from those of the plaintiffs.

"Perfect symmetry" is not the requirement. The requirement is typicality. That requirement is satisfied here.

### D. Adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The test is "whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63. "The linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Sciaroni v. Consumer (In re Target Corp. Customer Data Sec. Breach Litig.)*, 847 F.3d 608, 613 (8th Cir. 2017) (citation, internal quotations, and brackets omitted).

The first aspect of adequacy focuses on the alignment of the class representative with the class members and if there is a potential for conflict if potential outcomes would benefit the class representative but not the absent class members. *Vogt*, 963 F.3d at 767-68.

8

Here, there is no misalignment. Plaintiffs seek to recover *for all class members* the money *each class member lost* playing Torch's devices. Plaintiffs also seek an order halting the ongoing operation of defendants' illegal gambling enterprise. Both outcomes would benefit absent class members just as they would benefit plaintiffs.

The proposed class representatives understand their role as fiduciaries to the absent class members and their responsibility to ensure that class counsel effectively pursue the interests of the class. *See Declarations of Patrick Romano, Joshua Wilson, Krystal Christensen, Jeffrey Cordaro, Carmen Weaver, Monica McGee, and Mary Bolden.* The interests of plaintiffs and the class members are aligned. Plaintiffs would be adequate class representatives, satisfying the requirements of the first part of Rule 23(a)(4).

The second aspect of adequacy focuses on plaintiffs' retention of lawyers sufficiently experienced, skilled, and dedicated to properly prosecuting the case on behalf of the class. "[T]he adequacy of representation enquiry is also concerned with the 'competency and conflicts of class counsel.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 n.31 (1999), *quoting Amchem Prods. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).

"Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) those questions have, since 2003, been governed by Rule 23(g)." *Drennan v. PNC Bank, NA*, 622 F.3d 275, 292 (3d Cir. 2010) (ellipsis omitted).

The adequacy of proposed class counsel is therefore discussed below in the discussion about appointment of class counsel under Rule 23(g). Suffice it to state at this point, proposed class counsel are experienced in class actions and complex litigation and have no interests in conflict with those of the class. *See Declarations of Joe D. Jacobson, Gene J. Brockland, and Christopher O. Miller.*

In short, the four requirements for class certification set out in Rule 23(a) are satisfied. The analysis, therefore, turns to the requirements of Rule 23(b)(3).

## III. Rule 23(b)(3).

Rule 23(b) establishes three types of class actions. This action is brought under the third type, where "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy..."

### A. Predominance.

The test of predominance under Rule 23(b)(3) is more stringent than the commonality requirement of Rule 23(a)(2). For predominance, common questions must not only be common, they must also be more significant and important to the case than any individual questions that might arise.

> The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one

10

> where the same evidence will suffice for each member to
> make a prima facie showing or the issue is susceptible to
> generalized, class-wide proof. The predominance inquiry
> asks whether the common, aggregation-enabling, issues in
> the case are more prevalent or important than the non-
> common, aggregation-defeating, individual issues. When one
> or more of the central issues in the action are common to the
> class and can be said to predominate, the action may be
> considered proper under Rule 23(b)(3) even though other
> important matters will have to be tried separately, such as
> damages or some affirmative defenses peculiar to some
> individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citations, internal
quotations, and brackets omitted).

Here, there is little to consider about any individual plaintiff except the
dates and amount of their losses. Individual differences in damages unattached
to liability issues is not the type of issue that ordinarily prevents class certifica-
tion. "Slight variation in actual damages does not defeat predominance if there
are common legal questions and common facts." *Custom Hair*, 984 F.3d at 602.
"When there are issues common to the class that predominate, the action may
be considered proper under Rule 23(b)(3) even though other important matters
will have to be tried separately, such as damages or some affirmative defenses
peculiar to some individual class members." *Day v. Celadon Trucking Services*,
827 F.3d 817, 833 (8th Cir. 2016), *quoting Tyson Foods*, [577 U.S. 442,] 136 S. Ct.
1036, 1045, 194 L. Ed. 2d 124 (2016).

Here, the court need not look at the individual facts relating to plaintiffs
or absent class members in determining liability. Rather, for every issue to

establish liability (other than a member's status as a consumer under the MPA), *the focus is entirely on the defendants*. The defendants' actions in establishing and running their illegal gambling enterprise are the same with respect to the class as a whole and thus common issues predominate.

### B. Superiority.

Rule 23(b)(3) also requires a class action be superior to other means of resolving the disputes between the class members and defendants. While it would seem that a single class action would always be superior to pursuing thousands of repetitive individual actions, the decision is not always that easy.

"Class actions are superior when the class members' claims are generally small and unlikely to be pursued individually." *Custom Hair*, 984 F.3d at 605. This is because class actions permit aggregation of "relatively paltry recoveries into something worth someone's ... labor." *Amchem Products*, 521 U.S. at 617 (1997). However, if "the underlying issues ... would present a significant risk of jury confusion and would create enormous challenges to trial management," a class action may not be superior regardless of how small the claims are. *See Johannessohn v. Polaris Ind.*, 9 F.4th 981, 986 (8th Cir. 2021) (no error denying certification where class action would require jury to apply "the laws of four different states to forty-three different vehicle configuration").

Here, a jury would only have to apply Missouri and federal law to a single or limited configuration of electronic gaming devices. Trying this class action should not be significantly more difficult than trying individual-plaintiff cases.

The extraordinary case of *Johannessohn* notwithstanding, concerns about the manageability of a class action "will rarely, if ever, be in itself sufficient to prevent certification of a class." *Klay v. Humana, Inc.*, 382 F.2d 1241, 1272 (11th Cir. 2004), abrogated in part on other grounds by *Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639 (2008); Conte & Herbert B. Newberg, *Newberg on Class Actions* § 9:12 (4th ed. 2013). The question is not whether there will be difficulties managing the proposed class action — any big case will bring with it management difficulties — but rather whether certifying a class will create "more management problems than any of the alternatives." *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (citation omitted).

Predominance and superiority are not entirely separate considerations. If predominance is satisfied, "then a class action will likely be more manageable than and superior to individual actions." *Id*. It is not appropriate to consider an action unmanageable because the class would be large. "[T]he more claimants there are, the more likely a class action is to yield substantial economies in litigation." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

## IV. Class representatives.

Rule 23 does not state explicit requirements for a plaintiff to qualify as a class representative. The implicit requirements are that if the plaintiff's claims are typical and the plaintiff is adequate, then the plaintiff qualifies as a class representative.

The plaintiffs are qualified to serve as class representatives.

13

## V. Rule 23(g) — Class counsel.

Rule 23(g) sets out the requirements the court must consider in appointing class counsel for the class. Plaintiffs request the court appoint their lawyers, Joe D. Jacobson, Gene J. Brockland, and Christopher O. Miller, class counsel. The lawyers are qualified to serve as class counsel. The specifics of their qualifications and experience are described in their declarations filed with this motion.

### A. Work done identifying and investigating claims.

Class counsel performed field investigation, interviewed plaintiffs, reviewed published media reports, reviewed court files, and did extensive legal research. *Jacobson Dec.* at ¶¶ 10, 11; *Miller Dec.* at ¶¶ 7-15.

### B. Experience in handling class actions, other complex litigation, and the types of claims asserted in the action.

Jacobson and Brockland each has more than 35 years of relevant litigation experience, including in class actions, complex litigation, and cases involving civil RICO and the MPA. *Jacobson Dec.* at ¶¶ 2-8; *Brockland Dec.* at ¶¶ 3-8. While Miller has fewer years of experience, much of his time has been spent in complex litigation, including a civil RICO case and multiple cases under the MPA. *Miller Dec.* at ¶¶ 2-4.

### C. Knowledge of applicable law.

The lawyers are familiar with RICO, the MPA, and class actions from past experience and from their work preparing this lawsuit. *Jacobson Dec.* at ¶¶ 2-11; *Brockland Dec.* at ¶¶ 3-8; *Miller Dec.* at ¶¶ 3-4, 6.

14

### D. Resources counsel will commit to representing the class.

Amundsen Davis is a Chicago-headquartered Midwestern law firm with multiple offices and 235 lawyers. Amundsen Davis has committed the financial resources necessary to represent the class. *Brockland Declaration* at ¶¶ 9, 10.

Jacobson Press is a three-lawyer firm. While its financial resources are obviously less than Amundsen Davis's, Jacobson and his law firms have successfully handled multiple class action cases over the years, largely financing those cases with fees earned on other cases. *Jacobson Declaration* at ¶ 13.

### CONCLUSION

A court should decide class certification at "an early practicable time after a person sues … as a class representative…" Rule 23(c)(1)(A). There is no need to delay certification until there has been discovery or key legal issues have been decided. A court does not have to be certain when certifying a class because it can revisit class certification anytime before final judgment. *Rule 23(c)(1)(C).* "[A] court's inquiry on a motion for class certification is 'tentative,' 'preliminary,' and 'limited.' … As class certification decisions are generally made before the close of merits discovery, the court's analysis is necessarily prospective and subject to change." *Cox v. Zurn Pex, Inc.*, 644 F.3d 604, 613 (8th Cir. 2011).

Plaintiffs' motion for class certification, appointment of class representatives, and appointment of class counsel should be granted.

15

JACOBSON PRESS P.C.

By:     /s/ Joe D. Jacobson
        Joe D. Jacobson #33715
        222 South Central Ave., Suite 550
        Clayton, Missouri 63105
        Tel: (314) 899-9789
        Direct: (314) 899-9790
        Fax: (314) 899-0282
        Jacobson@ArchCityLawyers.com

        and

        AMUNDSEN DAVIS LLC

        Gene J. Brockland #32770
        Christopher O. Miller #70251
        120 S. Central Ave., Suite 700
        Clayton, Missouri 63105
        Tel: (314) 719-3700
        Fax: (314) 719-3721
        gbrockland@amundsendavislaw.com
        comiller@amundsendavislaw.com

        Attorneys for plaintiffs Patrick Romano,
        Joshua Wilson, Krystal Christensen,
        Jeffrey Cordaro, Carmen Weaver, Monica
        McGee, and Mary Bolden

## CERTIFICATE OF SERVICE

The filing attorney certifies that on May 15, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic case filing system upon all participants in the Court's electronic case filing system.

The filing attorney further certifies that on that same date a paper copy was mailed to defendant Rami Almuttan, 516 Shadow Mountain Ct., Ballwin, MO 63011, by U.S. Mail, first-class postage prepaid.

16