**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **PATRICK ROMANO,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) No. 2:23-cv-04043-BCW |
| | ) |
| **TORCH ELECTRONICS, LLC,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS MOHAMMED ALMUTTAN AND MALLY, INC.'S SUGGESTIONS IN SUPPORT OF PARTIAL MOTION TO DISMISS

Defendants Mohammed Almuttan ("Almuttan") and Mally, Inc. ("Mally"), by and through undersigned counsel, respectfully submit the following Suggestions in Support of their Partial Motion to Dismiss Counts I and III of Plaintiffs' Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

# TABLE OF CONTENTS

Introduction .................................................................................................................................. 1

    I.    RELEVANT FACTUAL BACKGROUND ..................................................................... 2

    II.    RELEVANT LEGAL STANDARD ................................................................................ 3

    III.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE A CIVIL RICO CLAIM ............... 4

        A.    Plaintiffs Fail to Adequately Allege Statutory Standing ...................................... 4

        B.    Plaintiffs Fail to Adequately Allege an Association-in-Fact Enterprise ........................ 7

        C.    Plaintiffs Fail to Adequately Allege Predicate Acts .......................................... 10

        D.    Plaintiff Fail to Adequately Allege a Civil RICO Conspiracy Claim ............................ 12

    IV.    SECTION 434.030 IS UNCONSTITUTIONAL ................................................................ 12

    V.    CONCLUSION ................................................................................................................ 14

Certificate of Service ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833 (8th Cir. 2005) ........................................... 11

*Adell v. Macon County Greyhound Park, Inc.*, 785 F. Supp. 2d 1226 (M.D. Ala. 2011) .......... 5, 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 3, 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................... 3, 4

*Crest Const. II, Inc. v. Doe*, 660 F.3d 346 (8th Cir. 2011) ............................................... 1, 4, 7, 10

*Dobbs v. Dobbs Tire & Auto Ctrs., Inc.*, 969 S.W.2d 894 (Mo. Ct. App. 1998) .......................... 11

*Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173 (3d Cir. 2000) ................................ 6

*Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655 (8th Cir. 2012) .................................................. 4

*Gregory v. Dillard's, Inc.*, 565 F.3d 464 (8th Cir. 2009) ............................................................... 4

*Gymatso v. New Metro Trucking Corp.*, 2013 WL 2178032 (D. Minn. May 20, 2013) ............... 4

*Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) ....................................................... 5, 6

*In re MasterCard Intern. Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468 (E.D. La. 2001),... 6

*In re MasterCard Int'l Inc.*, 313 F.3d 257 (5th Cir. 2002) ............................................................ 11

*Jiles v. Schuster Co.*, 357 F. Supp. 3d 908 (W.D. Mo. 2018) ....................................................... 13

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir. 1991) ............................................................ 4

*Nettles v. UMB Bank, N.A.*, 2010 WL 11618679 (W.D. Mo. Sept. 13, 2010) ............................... 4

*New Hampshire Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021) .................................... 11

*Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006) ........................................................................................................................................... 11

*Rodriguez v. Topps Co., Inc.*, 104 F. Supp. 2d 1224 (S.D. Cal. 2000) .......................................... 5

*Schoene v. Hickam*, 397 S.W.2d 596 (Mo. banc 1966) ............................................................... 11

*Stalley v. Catholic Health Initiatives*, 509 F.3d 517 (8th Cir. 2007) ............................................. 4

*Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808 (8th Cir. 1992) ............................................. 7, 8

*United States v. Bala*, 489 F.3d 334 (8th Cir. 2007) ......................................................................... 12

*United States v. Lemm*, 680 F.2d 1193 (8th Cir. 1982) ................................................................ 8, 9

**Statutes**

18 U.S.C. § 1084 ................................................................................................................................ 10

18 U.S.C. § 1955 ............................................................................................................................ 10, 12

18 U.S.C. § 1962 ........................................................................................................................... passim

RSMo. § 407.020 .................................................................................................................................. 1

RSMo. § 434.030 ........................................................................................................... 1, 2, 12, 13, 14

RSMo. § 572.020 ................................................................................................................................ 11

RSMo. § 572.010 ................................................................................................................................ 12

**Other Authorities**

 Mo. Const. Art. III § 39 ..................................................................................................................... 13

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................... 1, 4

Federal Rule of Civil Procedure 8(a)(2) ........................................................................................... 3

Case 2:23-cv-04043-BCW   Document 38   Filed 05/19/23   Page 4 of 20

*Introduction*

Plaintiffs are seven Missouri citizens seeking damages for money they allegedly lost playing "electronic slot machines" imported, installed, and operated by Defendant Torch Electronics, LLC ("Torch"). Plaintiffs allege Torch's machines are illegal gambling devices under Missouri law and that playing them constitutes gambling. Plaintiffs assert three claims against Defendants: (1) Count I – alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) Count II – alleged violation of the Missouri Merchandising Practices Act (the "MMPA"); and (3) Count III – a request for money lost brought under Section 434.030 of the Revised Statutes of Missouri ("RSMo."). Defendants Torch, Steven Miltenberger ("Miltenberger"), and Warrenton Oil Company ("Warrenton Oil") filed a partial motion to dismiss Plaintiffs' Complaint on April 28, 2023.[1] (Doc. 28).

Plaintiffs fail to adequately allege a civil RICO claim for a number of reasons. First, Plaintiffs' Complaint fails to clear even the threshold issue of statutory standing. To establish statutory standing to bring a civil RICO claim, a plaintiff must allege a concrete injury to business and property and both "but for" and proximate causation. However, it is well established that gambling losses are not cognizable injuries for civil RICO purposes, and Plaintiffs' voluntary decision to use the Torch machines is the true cause of any losses. Plaintiffs have also failed to adequately allege necessary elements of a civil RICO claim. Specifically, Plaintiffs have not alleged facts showing the existence of an enterprise with an "ascertainable structure distinct from the pattern of racketeering activity." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 354–55 (8th Cir. 2011). In other words, Plaintiffs have shown no connection between Defendants beyond their alleged arrangements regarding the Torch machines. Further, Plaintiffs have failed to adequately

---

[1] Defendants Mohammed Almuttan and Mally respectfully join in the other defendants' partial motion to dismiss and adopt the arguments set forth in support of that motion. (*See* Doc. 29).

1

plead predicate acts. Plaintiffs rely on inapplicable federal law and are barred from relying on Missouri gambling laws by the doctrine of *in pari delicto* because they voluntarily participated in what they allege is illegal gambling.

Finally, Plaintiffs' claim to recover money lost under RSMo. § 434.030—a statute last amended in 1953—fails because that statute runs afoul of the provisions of the Missouri Constitution that legalized gambling in the 1980s and 1990s.

I. **RELEVANT FACTUAL BACKGROUND[2]**

Plaintiffs bring a civil RICO claim and two Missouri state law claims against Defendants, who Plaintiffs claim engaged in a pattern of racketeering activity revolving solely and entirely around the operation and installation of "electronic slot machines." (Doc. 1 at 5). Defendants are (1) Torch, which imports, installs, and operates the "electronic slot machines" (the "Torch machines"); (2) Miltenberger, who is Torch's highest-ranking officer; (3) Warrenton Oil; (4) Mohammed Almuttan; (5) Rami Almuttan, Mohammed's brother; and (6) Mally, which is owned and operated by the Almuttan brothers. (*Id.* at 2–3). Mally owns a convenience store located in St. Louis County, Missouri. (*Id.* at 3–4). Warrenton Oil owns and operates numerous gas stations and convenience stores throughout Missouri. (*Id.* at 3).

According to the Complaint, Torch imports, owns, and operates thousands of Torch machines throughout Missouri. (*Id.* at 5). Plaintiffs allege that Torch entered into agreements with Warrenton Oil and Mally to install Torch machines at their gas stations and convenience stores. (*Id.*). Under these agreements, Torch promised to do the following:

a. install, operate, and maintain the slot machines on the owner's premises;
b. split the net proceeds generated by each slot machine with the owner of the premises where it is installed and operated; and

---

[2] For purposes of this Motion, Defendants Mohammed Almuttan and Mally accept as true the factual allegations in the Complaint. In the event that Plaintiffs' claims survive this Motion, Almuttan and Mally reserve all rights with respect to those allegations.

  c. indemnify the owner of each establishment for any liability the owner may face arising from the operation of the slot machines.

(*Id.*). For their part, Warrenton Oil and Mally promised to do the following:

  a. allow Torch to install the slot machines on the premises;
  b. employ cashiers to redeem tickets from the machines;
  c. maintain copies of the tickets redeemed the slot machines [*sic*]; and
  d. contact Torch to report any problems that arise from the slot machines.

(*Id.*). Pursuant to these agreements, Torch placed three Torch machines at Mally's convenience store and placed Torch machines at locations owned by Warrenton Oil. (*Id.* at 6).

  Plaintiffs are seven Missouri citizens, each of whom voluntarily used the Torch machines at various times and at locations owned by Warrenton Oil and Mally. (*Id.* at 2, 5, and 17–21). The Plaintiffs each lost money while playing the Torch machines. (*Id.* at 17–21). Plaintiffs allege that these machines are illegal and that their installation and operation constitute illegal racketeering activity that harmed the consumers who used the machines. (*Id.* at 22–23). Plaintiffs also allege that Torch and Warrenton Oil hire lobbyists and contribute to political action committees to influence Missouri lawmakers in an effort to legalize the Torch machines. (*Id.* at 14–15).

  **II. RELEVANT LEGAL STANDARD**

  Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

3

harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims…, rather than facts that are merely consistent with such a right.'" *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (quoting *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007)).

Additionally, "[c]ivil RICO charges regularly receive *heightened scrutiny at the motion to dismiss stage* of litigation because civil RICO is considered 'an unusually potent weapon - the litigation equivalent of a thermonuclear device.'" *Nettles v. UMB Bank, N.A.*, 2010 WL 11618679, at *3 (W.D. Mo. Sept. 13, 2010) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)) (emphasis added). "A RICO claim must be pleaded with particularity under Rule 9(b)." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011).

### III. PLAINTIFFS FAIL TO ADEQUATELY ALLEGE A CIVIL RICO CLAIM

Where, as here, plaintiffs fail to allege facts sufficient to state a claim, a court must dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Ashcroft*, 556 U.S. at 679. The standard for adequately pleading a civil RICO claim is high, because RICO "does not provide a cause of action for all instances of wrongdoing; its focus, rather, is the eradication of 'organized, long-term, habitual criminal activity.'" *Gymatso v. New Metro Trucking Corp.*, 2013 WL 2178032, at *3 (D. Minn. May 20, 2013) (quoting *Crest Const. II, Inc.* at 353).

#### A. Plaintiffs Fail to Adequately Allege Statutory Standing

A plaintiff wishing to use RICO as a basis for a private cause of action not only has to satisfy Article III constitutional standing but must also satisfy a heightened RICO statutory standing test. This requires both (1) proof of a concrete injury to business or tangible property and (2) well-pleaded facts demonstrating the existence of both "but for" and proximate causation. *See Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012); *Hemi Group, LLC v. City of*

*New York*, 559 U.S. 1, 9 (2010). Plaintiffs cannot satisfy either requirement here.

Gambling losses—the only injuries Plaintiffs claim to have suffered—are not concrete financial losses cognizable under the civil RICO statute. *See Adell v. Macon County Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1229–36 (M.D. Ala. 2011). In *Adell*, plaintiffs alleged that their losses from playing electronic bingo games were recoverable under RICO. *Id.* But the court dismissed the plaintiffs' civil RICO claims for lack of statutory standing, finding that gambling losses "are nothing more than self-inflicted wounds" and that gamblers are voluntary participants who do not suffer a RICO property loss just because they did not win the games they voluntarily played. *Id.* at 1238. In short, gambling losses are "not the sort of injuries contemplated" under the civil RICO statute. *Id.*

While some courts have found that gambling losses may constitute injuries cognizable under RICO if there are allegations of fraud or dishonesty such as "misrepresenting to purchasers the odds of winning," the allegations in this case make clear that that exception—if it even applies in this circuit (and there is no authority that it does)—does not apply here. *See Rodriguez v. Topps Co., Inc.*, 104 F. Supp. 2d 1224, 1226–27 (S.D. Cal. 2000). While the Eighth Circuit has not determined that gambling losses are recoverable under the civil RICO statute, even if it had, there are absolutely no allegations that Defendants misrepresented the odds of customers winning while using the Torch machines. In other words, there are no allegations of fraud or dishonesty. In fact, Plaintiffs concede that "Torch does not display signage on or near its slot machines stating the actual aggregate Net Payout % for all of its devices." (Doc. 1 at 14). Plaintiffs allege that the Torch machines are illegal, in part, because they "look and sound like the legal slot machines found in licensed casinos" but do not provide the same payouts. (*Id.* at 13–14). These allegations are woefully insufficient to show fraud or misrepresentation. As Plaintiffs make clear, Torch machines

are located at gas stations, convenience stores, bars, and restaurants—*not* casinos—and do not include the same signage as slot machines located in casinos. Simply appearing similar to slot machines in casinos does not mean the Torch machines somehow misrepresent the odds of winning. Plaintiffs have alleged no facts showing that Defendants misrepresented a customer's odds of winning money while using a Torch machine.

Plaintiffs also lack statutory standing to pursue their civil RICO claim because they voluntarily played the Torch machines. As a result, they cannot establish proximate causation. *See Hemi Group, LLC*, 559 U.S. at 9 (holding that, to state a civil RICO claim, a plaintiff must show that a RICO predicate offense was the "but for" *and* proximate cause of the injury). Here, Plaintiffs' voluntary decisions to play the Torch machines were the direct and superseding causes of any alleged loss. *See Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 187–88 (3d Cir. 2000) ("Unlike an ordinary RICO victim, in this case the allegedly injured plaintiffs, i.e., the players, can avoid any injury simply by walking away from the alleged wrongdoers, the casinos, by not playing[.]"); *Adell*, 785 F. Supp.2d at 1244 ("There are no allegations that any Plaintiff was forced to seek out Victoryland or to spend their money playing the electronic bingo machines there . . . Instead, they chose to enter, deposit money into the electronic bingo machines and press the button that commenced the spinning of the electronic 'wheels' . . . When they lost, they did not concomitantly win a private right of action to bring a federal RICO claim to recover those losses.").

As the court concluded in *Adell*, Plaintiffs' "own acts of playing the electronic bingo machines are intervening causes that break the chain of causation with respect to the defendants' alleged [RICO] activities, even if they were illegal." *See Adell*, 785 F. Supp. 2d at 1244 (quoting *In re MasterCard Intern. Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 496 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002)) (internal quotations omitted). Plaintiffs cannot satisfy the

6

Case 2:23-cv-04043-BCW   Document 38   Filed 05/19/23   Page 10 of 20

proximate cause RICO statutory standing requirement, and Plaintiffs' civil RICO claim should therefore be dismissed.

### B. Plaintiffs Fail to Adequately Allege an Association-in-Fact Enterprise

Even if Plaintiffs could establish statutory standing for their civil RICO claim—which they cannot—they have failed to adequately plead facts in support of the essential elements of such a claim. Plaintiffs allege that Defendants violated 18 U.S.C. § 1962(c). (Doc. 1 at 27–36). "A violation of § 1962(c) requires appellants to show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Crest Const. II, Inc.*, 660 F.3d at 353 (cleaned up).

In support of the second element of their Section 1962(c) claim, Plaintiffs allege that an association-in-fact enterprise exists among Defendants. (*See* Doc. 1 at 28). "An association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Crest Const. II, Inc.*, 660 F.3d at 354 (cleaned up). "The existence of an enterprise is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other." *Id.* (cleaned up). "In deciding whether an alleged RICO enterprise has an ascertainable structure distinct from the pattern of racketeering activity, we must determine if the enterprise would still exist were the predicate acts removed from the equation." *Id.* at 354–55.

Allegations of a RICO enterprise are insufficient where, as here, the only common factor linking individual defendants and defining them "as a distinct group" is their participation in the alleged scheme. *See id.* at 355. Other legitimate activities conducted by the alleged participants do not form an enterprise when those activities are not "in furtherance of the common or shared purpose of the enterprise and, thus, [are] not acts of the enterprise." *Stephens, Inc. v. Geldermann,*

7

*Inc.*, 962 F.2d 808, 816 (8th Cir. 1992).

For example, an arson ring "constituted an enterprise with a structure distinct from that inherent in its pattern of racketeering," because it carried on other various activities, "such as purchasing, repairing, and destroying property," apart from the filing of fraudulent insurance claims, which was mail fraud and constituted the predicate acts of racketeering. *See United States v. Lemm*, 680 F.2d 1193, 1201 (8th Cir. 1982).

In this case, Plaintiffs do not allege any activities carried on by Defendants that would constitute an enterprise *separate and apart from* the installation and operation of the Torch machines, which are the alleged predicate acts of racketeering. According to Plaintiffs' allegations, Defendants have no connection to each other apart from the installation and operation of the Torch machines. In other words, Plaintiffs' civil RICO claim fails the simple test articulated by the Eighth Circuit: "Remove these predicate acts of racketeering, and the alleged association-in-fact evaporates." *Stephens, Inc.*, 962 F.2d at 816.

Plaintiffs' attempts to allege an association-in-fact fall short. The Complaint makes the conclusory allegation that the alleged enterprise "has an ascertainable structure that is distinct from the pattern of racketeering activity." (Doc. 1 at 28). Specifically, Plaintiffs point to the fact that the Almuttan brothers, Mally, and Warrenton Oil own convenience stores, gas stations, bars, and restaurants separate and apart from the Torch machines located at those businesses. (Doc. 1 at 28–29). But Plaintiffs allege no facts showing that any of the defendants have any connection *to each other* apart from the installation and operation of the Torch machines at their businesses.

Instead, the facts Plaintiffs have pleaded make clear that these businesses do not exist merely to increase profits from the Torch machines. For example, Plaintiffs claim that the Almuttan brothers negotiated to have only three Torch machines installed at one convenience store

8

owned by Mally. (Doc. 1 at 6). Thus, the convenience store necessarily preexisted the installation and operation of the Torch machines. Plaintiffs have not—and could not—plausibly plead that Mally's convenience store exists merely to provide a location for three Torch machines. It is even less plausible that Mally's convenience store is part of a larger enterprise shared by Defendants that extends beyond the operation and installation of the Torch machines.

These facts are nothing like the enterprise in *Lemm*, which involved all of the participants purchasing, repairing, and destroying property before they filed fraudulent insurance claims, when the filing of the claims were the only alleged predicate acts of mail fraud. *See Lemm*, 680 F.2d at 1201. In fact, the arson ring in *Lemm* could have accomplished its goals without committing any predicate acts at all by simply hand delivering its insurance claims instead of mailing them. *Id.* But here, the predicate acts—the installation and operation of the Torch machines—are the goals of the alleged enterprise *and* make up the entirety of the alleged enterprise. Plaintiffs have not pleaded any facts showing that the Almuttan brothers and Mally had any relationship at all with Torch apart from the installation and operation of the Torch machines at Mally's convenience store. And Plaintiffs have shown no relationship whatsoever between Warrenton Oil and the Almuttan brothers and Mally.

Plaintiffs also attempt to establish an association-in-fact enterprise by alleging that another part of the enterprise consisted of Torch and Warrenton Oil making political contributions to elected officials in Missouri to disincentivize enforcement of laws prohibiting gambling and to encourage new laws that would legalize the Torch machines. (Doc. 1 at 29). But Plaintiffs do not allege any facts showing any coordination or relationship between Torch and Warrenton Oil regarding the hiring of lobbyists or contributions to political action committees. Instead, Plaintiffs have alleged only that Torch and Warrenton Oil coincidentally pursued similar political strategies.

As such, the allegations regarding political contributions fail to establish an essential aspect of an association-in-fact enterprise: "relationships among those associated with the enterprise." *Crest Const. II, Inc.*, 660 F.3d at 354.

In any event, Plaintiffs do not allege that the Almuttan brothers or Mally hired lobbyists or made political contributions or even knew that Torch and Warrenton Oil were each doing so. Thus, even if these allegations did adequately allege an association-in-fact—which they clearly do not—any enterprise established by these allegations is not an enterprise that includes the Almuttan brothers or Mally.

### C. *Plaintiffs Fail to Adequately Allege Predicate Acts*

As an independent basis for dismissal, Plaintiffs' RICO claim should also be dismissed for failing to allege another essential element of a civil RICO claim: racketeering activity. To establish a pattern of "racketeering activity," Plaintiffs must plead two or more related predicate acts. *Crest Const. II, Inc.*, at 356. Here, the underlying predicate acts are alleged to be conducting or controlling an illegal gambling business under 18 U.S.C. § 1955, transmission of wagering information in violation of 18 U.S.C. § 1084 (known as the "Wire Act"), and the Missouri state law offense of promoting gambling. (Doc. 1 at 29–30). Plaintiffs allege Defendants conducted the affairs of an enterprise through racketeering by installing and operating Torch machines in violation of these laws. (*Id.* at 34–35). However, the Wire Act does not apply here, and Plaintiffs' own theories bar them from pursuing claims for Missouri gambling law violations as a predicate act.

Plaintiff's attempt to use an alleged violation of the Wire Act as a RICO predicate act is misplaced. Plaintiffs allege Defendants knowingly transmitted bets or wagers between slot machines and Torch's Cole County offices, but there is an additional element of a Wire Act

violation that is lacking: the Wire Act only applies to sports gambling, and Plaintiffs' Complaint lacks any averments pertaining to sports betting. *See In re MasterCard Int'l Inc.*, 313 F.3d 257, 262–63 (5th Cir. 2002) (civil RICO plaintiffs failed to allege Wire Act predicate acts because, as a matter of statutory interpretation, the Wire Act only concerns gambling on sporting events or contests); *see also New Hampshire Lottery Comm'n v. Rosen*, 986 F.3d 38, 61-62 (1st Cir. 2021) (agreeing with the Fifth Circuit and holding that the Wire Act does not apply outside the sporting context). Accordingly, Plaintiffs have not alleged violations of the Wire Act.

Regarding Plaintiffs' reliance on alleged violations of Missouri gaming laws, the doctrine of *in pari delicto* bars Plaintiffs from using alleged violations of Missouri gambling statutes as a RICO predicate act. Under RSMo. § 572.020, any person who knowingly engages in gambling "commits the offense of gambling[.]" Plaintiffs' theory compels them to argue that they were gambling while playing the Torch amusement devices. (*See* Doc. 1 at 31) ("Playing one of Torch's slot machines is gambling[.]"). "Under the *in pari delicto* doctrine, a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." *Dobbs v. Dobbs Tire & Auto Ctrs., Inc.*, 969 S.W.2d 894, 897 (Mo. Ct. App. 1998); *accord Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2005). "The principle is well settled that no court will lend its aid to a man who founds his cause of action upon an illegal act. This is a principle founded upon public policy, not for the sake of the defendant, but for the law's sake, and that only." *Dobbs*, 969 S.W.2d at 897 (quoting *Schoene v. Hickam*, 397 S.W.2d 596, 602 (Mo. banc 1966)). And this doctrine can be enforced on the pleadings alone. *See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149 (11th Cir. 2006) (affirming dismissal of civil RICO complaint on *in pari delicto* grounds).

This doctrine is directly implicated here. Because Plaintiffs cannot demonstrate that the Torch machines were illegal gambling devices under RSMo. §§ 572.010 *et seq.* without also showing that Plaintiffs violated Missouri's prohibition on gambling, they are barred by the doctrine of *in pari delicto* from utilizing this statute to their advantage. This doctrine also forecloses Plaintiffs' claim for violations of 18 U.S.C. § 1955, which is dependent on an underlying finding of a state law gambling violation. *See United States v. Bala*, 489 F.3d 334, 338 (8th Cir. 2007) ("A violation of § 1955 requires proof that the gambling business 'is a violation' of state law."). Accordingly, Plaintiffs have failed to allege racketeering activity, and their RICO claim should be dismissed.

### D. Plaintiff Fail to Adequately Allege a Civil RICO Conspiracy Claim

In paragraph 127 of the Complaint, Plaintiffs assert Defendants violated § 1962(d), which makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]." 18 U.S.C. § 1962(d). Plaintiffs did not plead this violation as a separate count, and they include only threadbare allegations regarding it. Regardless, because Plaintiffs fail to plead a claim under subsection (c) for the reasons stated above, this derivative claim must also be dismissed.

## IV. SECTION 434.030 IS UNCONSTITUTIONAL

In Count III, Plaintiffs seek to recover money lost playing on the Torch machines under RSMo. § 434.030, which states simply, "Any person who shall lose any money or property at any game, gambling device or by any bet or wager whatever, may recover the same by a civil action." However, this statute is unconstitutional under the Missouri Constitution and therefore cannot provide a cause of action against Defendants.[3]

---

[3] Defendants Mohammed Almuttan and Mally join in the other defendants' argument in support of their partial motion to dismiss that any damages under RSMo. § 434.030 are limited to the three-month period preceding the filing of the

As an initial matter, this Court has the authority to dismiss a count in a federal civil complaint on the grounds that the statute a party seeks to enforce in this Court violates the Missouri Constitution. *See, e.g., Jiles v. Schuster Co.*, 357 F. Supp. 3d 908, 916 (W.D. Mo. 2018). Where, as here, "a state's highest court has not decided the state-law issue," this Court "must attempt to predict how the highest court would resolve the issue." *Id*. at 911 (internal quotations omitted).

"Missouri courts presume that a Missouri statute is constitutional and will not hold it unconstitutional unless it clearly contravenes a provision of the Missouri Constitution. The challenging party has the burden of proving that the statute at issue clearly and undoubtedly violates the Missouri Constitution. Missouri courts adhere to the principle that if one interpretation of a statute results in the statute being constitutional while another interpretation would cause it to be unconstitutional, the constitutional interpretation is presumed to have been intended." *Id*. at 912 (cleaned up).

Section 434.030 was most recently amended in 1953. *See* 1953 Mo. Laws 321, § 1. However, in the 1980s and 1990s, several provisions were added to the Missouri Constitution legalizing various forms of gambling and wagering. *See* Mo. Const. art. III, § 39(a) (bingo in 1980); § 39(b) (state lottery in 1984); § 39(c) (betting on horse racing in 1986); § 39(e) ("lotteries, gift enterprises and games of chance" on "excursion gambling boats and floating facilities" in 1994); § 39(f) ("raffles and sweepstakes in which a person risks something of value for a prize" in 1998). As authorized by these provisions of the Missouri Constitution, Chapter 313 of the Revised Statutes of Missouri contains laws authorizing and regulating bingo, the state lottery, horse racing betting, excursion gambling boats, and fantasy sports contests.

Plainly, these provisions of the Missouri Constitution and the Revised Statutes of Missouri

---

Complaint under the statute of limitations provided in RSMo. § 434.090, and they acknowledge that Plaintiffs have already conceded this issue. (*See* Doc. 35 at 5).

legalize certain types of betting, wagering, and gambling. Section 434.030, a law enacted and mostly recently amended decades prior to the legalization of gambling in Missouri, runs afoul of these provisions by directly and unequivocally voiding all bets and wagers. Indeed, it is telling that the title of Chapter 434 of the Revised Statutes of Missouri is "Contracts Against Public Policy." Mo. Revisor of Statutes, Chapter 434.[4] But the Missouri Constitution has established that certain types of betting, wagering, and gambling are no longer against the public policy of Missouri.

Clearly, Section 434.030 contravenes the provisions of the Missouri Constitution authorizing various forms of betting, wagering, and gambling. The ability to recover money lost while gambling—no matter the amount—completely undermines the viability of excursion riverboat gambling, bingo games, and the state lottery, to name only a few constitutionally authorized activities.

Finally, Section 434.030 cannot be reasonably interpreted in a way that does not contradict the provisions of the Missouri Constitution authorizing gambling, betting, and wagering. Section 434.030 is as clear and direct as it is short: it invalidates all gambling, wagers, and bets—even those explicitly authorized by the Missouri Constitution. As such, the statute cannot stand. It is unconstitutional under the Missouri Constitution and therefore does not provide a cause of action against Defendants.

## V. CONCLUSION

Based on the foregoing, Defendants Mohammed Almuttan and Mally respectfully request that this Court enter an Order dismissing Counts I and III of Plaintiffs' Complaint for failing to state a claim upon which relief may be granted, and for such other and further relief as this Court

---

[4] Available at: https://revisor.mo.gov/main/OneChapter.aspx?chapter=434 (last visited May 19, 2023).

may deem just and proper under the circumstances.

                                                     Respectfully submitted,

 ***Margulis Gelfand, LLC***

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND
IAN T. MURPHY
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
ian@margulisgelfand.com
***Counsel for Mohammed Almuttan and Mally, Inc.***

*Certificate of Service*

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

> */s/ Justin K. Gelfand*
> JUSTIN K. GELFAND
> IAN T. MURPHY
> 7700 Bonhomme Ave., Ste. 750
> St. Louis, MO 63105
> Telephone: (314) 390-0234
> Facsimile: (314) 485-2264
> justin@margulisgelfand.com
> ian@margulisgelfand.com
> **Counsel for Mohammed Almuttan and Mally, Inc.**