IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
Central Division

PATRICK ROMANO *et al.*,                )
individually and on behalf of            )
all others similarly situated,           )
                                         )
        Plaintiffs,                      )
                                         )
    vs.                                  )        Case No.: 2:23-cv-04043-BCW
                                         )
TORCH ELECTRONICS, LLC,                  )
 *et al.*,                               )        JURY TRIAL DEMANDED
                                         )
        Defendants.                      )


**PLAINTIFFS' OPPOSITION TO PARTIAL MOTION TO DISMISS**

Joe D. Jacobson #33715
JACOBSON PRESS P.C.
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Tel: (314) 899-9789
Direct: (314) 899-9790
Fax: (314) 899-0282
Jacobson@ArchCityLawyers.com

Gene J. Brockland #32770
Christopher O. Miller #70251
AMUNDSEN DAVIS LLC
120 S. Central Ave., Suite 700
Clayton, Missouri 63105
Tel: (314) 719-3700
Fax: (314) 719-3721
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com

Attorneys for plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.    Consumers have statutory standing under RICO . . . . . . . . . . . . . . . . . . 1

II.   Proximate causation is satisfied because Consumers did not
      "voluntarily" gamble so as to break the causation between
      Slot Operators' RICO violations and Consumers' damages . . . . . . . . . . 5

III.  The Wire Act is not aimed exclusively at sports betting . . . . . . . . . . . . . 7

IV.   Consumers are victims of the criminal enterprise's crimes and
      their claims are not barred by *in pari deliciti* . . . . . . . . . . . . . . . . . . . . . 8

V.    Consumers adequately pled predicate acts . . . . . . . . . . . . . . . . . . . . . . . 9

VI.   Consumers adequately pled a RICO conspiracy . . . . . . . . . . . . . . . . . . . 9

VII.  Consumers adequately pled a RICO enterprise . . . . . . . . . . . . . . . . . . . 10

VIII. Section 434.030 is constitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Cases**                                                 **Pages**

*Adell v. Macon Cty. Greyhound Park, Inc.*,
785 F. Supp. 2d 1226 (M.D. Ala. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*Aguilar v. PNC Bank, N.A.*, 853 F.3d 390 (8th Cir. 2017) . . . . . . . . . . . . . . 10

*Associated Indus. v. Dir. of Revenue*, 918 S.W.2d 780 (Mo. 1996) . . . . . . . . . 15

*Boyle v. U.S.*, 556 U.S. 938 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10–12

*Burton v. Pet, Inc.*, 509 S.W.2d 95 (Mo. 1974) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083 (9th Cir. 2002) . . . . . . . . . . . . . . 3

*Crest Constr. II, Inc. v. Doe*, 660 F.3d 346 (8th Cir. 2011) . . . . . . . . . . . . . . 11

*Doug Grant v. Greate Bay Casino Corp.*,
232 F.3d 173 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Green v. Aztar Corp.*, No. 02 C 3514, 2003 WL 22012205,
2003 U.S. Dist. LEXIS 14699 (N.D. Ill. Aug. 20, 2003) . . . . . . . . . . . . . . . . . . 2

*Green v. Corrigan*, 87 Mo. 359 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hobbs v. Boatright*, 93 S.W. 934 (Mo. 1906) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Mastercard Int'l Inc.*, 132 F. Supp. 2d 468 (E.D. La. 2001) . . . . . . . . . . 7

*Interstate Agri Servs., Inc. v. Bank Midwest,N.A.*,
982 S.W.2d 796 (Mo. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Labarbera v. Malec*, 540 S.W.3d 903 (Mo. App. E.D. 2018) . . . . . . . . . . . . . . 4

*Major League Baseball Properties, Inc. v. Price,*
105 F. Supp. 2d 46 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*McLeod v. Valve Corp.*, No. C16-1227-JCC, 2016 WL 5792695,
2016 U.S. Dist. LEXIS 137836 (W.D. Wash. Oct. 4, 2016) . . . . . . . . . . . . . 4–5

*Occidental Life Ins. Co. v. Eiler*, 125 F.2d 229 (8th Cir. 1942) . . . . . . . . . . . 4

*Price v. Pinnacle Brands*, 138 F.3d 602 (5th Cir. 1998). . . . . . . . . . . . . . . . . . 3

*Rodriquez v. Topps Co.*, 104 F. Supp. 2d 1224 (S.D. Cal. 2000) . . . . . . . . . . . 4

*SAAP Energy v. Bell*, No. 1:12-CV-00098,
2013 U.S. Dist. LEXIS 122496 (W.D. Ky. Aug. 28, 2013) . . . . . . . . . . . . . . . 12

*Schwartz v. Upper Deck Co.*, 104 F. Supp. 2d 1228 (S.D. Cal. 2000) . . . . . . . 2

*State ex rel. State Hwy. Com. v. Curtis*, 283 S.W.2d 458 (Mo. 1955). . . . . . . 15

*TNT Amusements, Inc., dba Play-Mor Coin-Op vs.
Torch Electronics, LLC, et al.*, Case No. 4:23-cv-00330-SRW
(U.S. Dist. Ct. E.D. MO) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Twiehaus v. Rosner*, 245 S.W.2d 107 (Mo. 1952) . . . . . . . . . . . . . . . . . . . . . . . . 9

*U.S. v. Lemm*, 680 F.2d 1193 (8th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . 12–13

*U.S. v. Lombardo*, 639 F. Supp. 2d 1271 (D. Utah 2007) . . . . . . . . . . . . . . . . 8

*U.S. v. McArthur*, 850 F.3d 925 (8th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . 10

*U.S. v. Turkette*, 452 U.S. 576 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*U.S. v. Vinaithong*, 188 F.3d 520 (10th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . 8

*White v. McCoy Land Co.*, 87 S.W.2d 672 (Mo. App. 1935) . . . . . . . . . . . . . . 8

*Zayed v. Associated Bank, N.A.*, 779 F.3d 727 (8th Cir. 2015) . . . . . . . . . . . 8

*Zayed v. Associated Bank, N.A.*, No. 13-232(DSD/JSM),
2015 U.S. Dist. LEXIS 101685 (D. Minn. Aug. 4, 2015) . . . . . . . . . . . . . . . 8–9

## Statutes and Regulations

11 CSR 45-5.190. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 USC § 1964(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1–2

18 U.S.C. § 1084. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Section 434.030, RSMo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14–15

Section 536.031.6, RSMo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Section 572.010, RSMo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Section 572.015, RSMo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## Other Authorities

*HR Rep No. 967*, 87th Cong, 1st Sess, reprinted in
1961 *US Code Cong & Admin News* 2631 . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Reconsidering Whether the Wire Act Applies to Non-Sports
Gambling*, 42 Op. O.L.C. 1, 2018 OLC LEXIS 10,
2018 WL 7080165 (Nov. 2, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# PLAINTIFFS' OPPOSITION TO PARTIAL MOTION TO DISMISS

Defendants Mohammed Almuttan and Mally, Inc., move to dismiss Counts I and III of plaintiffs' complaint. [*Motion*, Doc. 37]. Defendant Rami Almuttan joins in the motion. [Doc 41]. The three defendants are referred to together as "Almuttan".

Almuttan argues Count I fails to state a claim because plaintiffs fail to adequately allege (1) RICO statutory standing, (2) an association-in-fact enterprise, and (3) predicate acts of racketeering activity. Almuttan argues Count III fails to state a claim because the statutory basis of the claim, Section 434.030, RSMo., is unconstitutional under the Missouri Constitution. [*Brief*, Doc. 38].

Almuttan's motion to dismiss Count I and III should be denied.

Portions of Almuttan's motion to dismiss overlap the motion to dismiss filed by defendants Torch Electronics, Inc., Steven Miltenberger, and Warrenton Oil Company (together, "Slot Operators"), [*Motion*, Doc. 28; *Brief*, Doc. 29]. To avoid repetition, this brief will first address the overlapping arguments in abbreviated form and then rebut the new arguments.

## I.    Consumers have statutory standing under RICO.

Plaintiffs, referred to herein as "Consumers", have statutory standing to sue Almuttan under RICO as required by 18 USC § 1964(c) because Consumer allege their gambling losses are the result of something more than merely the

illegality of the gambling Almuttan facilitates. The cases that have held gambling losses insufficient to satisfy the requirement of an "injury to business or property" uniformly hold that gambling losses cannot *without something more* satisfy Section 1966(c)'s requirement of an injury to business or property. That something more is typically that the game is rigged so that the gambler does not get the chance of winning for which they paid. *See Consumers' Opposition to Slot Operators' Partial Motion to Dismiss* [Doc. 35] ("Opposition") at 2-6 & n. 1.[1]

Here, Consumers allege Slot Operators' games are rigged. Complaint [Doc. 1] at ¶¶ 66-68. As a result, Consumers did not receive the fair bets for which they paid. Because Consumers did not get the benefit of their bargain when playing Torch's slot machines, Consumers' gambling losses are an injury to their property, thus establishing Consumers' RICO statutory standing.

---

[1] *See, e.g., Green v. Aztar Corp.*, No. 02 C 3514, 2003 WL 22012205, 2003 U.S. Dist. LEXIS 14699 at *8 (N.D. Ill. Aug. 20, 2003) (explaining holdings of prior cases as "voluntary participation in illegal **but non-fraudulent** gambling not compensable as plaintiff can avoid any injury simply by walking away") (emphasis added); *Adell v. Macon Cty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226 (M.D. Ala. 2011) (rejecting claim where allegation that game was rigged in favor of local politician did not include an allegation that games was rigged against plaintiffs); *Schwartz v. Upper Deck Co.*, 104 F. Supp. 2d 1228, 1230-31 (S.D. Cal. 2000) (rejecting claim where there was no allegation of "any sort of fraudulent or dishonest conduct such as misrepresenting to purchasers the odds of winning"); *Major League Baseball Properties, Inc. v. Price,* 105 F. Supp. 2d 46, 52 (E.D.N.Y. 2000) ("mere illegality of a gambling transaction" insufficient; "More important is whether the activity is run fairly and honestly").

Almuttan cites a few cases in addition to those cited by Slot Operators in their brief. These cases do not change the analysis.

*Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083 (9th Cir. 2002), is like the great majority of cases considering "gambling" in the context of RICO. It, like the other cases, does not involve actual casino-game gambling. Rather, the plaintiffs are purchasers of trading cards featuring sports figures. Each pack of cards contains a random assortment of cards out of a universe of as many as 80 different cards. A few packs contain an "insert" or "chase" card that is rarer than the base cards and thus more valuable to collectors. The purchase of a pack of cards is characterized as a purchase of the base cards plus the purchase of a "chance" at one of the rare cards. *Id.* at 1086. The Ninth Circuit, like other courts that had considered the situation, held that there was no injury to business or property because each plaintiff received exactly what they bargained for:

> At the time the plaintiffs purchased the package of cards … they received value — eight or ten cards, one of which might be an insert card — for what they paid as a purchase price. Their disappointment upon not finding an insert card in the package is not an injury to property. They, therefore, lack standing to sue under RICO.

*Id.* at 1087; *see also Price v. Pinnacle Brands*, 138 F.3d 602, 607 (5th Cir. 1998) (same) ("plaintiffs do not allege that they received something different than precisely what they bargained for: six to twenty cards in a pack with a chance

that one of those cards may be of Ken Griffey, Jr."); *Rodriquez v. Topps Co.*, 104 F. Supp. 2d 1224, 1227 (S.D. Cal. 2000) (same) ("There is no allegation that Defendant has engaged in any sort of fraudulent or dishonest conduct such as misrepresenting to purchasers the odds of winning a chase card").

Here, however, Consumers put money into Torch's slot machines not knowing that their chances of receiving a payout were below those set by Missouri law. In Missouri, all person are presumed to know the law. *Occidental Life Ins. Co. v. Eiler*, 125 F.2d 229, 233 (8th Cir. 1942); *Labarbera v. Malec*, 540 S.W.3d 903, 909 (Mo. App. E.D. 2018). The law includes the Code of State Regulations. *See* Section 536.031.6, RSMo. Missouri regulations requires slot machines to provide a payout percentage of not less than 80% of all wagers over a period of time. 11 CSR 45-5.190. Consumers are thus presumed to know that they are to receive a payout percentage of not less than 80% from a slot machine. But Torch's slot machines are set to payout below 80%. As a result, Consumers did not receive the chance — the value — for which they paid, thus distinguishing this case from all of the trading-card cases on which Almuttan relies.

Almuttan cite one additional case, not cited by Slot Operators and not involving trading cards. *McLeod v. Valve Corp.*, No. C16-1227-JCC, 2016 WL 5792695, 2016 U.S. Dist. LEXIS 137836 (W.D. Wash. Oct. 4, 2016). In *McLeod*, an online site allowed players in a multiuser video game to use in-game equip-

ment ("skins") as chips in a lottery. Plaintiffs in *McLeod* argued that rigging the online lottery caused the skins they lost gambling to be "injury to business or property" under RICO. *Id.*, 2016 U.S. Dist. LEXIS 137836 at *10-11.

The plaintiffs' argument in *McLeod* did not fail on the law but because plaintiffs failed to allege the necessary fraudulent or dishonest conduct:

> This [allegation in the complaint] is an explicit state-
> ment that the results were random, not rigged, and
> therefore fails to demonstrate that Defendants have
> engaged in fraudulent conduct. … Plaintiffs fail to
> plead any facts that actually connect the alleged rigging
> of the gambling to any injury suffered by Plaintiffs.
> Therefore, this argument fails, as well.

*Id.*, 2016 U.S. Dist. LEXIS 137836, at *10, *11

Thus all of the new cases cited by Almuttan are consistent with, or not contrary to, Consumers' theory of the case: the allegation that Slot Operators' slot machines are rigged to pay less than Missouri's legal minimum payout causes Consumers to have a lower chance of winning than they would have if the games were not rigged. Consumers' gambling losses are therefore injuries to their property. Plaintiffs have established RICO statutory standing.

## II. Proximate causation is satisfied because Consumers did not "voluntarily" gamble so as to break the causation between the RICO violations and Consumers' damages.

Almuttan argues that gambling is a *voluntary* activity and thus there is no proximate causation between any RICO violation and the injuries suffered.

The response here is same as in the *Opposition* to Slot Operators' motion. Almuttan overcame Consumers' independent volition by permitting Slot Operators to place slot machines in Almuttan's gas station convenience stores as part of a cohort of thousands of devices in places of public accommodations throughout Missouri, including at gas stations, restaurants, convenience stores, supermarkets, and bars. *Complaint* at ¶¶ 27, 33, 35, 50-59, 76-85.

Consumers did not seek out opportunities to play slot machines. Rather, defendants made the machines unavoidable. The attractive and addictive nature of these ubiquitous slot machines caused Consumers, who had no intention or desire to gamble, to fall within their grip and lose their hard-earned cash.

In many cases addressing applicability of RICO to gambling losses, courts hold that proximate causation is broken because plaintiffs makes a *voluntary choice to gamble* and are thus are the cause of their own losses. In the electronic bingo case, for example, the court stated:

> there are no allegations suggesting anything other than that Plaintiffs had the option of foregoing the 'Las Vegas style gambling experience' at Victoryland. There are no allegations that any Plaintiff was forced to seek out Victoryland or to spend their money playing the electronic bingo machines there …

*Adell*, 785 F. Supp. 2d at 1244. "[P]layers, can avoid any injury simply by walking away from the alleged wrongdoers, the casinos, by not playing blackjack in

casinos." *Doug Grant v. Greate Bay Casino*, 232 F.3d 173, 187-88 (3d Cir. 2000).

"Plaintiffs' own acts of accessing the internet, locating the casinos, entering their information, and playing electronic casino games, are all intervening causes ..."
*In re Mastercard Int'l Inc.*, 132 F. Supp. 2d 468, 496 (E.D. La. 2001).

This case is different. Consumers did not chose to go to a casino, stop in a bingo parlor, or search the internet for online gambling. They were trying to buy groceries, fill their gas tanks, eat a meal, do their laundry. But wherever they turned, Torch's illegal slot machines were there, Sirens calling Consumers to ruin, to give up their groceries, their gas, and their rent to Torch.

In short, Consumers are victims, not volunteers.

Defendants' blanketing of the community with slot machines materially distinguishes this case from those where plaintiffs voluntarily sought opportunities to gamble. There is at minimum a factual issue sufficient to prevent dismissal about whether Consumers' gambling was voluntary or compelled,.

## III.   The Wire Act is not aimed exclusively at sports betting.

Amuttan, like Slot Operators, contends the RICO claims should be dismissed because the Wire Act, 18 U.S.C. § 1084, only applies to wire communications *connected to sport betting* and not gambling in general.

The Eighth Circuit has not adopted this position; the Department of Justice says it is not an accurate reading of the statute; and the language of the

Wire Act and its legislative history weigh against. *See Reconsidering Whether the Wire Act Applies to Non-Sports Gambling*, 42 Op. O.L.C. 1 (Nov. 2, 2018), 2018 OLC LEXIS 10, 2018 WL 7080165; *U.S. v. Vinaithong*, 188 F.3d 520 (10th Cir. 1999) (Wire Act applies to "mirror lottery"); and *U.S. v. Lombardo*, 639 F. Supp. 2d 1271, 1281 (D. Utah 2007) (Wire Act applies to online casino).

While "the language of the statute limits the prohibition on the transmission of *actual bets or wagers* to those on sporting events or contests," the remaining prohibitions are not restricted to sports bets. *Lombardo*, 639 F. Supp at 1281-82; *HR Rep No. 967*, 87th Cong, 1st Sess, reprinted in 1961 *US Code Cong & Admin News* 2631, *quoted in Lombardo*, 639 F. Supp. 2d at 1280-81.

## IV. Consumers are victims of the criminal enterprise's crimes and their claims are not barred by *in pari delicto.*

As discussed in *Opposition*, the doctrine of *in pari delicto* does not apply where levels of culpability are unequal (not *in pari*), as is the case here. *Green v. Corrigan*, 87 Mo. 359, 370 (1885); *White v. McCoy Land Co.*, 87 S.W.2d 672, 687 (Mo. App. 1935). Nor does *in pari delicto* bar a plaintiff's claim, even when their guilt is equal to the defendant's, if the public good is advanced by allowing the case to proceed. *Hobbs v. Boatright*, 93 S.W. 934, 935 (Mo. 1906); *Zayed v. Assoc. Bank, N.A.*, 779 F.3d 727, 737 (8th Cir. 2015) (Minnesota law).[2] Nor does

---

[2]     The district court in *Zayed* cites multiple cases holding that *in pari delicto* should not be applied at the motion to dismiss stage because it is a fact-bound

*in pari delicto* apply when the plaintiff belongs to the class of persons intended to be protected by the law that is violated. *Twiehaus v. Rosner*, 245 S.W.2d 107, 112 (Mo. 1952); *Interstate Agri Servs., Inc. v. Bank Midwest,N.A.*, 982 S.W.2d 796, 801 (Mo. App. 1998); *accord Burton v. Pet, Inc.*, 509 S.W.2d 95, 101 (Mo. 1974).

## V. Consumers adequately pled predicate acts.

In an argument not made by Slot Operators, Almuttan assert Consumers have failed to properly plead a RICO predicate act. The chief basis of this argument is that the Wire Act only applies to sports bets. This is not true, *see argument above in Section III*, but even if it were, the argument ignores that Consumers have alleged multiple non-Wire Act predicate acts. Thus this argument cannot defeat the RICO count.

The second basis of this argument is that Consumers' claims under the Missouri gambling laws are barred by *in pari delicto*. This argument fails for the reasons given above in Section IV. Thus the entire argument fails.

## VI. Consumers adequately pled a RICO conspiracy.

Almuttan asserts that Consumers offer only "threadbare allegations" on their RICO conspiracy claim, noting that it is not set out in a separate count.

---

equitable principle subject to the court's discretion. *Zayed v. Associated Bank, N.A.*, No. 13-232(DSD/JSM), 2015 U.S. Dist. LEXIS 101685, at *9 (D. Minn. Aug. 4, 2015) (citations omitted).

To state a claim for conspiracy to violate RICO, a plaintiff must allege (1) that an enterprise existed; (2) that the enterprise affected interstate or foreign commerce; (3) that the defendant associated with the enterprise; and (4) that the defendant objectively manifested an agreement to participate in the affairs of the enterprise. *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 402 (8th Cir. 2017).

All four elements are pled here:

(1) An enterprise existed. *Complaint* ¶¶ 27-30, 44, 70-73, 95-98, 123-127.

(2) The enterprise affected interstate commerce. *Complaint* ¶¶ 26, 45, 103.

(3) Mohammed Almuttan, Mally, and Rani Almuttan each associated with the enterprise. *Complaint* ¶¶ 32-33, 125-127.

(4) Mohammed Almuttan, Mally, and Rani Almuttan each objectively manifested their agreement to participate in the affairs of the enterprise. *Complaint* ¶¶ 32, 127.

RICO conspiracy has been adequately pled.

## VII.   Consumers adequately pled a RICO enterprise.

There are three structural features that must be pled to establish a RICO association-in-fact enterprise: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *U.S. v. McArthur*, 850 F.3d 925, 934 (8th Cir. 2017), quoting *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).

All three elements are pled here[3] and Almuttan does not challenge them. Instead, Almuttan's motion is focused on its contention that Consumers' claim fails because the complaint does not allege a RICO association-in-fact enterprise distinct from the enterprise's pattern of racketeering activity. *Brief* at 7, citing *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353-55 (8th Cir. 2011), asserting: "Allegations of a RICO enterprise are insufficient where, as here, the only common factor linking individual defendants and defining them 'as a distinct group' is their participation in the alleged scheme."

The Supreme Court in *Boyle* says otherwise:

> "*Beyond that inherent in the pattern of racketeering activity.*" This phrase may be interpreted in at least two different ways, and its correctness depends on the particular sense in which the phrase is used. If the phrase is interpreted to mean that the existence of an enterprise is a separate element that must be proved, it is of course correct. As we explained in *Turkette*, the existence of an enterprise is an element distinct from the pattern of racketeering activity and "proof of one does not necessarily establish the other." **On the other hand, if the phrase is used to mean that the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity, it is incorrect.** We recognized in *Turkette* that the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise "may in particular cases coalesce."

---

[3]     "Purpose," *Complaint* ¶¶ 24-29, 95-96; "Relationships," *Complaint* ¶¶ 30-34, 97-98, 104, 112, 124-126; and "Longevity," *Complaint* ¶¶ 35, 70-73, 118, 120.

*Boyle*, 556 U.S. at 947 (emphasis added).

In *Boyle*, a criminal gang known as "the Mob" did not engage in any legitimate activity outside of their pattern of racketeering activity and related crimes. Still that satisfied the requirements for an association-in-fact enterprise under RICO. *Id.* at 947-48. "[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Id.* at 948. It "need not have a hierarchical structure or a 'chain of command.'" *Id.* "The breadth of the 'enterprise' concept in RICO is highlighted by comparing the statute with other federal statutes that target organized criminal groups." *Id.* at 949. "We have repeatedly refused to adopt narrowing constructions of RICO …" *Id.* at 950.[4]

Here, the placement of *illegal slot machines* in various places of accommodation, including Almuttan's convenience store, is the illegality at the root of the pattern of racketeering activity. But the defendants could have formed the same set of relationships had they simply chosen to place *legal* games of amusement or skill in all these places. Thus, this case is like *U.S. v. Lemm*, 680 F.2d 1193 (8th Cir. 1982), which Almuttan attempts to distinguish. In *Lemm*, the Eighth

---

[4]    While there is old case law that adopted the position Almuttan asserts, that law was changed by *Boyle*. "Here, Basil argues that SAAP has insufficiently pled the existence of an enterprise because it has not shown that the alleged association-in-fact enterprise exists separate from its alleged racketeering activity. While this might have been the law in the past … that requirement appears to have been changed by Boyle." *SAAP Energy v. Bell*, No. 1:12-CV-00098, 2013 U.S. Dist. LEXIS 122496, at *16 (W.D. Ky. Aug. 28, 2013).

12

Circuit noted, "if we eliminate for purposes of argument the predicate acts of mail fraud, the evidence still shows an on-going structure which engaged in legitimate purchases and repairs of property as well as acts of arson." *Id.* at 1201. Similarly, if for purposes of argument we eliminated the illegality of illegal gambling, we could still have an on-going structure engaged in distributing and operating video amusement games.[5]

In short, the fact that a group got together *just for the purpose of committing crimes* does not mean that they cannot satisfy the requirements of a RICO association-in-fact enterprise. There is no requirement that an association-in-fact also engage in legitimate business or other activity:

> [N]either the language nor structure of RICO limits its application to legitimate "enterprises." Applying it also to criminal organizations does not render any portion of the statute superfluous nor does it create any structural incongruities within the framework of the Act. The result is neither absurd nor surprising. On the contrary, **insulating the wholly criminal enterprise from prosecution under RICO is the more incongruous position**.

---

[5] Torch has been sued by a company in the business of placing legal amusement games in the same kinds of locations as Torch. That suit alleges Torch's and Miltenberger's false statements that Torch's slot machines are "no chance" games that comply with Missouri law convinced store owners to place Torch's machines in their businesses while displacing legal amusement games operated by TNT Amusements. *TNT Amusements, Inc., dba Play-Mor Coin-Op vs. Torch Electronics, LLC, et al.*, Case No. 4:23-cv-00330-SRW (U.S. Dist. Ct. E.D. MO). This suit demonstrates that a business model like Torch's could exist independently of its illegal racketeering conduct.

*U.S. v. Turkette*, 452 U.S. 576, 587 (1981) (emphasis added).

Thus, Almuttan's argument that an association-in-fact must be organized to engage in some legitimate business in addition to their pattern of racketeering acts to satisfy the requirements of RICO is contrary to controlling case law.

**VIII. Section 434.030 is constitutional.**

Almuttan's final argument is another Slot Operators did not raise. Almuttan claims that Section 434.030, RSMo., that statute on which Consumers rely in Count III, is unconstitutional because it is purportedly in violation of multiple sections of the Missouri Constitution that now permit gambling. *Brief* at 13.

Although Almuttan correctly notes that amendments to the Constitution "legalize *certain types* of betting, wagering, and gambling," *Brief* at 14 (emphasis added), Almuttan oddly comes to the conclusion that Section 434.030 is unconstitutional as to *all type* of betting, wagering, and gambling, even those still illegal because not legalized by one of the constitutional amendments.

Almuttan notes that under Missouri law, "if one interpretation of a statute results in the statute being constitutional while another interpretation would cause it to be unconstitutional, *the constitutional interpretation is presumed to have been intended.*" *Brief* at 13 (emphasis added, citation omitted). Yet, somehow Almuttan misses the obvious interpretation that results in Section 434.030 being constitutional. That is, *Section 434.030 is constitutional because it gives*

*those who lose money at gambling the right to recover that money **only if** the gambling was outside the limited authority to gamble granted by one of the constitutional amendments.*[6]

Missouri courts will hold a statute *partly unconstitutional* to the extent it conflicts with the Constitution, but is otherwise constitutional and enforceable. "It is well settled that a statute may be sustained as constitutional in part though void in other parts, unless its provisions are so connected and inter-dependent that it cannot be presumed the legislature would have enacted one without the other." *State ex rel. State Hwy. Com. v. Curtis*, 283 S.W.2d 458, 463 (Mo. 1955). Severability applies in situations like that here, "where 'the entire act is invalid to part, but not all, possible applications.'" *Associated Indus. v. Dir. of Revenue*, 918 S.W.2d 780, 784 (Mo. 1996).

The final, "constitutional" argument for dismissal should be rejected.

## CONCLUSION

Almuttan's motion to dismiss in part should be denied in its entirety.

---

[6]     Chapter 572, RSMo., which establishes crimes relative to gambling, is not directly controlling as to Section 434.030, but is illustrative. It makes the distinction in treatment between constitutionally permitted and illegal gambling clear. Section 572.010, RSMo., states: "Gambling does not include any licensed activity, or persons participating in such games which are covered by sections 313.800 to 313.840." Section 572.010(4). Section 572.015, RSMo., expands on this, stating: "Nothing in this chapter prohibits constitutionally authorized activities under Article III, Sections 39(a) to 39(f) of the Missouri Constitution."

JACOBSON PRESS P.C.

By:  /s/ Joe D. Jacobson'
Joe D. Jacobson #33715
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Tel: (314) 899-9789
Direct: (314) 899-9790
Fax: (314) 899-0282
Jacobson@ArchCityLawyers.com

and

AMUNDSEN DAVIS LLC

Gene J. Brockland #32770
Christopher O. Miller #70251
120 S. Central Ave., Suite 700
Clayton, Missouri 63105
Tel: (314) 719-3700
Fax: (314) 719-3721
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com

Attorneys for plaintiffs Patrick Romano,
Joshua Wilson, Krystal Christensen,
Jeffrey Cordaro, Carmen Weaver, Monica
McGee, and Mary Bolden

## CERTIFICATE OF SERVICE

The filing attorney certifies that on May 28, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic case filing system upon all participants in the Court's electronic case filing system.