UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **PATRICK ROMANO,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-04043-BCW |
| | ) | |
| **TORCH ELECTRONICS, LLC,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS MOHAMMED ALMUTTAN AND MALLY, INC.'S REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS**

Defendants Mohammed Almuttan ("Almuttan") and Mally, Inc. ("Mally"), by and through undersigned counsel, respectfully submit the following Reply in Support of their Partial Motion to Dismiss Counts I and III of Plaintiffs' Complaint for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (hereinafter, the "Motion"). (Doc. 37).

### I. Plaintiffs have not Adequately Alleged Statutory Standing for a Civil RICO Claim

Plaintiffs have not established statutory standing to bring a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). As Almuttan and Mally argued in support of their Motion (*see* Doc. 38), Plaintiffs lack statutory standing to bring a civil RICO claim because the Eighth Circuit has not recognized gambling losses as a concrete injury cognizable under the civil RICO statute. Though other courts have suggested that gambling losses may be cognizable if accompanied by allegations of fraud or misrepresentation, Plaintiffs make no such allegations in the Complaint. The Complaint alleges only that the Torch machines do not provide the same net payout as slot machines and do *not* include signage stating the net payout unlike slot machines, which do include such signage. Thus, the allegations in the Complaint establish that Almuttan and

Mally made no misrepresentation at all regarding the odds of winning.

In their response to Almuttan and Mally's Motion, Plaintiffs simply cite the same paragraphs in the Complaint alleging that the Torch machines do *not* include signage stating the machines' net payout. (*See* Doc. 51 at 7). They also argue—for the first time—that they believed the machines' net payout was higher than it actually is because all persons in Missouri are presumed to know the law, and the law requires that slot machines have a net payout of 80% or higher. (*See id.* at 9).

This new theory fails for at least two reasons. First, Plaintiffs failed to plead this theory of deception in the Complaint, and a plaintiff cannot amend a complaint in a response to a motion to dismiss. *See Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). Second, this theory contradicts the allegations Plaintiffs did plead and the arguments they have made elsewhere.

Specifically, Plaintiffs allege throughout the Complaint that the Torch machines are illegal slot machines. (*See generally* Doc. 1). In fact, in response to a motion to dismiss filed by other defendants in this case, Plaintiffs contend they are guilty of the criminal offense of gambling because they played the Torch machines which, in their view, are illegal slot machines. (*See* Doc. 35 at 15–16). If, as Plaintiffs now argue, they are presumed to know the law, then they also know the Missouri Gaming Commission is the rulemaking authority that establishes gaming regulations, including the regulation requiring a minimum net payout of 80% for slot machines. *See* RSMo. § 313.004. And, presuming Plaintiffs know the law, they must know the Missouri Gaming Commission only has authority to regulate riverboat casinos and bingo halls. *See id.* Thus, Plaintiffs cannot plausibly allege that they believed the Torch machines—which are located in gas stations, convenience stores, and restaurants, but *not* casinos or bingo halls—are subject to the

80% net payout regulation set out in Section 313.004 of the Revised Statutes of Missouri.

Simply put, the Eighth Circuit does not recognize gambling losses as a cognizable injury under the civil RICO statute. But even if it did, Plaintiffs have not pleaded a plausible theory of misrepresentation or fraud as it relates to their alleged gambling losses and, therefore, have not asserted an injury cognizable under the civil RICO statute.

Plaintiffs have also failed to plausibly allege the second requirement for RICO statutory standing: that Defendants' conduct was the proximate cause of Plaintiffs' alleged injuries. *See Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012). In fact, Plaintiffs' voluntary decision to play the Torch machines was a direct and superseding cause of any alleged loss. Plaintiffs try—but fail—to distinguish their allegations from those dismissed in *Adell v. Macon County Greyhound Park, Inc.*, 785 F. Supp. 2d 1226 (M.D. Ala. 2011).

In *Adell*, the court found that the plaintiffs had not suffered a cognizable RICO injury because their gambling losses were the result of their voluntary decision to gamble at "Victoryland." *Id.* at 1238. Like the plaintiffs in *Adell*, Plaintiffs here made the voluntary decision to play the Torch machines. Plaintiffs have not explained how the alleged "Siren"-like qualities of the Torch machines overcame Plaintiffs' free will—nor could they with a straight face. Simply arguing that Plaintiffs would not have played *but for* the machines' presence and attractiveness is not enough. *See Gomez*, 676 F.3d at 660. Plaintiffs must also allege that the machines were the proximate cause of their injury. *See id.* But the machines cannot be the proximate cause when Plaintiffs' voluntary decision to play the machines was the direct and superseding cause of their alleged losses. *See Adell*, 785 F. Supp. 2d at 1244 ("their own acts of playing the electronic bingo machines are 'intervening causes that break the chain of causation with respect to the defendants' alleged [RICO] activities, even if they were illegal'") (quoting *In re MasterCard Int'l Inc. Internet*

*Gambling Litigation*, 132 F. Supp. 2d 468, 496 (E.D. La. 2001)). For this reason alone, this Court should grant the pending motion.

**II.     Plaintiffs have not Adequately Alleged an Enterprise Distinct from a Pattern of Racketeering Activity**

To establish a civil RICO claim, Plaintiffs must allege the existence of an enterprise that extends "beyond the minimal association surrounding the pattern of racketeering activity." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011) (quoting *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 816 (8th Cir. 1992)). Plaintiffs argue the Supreme Court nullified this requirement in *Boyle v. United States*, 556 U.S. 938 (2009). Plaintiffs are wrong.

In *Boyle*, the "crux of petitioner's argument [was] that a RICO enterprise must have structural features…such as a structural hierarchy, role differentiation, a unique *modus operandi*, [and] a chain of command[,]" among other features. *Boyle*, 556 U.S. at 947–48 (internal quotation marks and citation omitted). Before addressing the petitioner's primary argument, the Court briefly summarized the basic elements of a RICO claim and reaffirmed its holding in *United States v. Turkette*, 452 U.S. 576 (1981), that "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Boyle*, 556 U.S. at 947 (quoting *Turkette*, 452 U.S. at 583).

Following *Boyle* (and citing both *Boyle* and *Turkette*), the Eighth Circuit has maintained that showing the existence of an enterprise with "an ascertainable structure distinct from the pattern of racketeering activity" requires determining "if the enterprise would still exist were the predicate acts removed from the equation." *Crest Const. II*, 660 F.3d at 354–55 (quoting *Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997)). Thus, while Plaintiffs are free to use the same evidence to show the existence of an enterprise and to establish a pattern of racketeering activity, the Eighth Circuit requires additional evidence—that is, evidence *apart from* the predicate acts—

of the existence of an ongoing enterprise.

Instead of alleging additional facts, Plaintiffs double down on the sufficiency of the alleged predicate acts and attempt to compare this case to *United States v. Lemm*, 680 F.2d 1193 (8th Cir. 1982). In *Lemm*, the Eighth Circuit analyzed the evidence of an association-in-fact enterprise by ignoring evidence of the predicate acts, which in that case consisted of mailing fraudulent insurance claims. *Id.* at 1201. The court found that the defendants engaged in many other activities sufficient to constitute an enterprise entirely apart from the predicate acts of mail fraud. *Id.* Bizarrely, Plaintiffs argue their case is similar to *Lemm* because "if for purposes of argument we eliminated the illegality of illegal gambling, we could still have an on-going structure engaged in distributing and operating video amusement games." (Doc. 51 at 18).

Plaintiffs entirely misread *Lemm*. In *Lemm*, the court analyzed the defendants' activities after ignoring evidence of the alleged predicate *acts*, not the illegality of those acts, as Plaintiffs suggest. Contrary to Plaintiffs' mischaracterization of Almuttan and Mally's argument, Plaintiffs' civil RICO claim is not deficient because it alleges the enterprise engaged only in illegal acts. Rather, it is deficient because it does not allege that the enterprise engaged in any acts at all beyond the predicate acts forming the alleged pattern of racketeering activity. As a matter of law, this is insufficient to allege a civil RICO claim in the Eighth Circuit.

In their Motion, Almuttan and Mally present additional and independent reasons why Plaintiffs' civil RICO claim should be dismissed. For many of the same reasons addressed above, Plaintiffs' Response fails to provide any cogent justification for disregarding those additional grounds for dismissal. This Court can and should consider them, but for the sake of brevity, Almuttan and Mally will not rehash those arguments here. For the reasons articulated in Almuttan and Mally's Motion, as well as the arguments stated herein, this Court should dismiss Count I for

its failure to state a claim.

### III. Section 434.030 is Unconstitutional

Section 434.030 of the Revised Statutes of Missouri effectively invalidates all gambling, wagering, and betting. As such, it runs afoul of the provisions of the Missouri Constitution and Revised Statutes of Missouri that legalize certain types of gambling, wagering, and betting. While Plaintiffs are correct that a statute is not unconstitutional if there is an interpretation that would render it constitutional, *see Jiles v. Schuster Co.*, 357 F. Supp. 3d 908, 916 (W.D. Mo. 2018), no such interpretation exists here. Plaintiffs propose interpreting Section 434.030 to apply only to types of gambling, wagering, and betting not made legal by the Missouri Constitution and Revised Statutes of Missouri, but nothing in the language of Section 434.030 supports such an interpretation.[1] Plaintiffs' "interpretation" is really an attempt to rewrite the statute as part of its severability analysis.

But Plaintiffs' attempt to rescue the statute by applying a severability analysis also fails. Plaintiffs concede that Section 434.030 is at least "*partly unconstitutional*." (Doc. 51 at 20). Citing *Associated Industries of Missouri v. Director of Revenue*, 918 S.W.2d 780 (Mo. banc 1996), Plaintiffs argue that Section 434.030 can still be upheld as constitutional in this context if interpreted to apply only to forms of gambling, wagering, and betting *not* made legal by the Missouri Constitution and Revised Statutes of Missouri. (*See* Doc. 51 at 20).

However, Plaintiffs have not established that severability applies to Section 434.030. Where, as here, an entire statute is invalid to certain applications, the statute can only be preserved if Plaintiffs establish that the legislature would still have passed Section 434.030 knowing it could

---

[1] Chapter 572 of the Revised Statutes of Missouri provides an example of a statute written to avoid any possible conflict with the Missouri Constitution: "Nothing in this chapter prohibits constitutionally authorized activities under Article III, Sections 39(a) to 39(f) of the Missouri Constitution." RSMo. § 572.015. Section 434.030 includes no such language.

not be applied in ways now deemed unconstitutional. *See Assoc. Indus.*, 918 S.W.2d at 784. Plaintiffs have not even addressed the legislative intent behind Section 434.030, much less established that the legislature would have passed the version of the statute they propose in their response. The type of severability proposed by Plaintiffs would require this Court to "rewrite[e Section 434.030] to accommodate the constitutionally imposed limitation." *Id.* But without evidence that Plaintiffs' interpretation of the statute is consistent with legislative intent, this Court has "no power to rewrite the statute [and] *must strike it down in its entirety*." *Id.* at 785 (emphasis added).

IV. Conclusion

Based on the foregoing arguments, as well as those set forth in Defendants Almuttan and Mally's Partial Motion to Dismiss and Suggestions in Support, Defendants Almuttan and Mally respectfully request that this Court enter an Order dismissing Counts I and III of Plaintiffs' Complaint for failing to state a claim upon which relief may be granted, and for such other and further relief as this Court may deem just and proper under the circumstances.

Respectfully submitted,

*Margulis Gelfand, LLC*

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND
IAN T. MURPHY
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
ian@margulisgelfand.com
***Counsel for Mohammed Almuttan and Mally, Inc.***

**Certificate of Service**

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND
IAN T. MURPHY
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
ian@margulisgelfand.com
***Counsel for Mohammed Almuttan and Mally, Inc.***