# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| PATRICK ROMANO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-04043-BCW |
| | ) | |
| TORCH ELECTRONICS, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS MOHAMMED ALMUTTAN AND MALLY, INC.'S SUGGESTIONS IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
STONE T. HENDRICKSON, #74384
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
ian@margulisgelfand.com
stone@margulisgelfand.com

*Counsel for Mohammed Almuttan and Mally, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.   STATEMENT OF FACTS .......................................................................................... 1

II.  LEGAL STANDARD ................................................................................................ 2

III. ARGUMENT .............................................................................................................. 3

   A.  Plaintiffs are Not Adequate to Represent the Class .............................................. 3

       1.  Plaintiffs' Interests Are Adverse to Those of the Class ................................. 3

       2.  Plaintiffs are Inadequate as to Claims Against Almuttan and Mally .............. 5

   B.  The Class Is Not Ascertainable ............................................................................ 7

   C.  The Class Action Device is Not Superior Because the Central Legal Issues about State

   Gambling Laws Are Better Resolved Without Reference to a Class .......................... 8

   D.  Commonality, Typicality, and Predominance are Not Satisfied Because of the

   Individualized Determinations Required by Plaintiffs' Claims ................................. 9

       1.  RICO Claim ................................................................................................ 10

       2.  MMPA Claim .............................................................................................. 11

       3.  Section 434.030 Claim ............................................................................... 14

   E.  Numerosity is not Satisfied ................................................................................ 14

   F.  Plaintiffs Have Produced No Expert Evidence Supporting Class Certification ............... 15

IV.  Conclusion ............................................................................................................. 16

Certificate of Service .................................................................................................. 17

Case 2:23-cv-04043-BCW   Document 72   Filed 07/14/23   Page 2 of 22

# TABLE OF AUTHORITIES

**Cases**

*Adell v. Macon County Greyhound Park, Inc.*, 785 F. Supp. 2d 1226 (M.D. Ala. 2011).............. 10

*Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) ...................................... 9

*Barfield v. Sho-Me Power Elec. Co-op.*, 11-CV-04321-NKL, 2013 WL 3872181 (W.D. Mo. July 25, 2013) ................................................................................................... 7, 8

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) ............................................. 11

*Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679 (S.D. Fla. 2006).......... 6

*Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006)..................................... 6

*Chado v. Nat'l Auto Inspections, LLC*, 2019 WL 1981042 (D. Md. May 3, 2019)....................... 6

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)...................................................... 9, 14

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) ................................................ 9

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................................ 3

*Gries v. Standard Ready Mix Concrete, L.L.C.*, 252 F.R.D. 479 (N.D. Iowa 2008).............. 14, 15

*Grimes v. Fairfield Resorts, Inc.*, 331 Fed. Appx. 630 (11th Cir. 2007)........................ 3

*Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773 (8th Cir. 2013)............................... 10

*Hansberry v. Lee*, 311 U.S. 32 (1940)................................................................ 3

*Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587 (7th Cir. 2021) ............................ 16

*Hudock v. LG Elec. U.S.A., Inc.*, 12 F.4th 773 (8th Cir. 2021) ................................ 13

*In re MasterCard Int'l Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468 (E.D. La. 2001)...... 12

*In re Tetracycline Cases*, 107 F.R.D. 719 (W.D. Mo. 1985)........................................ 8

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) .......................................... 15

*Jenkins v. Pech*, 8:14CV41, 2015 WL 3658261 (D. Neb. June 12, 2015)....................... 8

Case 2:23-cv-04043-BCW   Document 72   Filed 07/14/23   Page 3 of 22

*Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271 (D. Mass. 2000)................................. 8

*Kostamo v. Brorby*, 95 F. Supp. 806 (D. Neb. 1951)..................................................... 12

*Lawrence v. NYC Med. Practice, P.C.*, 2021 WL 2026229 (S.D.N.Y. May 20, 2021) ................. 5

*Luiken v. Domino's Pizza, LLC*, 705 F.3d 370 (8th Cir. 2013)........................................ 2

*Owen v. Gen. Motors Corp.*, 533 F.3d 913 (8th Cir. 2008).................................... 11, 12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)................................................ 7

*Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) ................................. 11, 13

*Prantil v. Arkema Inc.*, 986 F.3d 570 (5th Cir. 2021)................................................ 16

*Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251 (D. Utah 2018) ............................ 7

*Ruffu v. Johnson & Johnson, Inc.*, 181 F.R.D. 341 (E.D. Tex. 1998) ........................... 14

*State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855 (Mo. banc 2008) ...................... 13

*State of Minn. v. U.S. Steel Corp.*, 44 F.R.D. 559 (D. Minn. 1968)................................ 9

*Thorne v. U.S. Bancorp*, CV 18-3405, 2021 WL 1977126 (D. Minn. May 18, 2021) ................. 6

*Thorogood v. Sears, Roebuck*, 547 F.3d 742 (7th Cir. 2008) ...................................... 2

*Tucker v. Gen. Motors LLC*, 58 F.4th 392 (8th Cir. 2023) ......................................... 11

*U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860 (8th Cir. 1978)...................................... 3

*Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003)...................... 3, 6

*Vitello v. Natrol, LLC*, 50 F.4th 689 (8th Cir. 2022)............................................. 11

*Wal-Mart v. Dukes*, 564 U.S. 338 (2011) .................................................. 1, 2, 3, 9

*White v. Just Born, Inc.*, No. 2:17-CV-04025-NKL, 2018 WL 3748405 (W.D. Mo. Aug. 7, 2018)

............................................................................................................. 13

*Wooley v. Jackson Hewitt, Inc.*, 2011 WL 1559330 (N.D. Ill. Apr. 25, 2011) ................. 5

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)........................... 9

**Statutes**

RSMo. § 313.004 ................................................................................................................. 12

RSMo. § 434.030 ............................................................................................................... 2, 4

RSMo. § 558.002 ................................................................................................................... 4

RSMo. § 558.011 ................................................................................................................... 4

**Rules**

15 CSR 60-9.030(1) ............................................................................................................. 11

Fed. R. Civ. P. 23 ........................................................................................................ passim

<u>**DEFENDANTS MOHAMMED ALMUTTAN AND MALLY, INC.'S SUGGESTIONS IN**</u>
<u>**OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**</u>

Defendants Mohammed Almuttan ("Almuttan") and Mally, Inc. ("Mally") (collectively, "Defendants") respectfully oppose Plaintiffs' Motion for Class Certification. (Doc. 30).

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs fall woefully short. Plaintiffs filed their motion while dispositive motions remain pending (*see* Docs. 28, 37, and 41) and no defendant has filed an answer.

Relying solely on their Complaint, Plaintiffs fail to meet the requirements for class certification. Plaintiffs' claims are ill-suited to class adjudication, necessitating highly fact-specific inquiries as to class membership and damages of each class member. Recent discovery conducted by Defendants confirms Plaintiffs are inadequate class representatives; in under-oath testimony, Plaintiffs concede their relationships with the devices at issue and objectives differ from potential class members. Further, Plaintiffs cannot show common evidence can answer common questions. Moreover, individual issues predominate. As such, this Court should deny Plaintiffs' motion.

## I.     STATEMENT OF FACTS

Plaintiffs are seven individuals who allege they have spent more money than they have received back playing amusement devices owned and distributed by Defendant Torch Electronics, LLC ("Torch"). (*See* Doc. 1 at 2 and 17–21). Plaintiffs allege Almuttan owns and operates Mally, which in turn owns and operates a convenience store, and that three Torch devices are located at Mally's store. (*See id.* at 4–6). Plaintiffs seek to recover what they have allegedly lost (plus statutory penalties) based on their theory the devices are illegal slot machines under Missouri law. Plaintiffs assert three counts on behalf of a putative class: Civil RICO (Count I), Violations of the

1

Missouri Merchandising Practices Act ("MMPA") (Count II), and Money Lost under § 434.030, RSMo. (Count III). (*See generally* Doc. 1 at 27-42.)

Plaintiffs filed this lawsuit on March 3, 2023. (*See generally id.*). No defendants have answered; instead, all have filed motions to dismiss. (*See* Docs. 28, 29, 37, 38, 41, and 42). During briefing on those dispositive motions and before any certification-related discovery, on May 5, 2023, Plaintiffs filed their motion for class certification. In their motion, Plaintiffs move under Rule 23(b)(3) to certify a class of persons defined as follows:

> All natural persons who deposited money into any electronic gaming device owned or operated by Torch Electronics, LLC, in the State of Missouri and not located on the premises of a Missouri-licensed casino on any one or more days on or after March 3, 2018 and who received back following their play an amount of money less than the amount deposited that day.

(Doc. 30 at 1–2.)

## II. LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Dukes*, 564 U.S. at 348. To "justify a departure from that rule, a class representative must be part of the class *and possess the same interest and suffer the same injury* as the class members." *Id.* at 348–49 (cleaned up) (emphasis added). Plaintiffs have "the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013) (citation omitted). This Court is to exercise "caution" before certifying a class. *Thorogood v. Sears, Roebuck*, 547 F.3d 742, 746 (7th Cir. 2008).

Plaintiffs seek certification of a Rule 23(b)(3) damages class action; accordingly, they must establish numerosity, commonality, typicality, adequacy of representation, predominance of common questions of law or fact, and the superiority of a class action over other procedures. *See* Fed. R. Civ. P. 23(a) and (b)(3). "A party seeking class certification must affirmatively demonstrate

2

his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original). Plaintiffs bear the burden of proving the class should be certified by convincing the Court, "after a rigorous analysis," all four requirements under Rules 23(a) and 23(b)(3) are satisfied. *See id.*; *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

## III. ARGUMENT

### A. Plaintiffs are Not Adequate to Represent the Class

#### 1. Plaintiffs' Interests Are Adverse to Those of the Class

The Rule 23(a)(4) adequacy requirement is not satisfied if the named plaintiffs "have interests antagonistic to those of the class." *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978). Because class action representatives seek to bind non-litigants to a judgment, constitutional due process requires their interests align with absent class members. *See Hansberry v. Lee*, 311 U.S. 32, 45 (1940). "[F]or purposes of analyzing whether any antagonistic interests exist between the proposed representatives and the rest of the class, the defendant does not have to show actual antagonistic interest; the potentiality is enough[.]" *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1194 (11th Cir. 2003) (quotation marks omitted). That is true here.

First, Plaintiffs seek to remove Torch's devices from the stream of commerce. (*See, e.g.,* Doc. 36 at 14). But Plaintiffs' proposed class would potentially include people who regularly use and enjoy Torch's devices. Indeed, Plaintiffs concede there may be many people who use Torch's devices who do not want them removed. (Bolden Depo. at 39:3–19; Cordaro Depo. at 37:6–14, 39:5–14; Romano Depo. at 30:15–31:24; McGee Depo. at 43:16–20; Weaver Depo. at 53:23–55:6). Those Class members have interests adverse to Plaintiffs. *See Grimes v. Fairfield Resorts, Inc.*, 331 Fed. Appx. 630, 633 (11th Cir. 2007) (affirming denial of class certification where "a significant number of class members enjoy the very programs about which Plaintiffs complain").

Second, Plaintiffs have little or no interest in recovering money. Plaintiff McGee testified she only wants the machines removed or for users to recover their change when using a Torch machine. (McGee Depo. at 41:7–15, 43:6–20). Plaintiff Romano wants the devices removed and is not hoping to obtain money. (Romano Depo. at 27:6–16). Plaintiff Bolden wants the devices removed and hopes "to recover some of [her] losses." (Bolden Depo. at 38:6–11). Plaintiff Cordaro wants the devices removed. (Cordaro Depo. at 18:22–19:4). Plaintiff Weaver seeks compensation but primarily wants the devices removed. (Weaver Depo. at 42:18–43:9). Plaintiff Wilson wants the devices removed and does not care if he "make[s] any money off of [this lawsuit]." (Wilson Depo. at 44:5–17). Yet, the Complaint seeks treble damages, including damages of absent class members "believed cumulatively to exceed $5,000,000," as well as the money Plaintiffs and the class "lost playing Torch's slot machines." (Doc. 1 at 36 and 41). Plaintiffs' interests are not aligned with class members who, per the Complaint, seek to recover millions of dollars.

Third, a conflict between Plaintiffs and the proposed class threatens to violate constitutional rights of absent class members. Plaintiffs' claims are premised on Torch's devices being illegal "gambling devices." Thus, Plaintiffs must establish that use of a Torch device constitutes illegal gambling. (*See, e.g.,* Doc. 1 at 22 (identifying as a "common question" whether playing Torch's devices is gambling); *id.* at 31 (alleging that playing Torch's devices constitutes gambling under Missouri law)). In fact, Plaintiffs claim to have committed the crime of gambling when they used the Torch devices. (*See* Doc. 35 at 17 ("Yes, Consumers were gambling."); Bolden Depo. at 53:25–54:3; Cordaro Depo. at 57:23–58:5; Weaver Depo. at 63:3–12).

Plaintiffs' theory inherently risks criminal prosecution for every class member. Under Section 572.020, anyone who "knowingly engages in gambling" is guilty of a misdemeanor. Misdemeanors are punishable by jail time and fines. *See* RSMo. §§ 558.011, 558.002.1. To be

clear, Defendants' position is that Torch devices are not "gambling devices." But *Plaintiffs' theory* demands *Plaintiffs prove* Torch devices *are illegal gambling devices*—meaning Plaintiffs and prospective class members are criminal gamblers. If Plaintiffs prevail, prospective class members are necessarily—even if unwittingly—admitting to criminal conduct by joining the class action.

Further, Plaintiffs' claims that they committed a crime exposes them to defenses of unclean hands and *in pari delicto*—rendering a class action untenable. *See, e.g., Wooley v. Jackson Hewitt, Inc.*, 2011 WL 1559330, at *9 (N.D. Ill. Apr. 25, 2011) (cleaned up) (*in pari delicto* defense was "eminently colorable, which is all that Defendants need to show to defeat adequacy under Rule 23(a)(4), for even an arguable defense renders inadequate a proposed class representative"). This applies to every Plaintiff—several who contend they committed crimes.

### 2. Plaintiffs are Inadequate as to Claims Against Almuttan and Mally

None of the Plaintiffs are adequate class representatives concerning claims against Almuttan and Mally. Plaintiffs Bolden, Romano, and Wilson do not know whether they were injured by Almuttan or Mally. (Bolden Depo. at 21:8–20; Romano Depo. at 14:20–16:4; Wilson Depo. at 114:5–10). Plaintiff McGee visited Mally's but never played a Torch device there, and has no firsthand knowledge of Almuttan. (McGee Depo. at 22:4–23:19). Plaintiff Weaver claims she played a Torch device at Mally's but has no knowledge of Almuttan and, when asked if he injured her, responded, "If he's the owner of the -- a machine, then yes." (Weaver Depo. at 25:17–28:1). Plaintiff Cordaro insisted he was suing Almuttan because he owns Torch, directly contradicting the allegations in the Complaint. (Cordaro Depo. at 24:24–25:1).

To be adequate class representatives, Plaintiffs must "have substantially the same claims against Defendants." *Lawrence v. NYC Med. Practice, P.C.*, 2021 WL 2026229, at *10 (S.D.N.Y. May 20, 2021). Plaintiffs Bolden, Romano, and Wilson admittedly do not have any claims against Almuttan or Mally and are therefore inadequate as to claims against them. Plaintiffs Cordaro and

McGee have never played a Torch device at Mally's and are therefore inadequate as to claims against Mally. And Plaintiff Cordaro is inadequate as to claims against Almuttan as his mistaken belief that Almuttan owns Torch directly contradicts both reality and the allegations in the Complaint. Plaintiff McGee is inadequate as to claims against Almuttan as she has no personal knowledge of him. Plaintiff Weaver is inadequate for claims against Almuttan as she also believes he may be liable if he owns a Torch device, contradicting the allegations against Almuttan in the Complaint. As such, Plaintiffs are inadequate as to any claims against Almuttan and Mally.

Plaintiffs cannot satisfy adequacy and the proposed class cannot be certified. *See Thorne v. U.S. Bancorp*, CV 18-3405, 2021 WL 1977126, at *2 (D. Minn. May 18, 2021) (where some class members would be harmed by the relief sought, there is a "fundamental conflict" defeating adequacy); *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 697 (S.D. Fla. 2006) (class certification not warranted where some class members would have potential exposure for illegality under civil RICO); *Valley Drug Co.*, 350 F.3d at 1189 ("fundamental conflict" precludes certification where class representatives' "interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members").

Finally, Plaintiff Christensen is inadequate for an independent reason: she failed to appear for her deposition. Torch filed a deposition notice setting the deposition on June 7, 2023. (Doc. 52). All counsel were present, but Christensen was not. A class representative must have "a willingness and ability to participate in discovery." *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387, 394 (N.D. Ill. 2006) (internal citation omitted). Christensen's failure to appear has prejudiced Defendants' ability to respond, as Defendants have limited information upon which to evaluate her adequacy. As such, this Court should exclude Christensen from serving as class representative. *See, e.g., Chado v. Nat'l Auto Inspections, LLC*, 2019 WL 1981042, at *6 (D. Md. May 3, 2019).

6

### B.    The Class Is Not Ascertainable

It must be possible in theory and feasible in practice to discern who is in a class. *See Barfield v. Sho-Me Power Elec. Co-op.*, 11-CV-04321-NKL, 2013 WL 3872181, at *12 (W.D. Mo. July 25, 2013). Plaintiffs implicitly ask the Court to certify an *opt-in* class, as there is no way to identify the persons who meet the definition proposed by Plaintiffs without asking individuals to opt-in. However, Rule 23(b)(3) does not allow for opt-in classes. Further, Plaintiffs' proposed class creates untenable manageability issues requiring individualized findings of fact to determine if any given person is a viable class member. These problems prohibit certification.

Plaintiffs' proposed class includes everyone who, within a five-year span, on any given day, put more money into Torch's devices than they received back that day. (*See* Doc. 36 at 9). As Plaintiffs stated in their original Suggestions in Support, "there is no ready source of individual contact information for most class members" and the locations where Torch's devices are "do not collect contact information on the consumers who use the devices." (*See* Doc. 32 at 27). While the subsequent brief Plaintiffs filed does not address these problems, Plaintiffs' 29-page brief did, and its proposal was the creation of a website "to encourage visitors who believe they are part of the class" to enter contact information, giving class counsel a list of people to contact and to ask them to spread the word about the class action to others. (*See* Doc. 32 at 28-29).

Plaintiffs propose an opt-in class where individuals must affirmatively act to be included. This is impermissible. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) ("Unlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything."); *Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251, 1256, n. 31 (D. Utah 2018) ("no court has ever certified an opt-in class under 23(b)(3), and courts have denied certification of classes for which plaintiffs request an opt-in provision.").

Due process requires an opt-out opportunity. *See Phillips Petroleum Co.*, 472 U.S. at 812.

Given the lack of a way to identify the class members, many—likely, a majority of—members of the class would never receive notice and thus never receive the opportunity to opt out. The "class" would be an abstraction only, which fails to satisfy Rule 23(b)(3). *See Barfield*, 11-CV-04321-NKL, 2013 WL 3872181, at *12; *In re Tetracycline Cases*, 107 F.R.D. 719, 728 (W.D. Mo. 1985) ("the proposed class [can]not be amorphous, vague, or indeterminate"); *Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271, 278 (D. Mass. 2000) ("a class must be unambiguously defined"). Further, Plaintiffs' class theory would require individual factual inquiry into every purported class member. It is not enough to have played a device; one must have spent more money than they received back. This cannot be determined without people attesting to facts about when they played and what their alleged gains and losses were. The result would be a complex set of determinations necessary to determine class membership. Class certification is inappropriate in such situations. *See Jenkins v. Pech*, 8:14CV41, 2015 WL 3658261, at *11 (D. Neb. June 12, 2015) (ascertainability requires a "process that does not require much, if any, individual factual inquiry").

Plaintiffs' proposed class definition is illogical and will lead to administrative and individualized problems. What if a prospective class member played a Torch device on day 1 and lost but went back to play a Torch device on day 2 and won more than was previously lost? That person would have no injury, but according to Plaintiffs' analysis, would still be a class member. Torch should be entitled to any setoffs, but to determine class member status, whether there is injury, and set-off requires individualized fact-intensive inquiry. Because Plaintiffs' proposed class is an abstraction that cannot be ascertained without requiring absent members to act and would require individualized fact finding to evaluate class membership, it cannot be certified.

## C. The Class Action Device is Not Superior Because the Central Legal Issues about State Gambling Laws Are Better Resolved Without Reference to a Class

Rule 23(b)(3) superiority, requiring courts to consider "difficulties likely to be encountered

in the management of a class action." Rule 23(b)(3)(D). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (cleaned up).

A state case to determine whether Torch devices violate Missouri law is pending. Resolving a contested question of state law through a Rule 23(b)(3) class action is clumsy at best. This issue will be resolved in the Circuit Court of Cole County, Case No. 21AC-CC00044, which is currently set for trial in July. *See State of Minn. v. U.S. Steel Corp.*, 44 F.R.D. 559, 576 (D. Minn. 1968) ("The 'superiority' criteria of 23(b)(3) explicitly permits the court to look at the existence of other law suits when deciding whether a class action should be maintained."). Adjudicating a matter of Missouri statutory interpretation is more efficiently handled in the pending state case. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 371 (4th Cir. 2014) ("the court should consider how the dominance of state law issues may affect the suitability of this litigation in a federal forum").

### D. Commonality, Typicality, and Predominance are Not Satisfied Because of the Individualized Determinations Required by Plaintiffs' Claims

Rule 23(b)(3) is "designed for situations in which class-action treatment is not as clearly called for." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (alterations omitted). Accordingly, courts must "take a close look at whether common questions predominate over individual ones." *Id*. (quotation marks omitted). Courts "must undertake a 'rigorous analysis' that includes examination of what the parties would be required to prove at trial." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010); *see also Dukes*, 564 U.S. at 352 (commonality analysis considers whether there is "some glue" such that the class action will produce a common answer to the crucial merits-based questions). Plaintiffs' claims fail because significant fact issues requiring individualized adjudication will remain even after resolving Plaintiffs' claims.

### 1. RICO Claim

Plaintiffs seek to recover the money Plaintiffs and the putative class spent playing Torch's devices, along with other statutory relief. Plaintiffs' theory is that Torch's devices are illegal such that Torch's distribution of them constitutes promotion of gambling. (*See* Doc. 1 at 31). Plaintiffs allege this implicates RICO's prohibition on conducting an enterprise through a pattern of racketeering, and allege they were damaged by playing. (*See id*. at 31–32, 34, and 35–36).

Plaintiffs lack standing to bring this claim. (*See* Docs. 38 at 4–7 and 59 at 1–4). These problems are compounded for civil RICO allegations on behalf of a putative class. A class cannot be certified unless *each class member* has standing. *See Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778–79 (8th Cir. 2013). Plaintiffs lack standing because they voluntarily played the Torch devices and any losses are "self-inflicted wounds." (Doc. 38 at 9) (quoting *Adell v. Macon County Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1238 (M.D. Ala. 2011)). Every Plaintiff who appeared for deposition admitted to voluntarily playing Torch devices. (Bolden Depo. at 40:11–16; Cordaro Depo. at 34:18–25; McGee Depo. at 44:6–10; Romano Depo. at 25:5–7; Weaver Depo. at 28:17–21; Wilson Depo. at 39:24–41:22). And the exception recognized in other courts—but not the Eighth Circuit—for allegations of fraud or dishonesty does not apply. Each Plaintiff admitted they did not read or rely on any written information on or relating to the devices. (Bolden Depo. at 14:8–15:1; Cordaro Depo. at 21:4–23:9; McGee Depo. at 20:25–21:18; Romano Depo. at 16:14–22; Weaver Depo. at 30:13–31:9; Wilson Depo. at 92:7–93:4). Plaintiff Cordaro looked for a decal to identify certified gaming machines but never found one. (Cordaro Depo. at 21:8–14).

Each Plaintiff admitted others may have different reasons for playing, and most admitted there is no way to know what motivated someone to play without asking. (Bolden Depo. at 29:1–19; Cordaro Depo. at 36:13–24; McGee Depo. at 33:13–21; Romano Depo. at 20:16–21:8; Weaver Depo. at 39:14–19; Wilson Depo. at 39:20–23). Plaintiffs cannot state a viable civil RICO claim—

and they should not be allowed to pursue such claims on behalf of a class. *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664–65 (9th Cir. 2004) (denying class certification of civil RICO claim in part "[d]ue to the unique nature of gambling transactions" which require inferences to determine why someone played the games); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 144 (3d Cir. 1998) (where causation required findings class members were addicted to nicotine, certification was improper because addiction is a "highly individualistic inquiry").

### 2. MMPA Claim

Plaintiffs must prove: (1) they purchased merchandise from Defendants (2) for personal, family or household purposes and (3) suffered an ascertainable loss of money or property (4) as a result of an act declared unlawful under the MMPA. *See Tucker v. Gen. Motors LLC*, 58 F.4th 392, 396–97 (8th Cir. 2023). Courts use "Missouri's long-standing 'benefit of the bargain'" rule to determine if a plaintiff has suffered ascertainable loss, which evaluates the difference in value between what was represented and received. *See Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022). Causation "is a necessary element of an MMPA claim." *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008). Here, resolution of Plaintiffs' claims would not provide a single answer to the question of whether class members suffered ascertainable loss caused by violations.

Plaintiffs allege they purchased "merchandise" by playing. (*See* Doc. 1 at 37). To connect the alleged "purchases" with an unfair practice, Plaintiffs allege the "Net Payout %" of the devices is a "material fact" that a reasonable consumer would consider important, but that the "Net Payout %" was below those established under Missouri Gaming Commission ("MGC") regulations. (*See id*. at 37–39). Plaintiffs allege the machines violate gambling laws, causing "substantial injury to consumers." (*Id*. at 38). Plaintiffs also allege the software was visually enticing, "suggesting an exaggerated possibility of winning money," constituting a "deceptive format" under 15 CSR 60-

9.030(1). (*See id.* at 39). Plaintiffs allege their damages consist of the money inserted or, alternatively, the difference in money they made and what they would have made if the "Net Payout %" was consistent with MGC regulations. (*See id*. at 39-40).

Plaintiffs present two theories of ascertainable loss. First, they claim injury arises out of the illegality of the devices. This is essentially the same as Plaintiffs' civil RICO claim; it fails to offer a theory of *how* Torch's machines caused the "injury," where the injury is money voluntarily spent playing games. *See Owen*, 533 F.3d at 922 (MMPA claims require causation between the alleged violation and ascertainable loss); *In re MasterCard Int'l Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 496 (E.D. La. 2001) ("Although plaintiffs cry out as victims in this case, they are in a precarious position because of their own voluntary acts of internet gambling. Plaintiffs' own acts of...playing electronic casino games, are all intervening causes that break the chain of causation with respect to the defendants' alleged activities, even if they were illegal.").

Plaintiffs' second theory is that the devices were deceptive. Plaintiffs' primary theory is that MGC regulations requiring a "Net Payout %" provide a standard that Torch should have met. But MGC's rulemaking authority is legislatively limited to regulating riverboat casinos and bingo at bingo halls. *See* RSMo. § 313.004.1 and .4. Torch devices are not found in any "excursion gambling boat[s]" nor do they allow users to play bingo. "It is a well recognized principle of jurisprudence that all persons are conclusively presumed to know the law." *Kostamo v. Brorby*, 95 F. Supp. 806, 807 (D. Neb. 1951). Thus, Plaintiffs and prospective class members knew or should have known the "Net Payout %" formula does not regulate Torch devices. This cannot be a basis for alleged deception. Additionally, every Plaintiff deposed confirmed they never saw any advertisement or statements of "Net Payout %" when playing Torch devices. (Bolden Depo. at 14:8–15:1; Cordaro Depo. at 21:4–23:9; McGee Depo. at 20:25–21:18; Romano Depo. at 16:14–

22; Weaver Depo. at 30:13–31:9; Wilson Depo. at 92:7–93:4).

Even if it had merit, this theory cuts against certification. Plaintiffs' theory is the regulations governing gaming devices on gambling boats *should* apply to Torch's devices, but that does not answer whether any class member suffered an ascertainable loss—which requires that they received something different than what they were promised. Critically, any class member who, like Plaintiff Cordaro, uses the "Prize Viewer" feature on the device knows exactly their chances of winning. (Cordaro Depo. at 70:20–72:19). There is no ascertainable loss in such instances. *See White v. Just Born, Inc.*, No. 2:17-CV-04025-NKL, 2018 WL 3748405, at *4 and 6 (W.D. Mo. Aug. 7, 2018) ("consumers who knew how much empty space was in Just Born's candy boxes but purchased them anyway suffered no injury"; "whether the slack-fill in Just Born's candy packaging violates the MMPA will be susceptible to a common answer . . . However, the question of whether any MMPA violation injured each class member will require individualized inquiry. . . . [I]f an individual knew how much slack-fill was in a candy box before he purchased it, he suffered no injury.") (citing *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 862 (Mo. banc 2008) (consumers who purchase Diet Coke despite knowing of misleading marketing "**suffered no injury**") (emphasis original)); *Hudock v. LG Elec. U.S.A., Inc.*, 12 F.4th 773 (8th Cir. 2021).

Plaintiffs' theory that the visual appeal of the devices exaggerated the chance of winning fares even worse, as what each class member believed the chance of winning based on visualizations is highly individualized. *See Poulos*, 379 F.3d at 668 ("The vast array of knowledge and expectations that players bring to the machines ensures that the 'value' of gambling differs greatly from player to player, with some people playing for 'entertainment value' or for any number of other reasons as much as to win. Consequently, we conclude that classwide circumstantial evidence would not suffice to prove causation in this case.").

Finally, this Court should decline to certify an MMPA class because the basis for federal jurisdiction, Plaintiffs' civil RICO claims, is not appropriate for certification. *See Ruffu v. Johnson & Johnson, Inc.*, 181 F.R.D. 341, 344 (E.D. Tex. 1998) (declining to certify class on state law claims where only basis for federal claims, civil RICO, were not appropriate for class treatment).

### 3. Section 434.030 Claim

Plaintiffs' statutory "gambling losses" claim is ill-suited to class treatment. The statute provides a cause of action to persons who lost money gambling, but only if brought within three months. For each claim, there are issues concerning the viability of such claims, but the claims *overwhelmingly* turn on what losses occurred during a short period. This is an individualized issue, and Plaintiffs have not proposed any method for calculating such losses on a class-wide basis. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("respondents' model falls far short of establishing that damages are capable of measurement on a classwide basis. Without presenting another methodology, respondents cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class.").

A certified class for this claim would turn into an administrative quagmire. Plaintiffs allege, "Torch owns and operates thousands of additional . . . machines … throughout Missouri." (*See* Doc. 1 at 6). Even assuming there are viable Section 434.030 claims, each such claim turns on individual issues concerning when, where, and how much. Answers to these questions would result in an unstable situation for resolving the pleaded claims, particularly because the owners of many locations are not named as defendants. In short, because individualized inquiries would predominate under this claim, it cannot be certified under Rule 23(b)(3).

### E. Numerosity is not Satisfied

"The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gries v. Standard Ready Mix Concrete, L.L.C.*, 252 F.R.D. 479,

484 (N.D. Iowa 2008). "In order to satisfy this prerequisite, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Id.* at 485 (citing *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001)). Here, Plaintiffs allege the number of Torch *devices* in Missouri and estimates of the number of times *Plaintiffs* have used Torch devices. (*See* Doc. 36 at 10). But Plaintiffs' class includes only people who used Torch devices but "who received back following their play an amount of money less than the amount deposited that day." (*Id.* at 9). Plaintiffs have introduced no evidence of how many individuals actually used Torch devices and, specifically, lost money on a given day—and Plaintiffs have the burden.

Another factor in considering numerosity "is the judicial economy arising from avoidance of multiplicity of actions." *Gries*, 252 F.R.D. at 487. However, there is no evidence that similar claims will be brought in separate actions if this class is not certified. Indeed, all Plaintiffs deposed were recruited by attorney Karl Lemp, who represents many in unrelated matters. Plaintiffs explained Lemp informed them about this lawsuit and referred them to class counsel. (Bolden Depo. at 22:2–23:2; Cordaro Depo. at 16:25–18:21; McGee Depo. at 27:25–30:4; Romano Depo. at 51:20–52:2; Weaver Depo. at 16:1–17; Wilson Depo. at 38:13–39:15). None independently sought counsel to represent them related to their use of Torch devices. And Plaintiffs have not pointed to any other similar lawsuits. As such, there is simply no reason to conclude that certifying this class will promote judicial economy or that there are sufficiently numerous class members.

## F. Plaintiffs Have Produced No Expert Evidence Supporting Class Certification

Plaintiffs have not identified any expert witness to offer opinions regarding methodologies for ascertaining class-wide damages or how Torch devices are illegal or deceptive. Defendants doubt it is possible for Plaintiffs to offer expert opinion testimony that would withstand *Daubert* scrutiny with respect to ascertaining damages on a class-wide basis. And Plaintiffs seek class certification before Defendants, or the Court, can assess such methodology. This is fatal to

Plaintiffs' motion. *See Prantil v. Arkema Inc.*, 986 F.3d 570 (5th Cir. 2021) (vacating class certification because district court failed to analyze "considerations affecting the administration of trial" and instructing courts to "detail[] the evidence the parties may use to prove or defend against liability and its commonality to all class members"); *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587 (7th Cir. 2021) (district court erred in certifying class because it improperly relied on expert opinion before ensuring the opinion "lived up to the standard of *Daubert* and Rule 702"). Plaintiffs do not rely on expert opinions regarding methodologies for resolving issues or damages questions on a class-wide basis. "An assessment of the reliability of Plaintiffs' scientific [or expert] evidence for certification cannot be deferred." *Prantil*, 986 F.3d at 576.

## IV.   Conclusion

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs' Motion for Class Certification (Doc. 30), and that the Court grant any additional and further relief the Court deems just and proper under the circumstances.

Respectfully submitted,

*Margulis Gelfand, LLC*

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
STONE T. HENDRICKSON, #74384
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
ian@margulisgelfand.com
**Counsel for Mohammed Almuttan and Mally, Inc.**

**Certificate of Service**

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will

provide notice of filing to all counsel of record.

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
STONE T. HENDRICKSON, #74384
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
ian@margulisgelfand.com
***Counsel for Mohammed Almuttan and
Mally, Inc.***