

# PohlmanUSA
## Court Reporting and Litigation Services

Joshua Wilson

June 7, 2023

Patrick Romano, et al.

vs.

Torch Electronics, LLC, et al.

## Page 38

BY MR. GELFAND:
Q You list a number of gas stations.
Starting in paragraph 3, going all the way to paragraph 6.
A Yes.
Q Is it fair to say that none of these locations is Mally?
A Yes.
Q In connection with this document you say that you want to be considered a class representative in this federal lawsuit; is that correct?
A Yes.
Q How did you first get involved in this lawsuit?
A Well, I was talking with my family attorney and -- talking business and asking him how his business was. We got to talking about machines, and I was like, yeah, I play.
Q So to be clear, and I'm not asking you about any privileged conversations you've had with your counsel, but did you approach your family attorney with the idea that you wanted to sue Torch Electronics, Mr. Miltenberger, Warren Oil Company, Mohammed Almuttan, Mally, Inc., and Rami Almuttan?
A Did I approach him with the idea of wanting

## Page 39

to sue?
Q Yes. Was that your idea?
A No.
Q Whose idea was it?
A Well, like I said, I was talking with my attorney. He referred me over to Mr. Miller here.
Q So, in other words, without getting into privileged communications, it was your attorney's idea to file a lawsuit?
    MR. MILLER: He said he was referred to another attorney.
BY MR. GELFAND:
Q But you did admit that it wasn't your idea to file a lawsuit; correct?
A Correct.
Q Now, you testified a few, 45 minutes ago about the reasons that you played the Torch devices over the last two years; correct?
A Yes.
Q Would you agree with me that the reasons you played differ from the reasons that some other people play?
A Yes.
Q And, in fact, the amount of money, for example, that you've put into the device on any given

## Page 40

day, obviously that was a voluntary decision that you made that may differ from decisions other people made; correct?
A I don't know if it was voluntary.
Q Who forced you to play a Torch machine?
A I got more into, I guess more into an addiction, you could say.
Q Have you ever sought help for a gambling addiction?
A No.
Q Have you ever sought any treatment or gone to a gambling addiction provider?
A No.
Q Have you ever put yourself on a list that Missouri has for people who are concerned they may have gambling addictions and want to be prohibited from casinos?
A No.
Q Do you gamble at other establishments? Casinos? Racetracks? Online betting?
A A bit.
Q How frequently?
A Maybe at the casino once or twice a year.
Q How about the racetracks?
A No.

## Page 41

Q Never?
A Uh-uh.
Q Have you ever engaged in any illegal gambling with bookies or anything like that?
A No.
Q So are you saying that playing the Torch device every time you played it was not voluntary?
A Well, like I said, it became more of a addiction.
Q Let's be clear for a second. No one put a gun to your head; correct?
A No.
Q No one forced you to play; correct?
A No.
Q No one threatened that something bad would happen to you or your family or your friends if you played, correct, or if you didn't play; correct?
A No.
Q So you're not really disputing that it wasn't voluntary. You're just saying that you believe that you had an addiction; correct?
A Yes.
Q When you decided to file this lawsuit as a possible class representative, do you know any of the other plaintiffs named on this lawsuit?

11 (Pages 38 to 41)

PohlmanUSA Court Reporting
(877) 421-0099   www.PohlmanUSA.com
Case 2:23-cv-04043-BCW   Document 72-6   Filed 07/14/23   Page 2 of 5

Page 42:

1  A  Yes.
2  Q  Do you know Patrick Romano?
3  A  No.
4  Q  Do you know Krystal Christensen?
5  A  Yes.
6  Q  How do you know Krystal Christensen?
7  A  She's my girlfriend.
8  Q  How long have you and Krystal Christensen
9  been dating?
10 A  Two, two and a half years.
11 Q  So were you and Ms. Christensen dating
12 throughout the entire time that you claim you played
13 Torch devices?
14 A  Yes.
15 Q  What does Ms. Christensen do for a living?
16 A  She's a assistant manager at a gas station.
17    MR. CRAIG:  I'm sorry.  What was that?
18    THE WITNESS:  She's an assistant manager at
19 a Circle K gas station.
20 BY MR. GELFAND:
21 Q  Did you ask her if she wanted to be
22 involved in this lawsuit?
23 A  Yes.
24 Q  When?
25 A  Well, it was shortly after I got -- talked

Page 43:

1  with Mr. Miller here.
2  Q  Approximately when would that have been?
3  A  The exact day -- I don't remember the exact
4  day.
5  Q  Within the past year?
6  A  Yes.
7  Q  Within the past six months?
8  A  Yes.
9  Q  So beginning of 2023 at some point?
10 A  I was going to say, how far are we into
11 2023?
12 Q  June 7th.
13 A  Yes.
14 Q  Did you play Torch devices together with
15 Ms. Christensen?
16 A  No.
17 Q  Ever?
18 A  No.
19 Q  Meaning, your answer is no, you've never
20 played Torch devices with Ms. Christensen?
21 A  Yes, yes, we never played together.
22 Q  Do you know Jeffrey Cordaro?
23 A  No.
24 Q  Do you know Carmen Weaver?
25 A  No.

Page 44:

1  Q  Do you know Monica McGee?
2  A  No.
3  Q  Do you know Mary Bolden?
4  A  No.
5  Q  What are you hoping to get out of this
6  lawsuit?
7  A  What am I hoping to get out of it?
8  Q  Yeah.
9  A  Get these machines out of the easily
10 reached public.
11 Q  Were you promised any money?
12 A  No.
13 Q  Are you hoping to make any money?
14 A  Honestly, I don't care.
15    (Court Reporter interruption.)
16    THE WITNESS:  I said honestly I didn't care
17 if I make any money off of it.
18 BY MR. CRAIG:
19 Q  During the time period that you played
20 Torch devices did you timely file federal and state
21 tax returns?
22 A  As far as like just your regular W-2?
23 Q  Your tax returns, your federal 1040 U.S.
24 individual income tax return.
25 A  No.  Last year I was late in filing my tax

Page 45:

1  returns.
2  Q  Have you filed your tax return for tax year
3  2021?
4  A  Not yet.
5  Q  Have you ever claimed gambling income on
6  tax returns?
7  A  Gambling income?
8  Q  Yes.
9  A  No.
10 Q  Have you ever claimed gambling losses on
11 tax returns?
12 A  No.
13 Q  Have you ever claimed a dime of losses that
14 you claim you've lost from using Torch devices on any
15 tax return?
16 A  No.
17 Q  Did you have to fill out financial
18 disclosures in connection with your family law
19 matter, divorce?
20 A  Can you repeat that?
21 Q  Did you have to fill out financial
22 disclosures in connection with your family law
23 matter?
24 A  I think I did.  I think they had me fill
25 some out.

**Page 90**

1  A  Jefferson County.
2  Q  And what's your wife's full name?
3  A  It is Melissa Wilson.
4  Q  What's her maiden name?
5  A  Hanna.
6  Q  Does she go by her maiden name or does she
7  still go by Wilson?
8  A  I don't know.
9  Q  And then you mentioned that there was
10 currently an order of protection that was in force
11 against you.  Is that order, did it come from the
12 same court out of the same divorce proceeding?
13 A  I believe so.
14 Q  So Jefferson County again?
15 A  Yes.  I believe so, yes.
16 Q  And I take it it was your wife that made
17 the request for the order of protection?
18 A  Yes.
19 Q  And I'm not asking you for the veracity or
20 what you did in it or anything like that, but do you
21 know what were the grounds that your wife stated for
22 her reason for trying to get the order of protection?
23 A  No, I don't know the grounds of everything,
24 no.
25 Q  And is the order of protection, it was

**Page 91**

1  entered, so it is in force against you currently?
2  A  I'm not sure of all the technicality on it
3  because, like I said, everything's still, still being
4  hashed out.
5  Q  Well, I mean, as far as you're aware, are
6  you still supposed to adhere to an order of
7  protection today?
8  A  As far as the still supposed to be today, I
9  have no idea.  I just know that we decided just to go
10 our separate ways and not want to see each other
11 anymore.
12 Q  The Torch devices that you allege you
13 played, how do you know that they were in fact Torch
14 devices?
15 A  They have the Torch emblem on the front of
16 the machine.
17 Q  Are you aware that there are other vendors
18 that make similar machines and place them in
19 locations in the State of Missouri?
20 A  That other vendors make other machines,
21 yes.
22 Q  That function in a similar manner.  I'm not
23 saying identical, but.
24 A  Yes.
25 Q  Are you aware of any occasions when those

**Page 92**

1  other vendors might place a Torch label on their own
2  machines for whatever reason?
3  A  No.
4  Q  Okay.  You just saw a torch label and
5  assumed it was a Torch machine?
6  A  Like I say, it has a logo on there.
7  Q  And did you read any -- did you ever
8  notice, on any Torch machine that you have played,
9  any sort of writing or documentation on the machine
10 other than on the screen, the electronic screen
11 itself with like writing in print?
12 A  I'm sorry.  Can you ask that again?
13 Q  Yeah.  So I'm not talking about the screen
14 itself that would display the game, but on the
15 machine itself, you said you saw a Torch label.  Did
16 you see any other sort of labeling or writing that
17 was on the Torch devices that you've played?
18 A  The main one was the Torch logo that I
19 always seen.
20 Q  So no instructions or game play details?
21 Nothing like that?
22 A  I don't know.  No.
23 Q  Not that you can recall?
24 A  (Shaking head.)
25 Q  Is that a yes?

**Page 93**

1  A  Yeah, I don't know.
2  Q  Well, as you sit here today, you can't
3  recall seeing those things.  Is that your testimony?
4  A  Yes.
5  Q  Why is it that you've chosen to sue just
6  Torch Electronics as a vendor when, as you say, you
7  understand that there are other vendors that place
8  similar machines throughout the State of Missouri?
9  A  Because they were the ones I would play.
10 Q  So you never played any other machine
11 except Torch machines?  Is that what your testimony
12 is?
13 A  As far as the ones in the gas stations and,
14 yes.
15 Q  Have you seen any news articles or any news
16 stories even recently about sports betting in the
17 State of Missouri?
18 A  No.
19 Q  Have you ever followed any news that
20 relates to the Missouri legislature potentially
21 regulating video lottery terminals or Torch devices?
22 A  No.
23 Q  If I told you that legislation had come up
24 and been proposed a number of times now at the
25 Missouri legislature to regulate Torch devices and

24 (Pages 90 to 93)

PohlmanUSA Court Reporting
(877) 421-0099   www.PohlmanUSA.com
Case 2:23-cv-04043-BCW   Document 72-6   Filed 07/14/23   Page 4 of 5

## Page 114

    1   correct me if I'm wrong, that you've never interacted
    2   in any way, shape, or form with Mohammed Almuttan or
    3   Rami Almuttan; correct?
    4       A    Correct.
    5       Q    So it's fair to say that, sitting here
    6   today, you're not claiming to be injured by those
    7   four people, even if you are claiming to be injured
    8   by Torch Electronics and/or Steven Miltenberger;
    9   correct?
    10      A    Correct.
    11          MR. GELFAND:  Thank you.  I have no further
    12  questions at this time.
    13          MR. MILLER:  We will read.
    14          MR. CRAIG:  He'll read and sign?
    15          MR. MILLER:  Yeah.
    16          MR. CRAIG:  Okay.
    17          THE VIDEOGRAPHER:  All right.  That
    18  concludes today's deposition.  We are off the
    19  record.
    20          MR. CRAIG:  Madam Court Reporter, we would
    21  take an electronic transcript, full and mini,
    22  please.
    23          MR. GELFAND:  And I can go ahead and just
    24  email you our request.  Thank you.
    25          MR. MILLER:  Same thing.  I'll email.

## Page 115

    1           (Deposition concluded at 2:30 p.m.)

## Page 116

    1                       CERTIFICATE
    2
    3           I, Tina Givens, Registered Professional
    4   Reporter, DO HEREBY CERTIFY that, prior to the
    5   commencement of the examination, JOSHUA WILSON was duly
    6   remotely sworn by me to testify to the truth, the whole
    7   truth and nothing but the truth.
    8           I DO FURTHER CERTIFY that the foregoing is a
    9   verbatim transcript of the testimony as taken
    10  stenographically by me at the time, place, and on the
    11  date set forth, to the best of my ability.
    12          I DO FURTHER CERTIFY that I am neither a
    13  relative nor employee nor attorney nor counsel of any of
    14  the parties to this action, and that I am neither a
    15  relative nor employee of such attorney or counsel, and
    16  that I am not financially interested in the action.
    17
    18
    19              "/s/TINA M. GIVENS"
    20             NCRA Registered Professional Reporter
    21             Missouri Certified Court Reporter #481
    22             Illinois Shorthand Reporter No. 084.004731
    23
    24             Dated:  June 15, 2023
    25

## Page 117

    1                   INSTRUCTIONS TO WITNESS
    2
    3           Please read your deposition over carefully
    4   and make any necessary corrections.  You should state
    5   the reason in the appropriate space on the errata sheet
    6   for any corrections that are made.
    7           After doing so, please sign the errata sheet
    8   and date it. You are signing same subject to the changes
    9   you have noted on the errata sheet, which will be
    10  attached to your deposition.
    11          It is imperative that you return the original
    12  errata sheet to the deposing attorney within thirty (30)
    13  days of receipt of the deposition transcript by you.
    14          If you fail to do so, the deposition
    15  transcript may be deemed to be accurate and may be used
    16  in court.

30 (Pages 114 to 117)

PohlmanUSA Court Reporting
(877) 421-0099    www.PohlmanUSA.com
Case 2:23-cv-04043-BCW   Document 72-6   Filed 07/14/23   Page 5 of 5