IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
Central Division

| | |
|---|---|
| PATRICK ROMANO, *et al.*, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TORCH ELECTRONICS, LLC, *et al.*, <br><br> Defendants. | Case No.: 2:23-cv-04043-BCW <br><br> JURY TRIAL DEMANDED |

# REPLY SUGGESTIONS IN SUPPORT OF
# PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Joe D. Jacobson #33715
JACOBSON PRESS P.C.
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Tel: (314) 899-9789
Direct: (314) 899-9790
Fax: (314) 899-0282
Jacobson@ArchCityLawyers.com

Gene J. Brockland #32770
Christopher O. Miller #70251
AMUNDSEN DAVIS LLC
120 S. Central Ave., Suite 700
Clayton, Missouri 63105
Tel: (314) 719-3700
Fax: (314) 719-3721
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com

Attorneys for plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

REPLY ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Plaintiffs are adequate and are not in conflict with the class. . . . . . . . . 1

    A.    Plaintiffs would be adequate class representatives . . . . . . . . . . . . 1

    B.    There is no conflict between plaintiffs and the class . . . . . . . . . . . 3

II.    This class action is clearly superior to deferring to Torch's pending declaratory judgment action . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    The class is ascertainable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

**Cases**   **Pages**

*Biben v. Card*, 789 F. Supp. 1001 (W.D. Mo. 1992) . . . . . . . . . . . . . . . . . . . . . . . 9

*Boca Raton Comm. Hosp., Inc. v. Tenet Healthcare Corp.*,
238 F.R.D. 679 (S.D. Fla. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) . . . . . . . . . . . . 9

*City of Aurora v. Spectra Comm. Grp., LLC*,
592 S.W.3d 764 (Mo. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Emerald Pointe, LLC v. Taney Cty.*, No. 6:21-cv-03222-RK,
2022 U.S. Dist. LEXIS 151870 (W.D. Mo. Aug. 24, 2022) . . . . . . . . . . . . . . . . 6

*Grimes v. Fairfield Resorts, Inc.*,
331 Fed. Appx. 630 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Harris v. Missouri Gaming Comm'n*, 869 S.W.2d 58 (Mo. 1994) . . . . . . . . . . . 5

*Hays v. Nissan N. Am., Inc.*, 4:17-CV-00353-BCW,
2021 U.S. Dist. LEXIS 47208, 2021 WL 912262
(W.D. Mo. Mar. 8, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672 (7th Cir. 2013) . . . . . . . . . . 9

*In re Potash Antitrust Litig.*, 159 F.R.D. 682 (D. Minn. 1995) . . . . . . . . . . 3, 4

*In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598 (D. Minn. 2001) . . . . . 2

*In re Tetracycline Cases*, 107 F.R.D. 719 (W.D. Mo. 1985) . . . . . . . . . . . . . 7–8

*In re Workers' Comp.*, 130 F.R.D. 99 (D. Minn. 1990) . . . . . . . . . . . . . . . . . . . 8

*Lauber v. Belford H.S.*, 09-CV-14345, 2012 WL 5822243
(E.D. Mich. Jan. 23, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McKeage v. TMBC, LLC*, 847 F.3d 992 (8th Cir. 2017) . . . . . . . . . . . . . . . . . . 7, 8

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) . . . . . . . . . . . . . . 9

*Planned Parenthood Ark. & E. Oklahoma v. Selig*,
313 F.R.D. 81 (E.D. Ark. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120 (Mo. App. 2009). . . . . . . . 7

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
821 F.3d 992 (8th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966) . . . . . . . . . . . . . . . . . . . 2

*Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753 (8th Cir. 2020) . . . . . . . . . . . . 3

*Williston v. Vasterling*, 536 S.W.3d 321 (Mo. App. 2017) . . . . . . . . . . . . . . . . 6

**Statutes**

Chapter 313, RSMo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Section 407.020, RSMo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Section 434.030, RSMo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7

Section 572.010, RSMo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Section 572.020, RSMo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Other Authorities**

1 *Newberg on Class Actions* § 3:30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1 *Newberg & Rubenstein on Class Actions* § 3:67 (6th ed.) . . . . . . . . . . . . . . 2

3B *Moore's Federal Practice* 23.06-2 (2d ed. 1993 & Supp.1994) . . . . . . . . . . 3

**REPLY ARGUMENT**

In their oppositions to the motion for class certification, defendants admit Torch's slot machines are all basically the same, *Torch Opp.* [Doc. 70] at 2 n.2, and assert that a single legal question — Are Torch's slot machines illegal under Missouri law? — is decisive on all claims. *Id.* at 16; *Mally Opp.* [Doc. 72] at 9.

Plaintiffs suggest defendants thereby establish that this is a proper case for class certification with both a common central factual question and as a common central legal issue.[1] Based on the oppositions, the only remaining issues for class certification are whether plaintiffs are adequate class representatives, whether a class action is a superior mode for resolving the dispute, and whether any peripheral issues, like ascertainability, stand against class certification.

**I.    Plaintiffs are adequate and are not in conflict with the class.**

There are two main ways a plaintiff can be an inadequate class representative. The first relate to the plaintiff's personal characteristics and seriousness towards the case. The second is if there are conflicts between the interests of the plaintiff and those of the absent class members. Neither exists here.

**A.    Plaintiffs would be adequate class representatives.**

In their declarations filed with the motion for class certification, plaintiffs demonstrate their understanding of their proposed role as class representatives.

---

[1] Plaintiffs do not agree that illegality is a necessary element to their Merchandising Practices Act ("MPA") or Section 434.030 gambling loss claims, but agree that it is necessary for the RICO claim and is an important common legal issue for the case as a whole.

1

Plaintiffs offered themselves for immediate deposition on class issues and defendants deposed all but one. The depositions demonstrate plaintiffs' genuine understanding of their role as a would-be class representative and their dedication to the class. *See deposition excerpts collected as Exhibit 1* (understanding of role), *Exhibit 2* (non-voluntariness of gambling), *Exhibit 3* (children gambling on Torch slot machines), *Exhibit 4* (use of prize viewer), and *Exhibit 5* (typicality).

A plaintiff need not have a sophisticated understanding of the case to be a class representative. "Adequacy is satisfied … if the plaintiff has some rudimentary knowledge of her role as a class representative and is committed to serving in that role in the litigation." 1 *Newberg & Rubenstein on Class Actions* § 3:67 (6th ed.). "Class representatives in complex cases are not required to have … detailed level of firsthand knowledge of facts or law …" *In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 609 (D. Minn. 2001).

The inability of plaintiffs to recall each defendant and his or its role in the gambling enterprise is neither surprising nor disqualifying. This is a complex case. The complaint is 42 pages plus exhibits and names multiple defendants, none of whom are personally known to plaintiffs. [Doc. 1]. Courts have found persons with far less knowledge than plaintiffs to be adequate class representatives. *See, e.g., Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966) (Polish immigrant with limited English adequate representative in a securities fraud class action despite not understanding statements in the complaint, having little

2

or no knowledge of what the lawsuit was about, and being unable to name defendants nor describe their misconduct).

**B.     There is no conflict between plaintiffs and the class.**

Defendants attempt to concoct a conflict, pointing to plaintiffs' testimony that there may be class members who would want to continue gambling using Torch's slot machines, and arguing that plaintiffs' focus on removing illegal slot machines from their communities may conflict with the desire of class members who might favor maximizing their financial recovery.

These are not "conflicts" that blocks class certification. "[P]erfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. … To forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 767 (8th Cir. 2020). The conflict of divergent theories that might maximize the recovery of different members of the class "is greatly outweighed by shared interests in establishing defendant's liability." *Id.* at 768. One cannot "dismiss a class action based upon a substantial legal claim merely because some members of the class prefer to leave the violation of their rights unremedied." *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D. Minn. 1995), citing 3B *Moore's Federal Practice* 23.06-2 at 23-182 (2d ed. 1993 & Supp.1994).

Even if some class members want to continue to gamble on Torch's illegal slot machines — a hypothetical defendants asked plaintiffs at their depositions

3

— that would not be a conflict preventing class certification. *Accord Lauber v. Belford H.S.*, 09-CV-14345, 2012 WL 5822243, (E.D. Mich. Jan. 23, 2012). In *Lauber*, plaintiff filed a RICO class action on behalf of individuals who received fake diplomas from a fake high school. *Id*. at *1. Defendants argued intra-class conflict prevented class certification because some members would not want their fake diplomas to be disclosed as worthless and might be afraid of losing their jobs if it was disclosed. *Id*. at *6. The court rejected the argument. It would not "deny class certification on the chance that some class members will choose to remain victims of fraud." *Id*. at *7, citing 1 *Newberg on Class Actions* § 3:30.

The same is true here. That some victims may want to continue gambling on Torch's illegal slot machines does not prevent certification. *Potash Antitrust*, *supra* at 692.

This contrast with defendants' cases where class members profited from defendant's misconduct or engaged in it themselves. In *Grimes v. Fairfield Resorts, Inc.*, 331 Fed. Appx. 630 (11th Cir. 2007), plaintiffs timeshare owners sued, claiming defendant's policy changes allowing others to access their timeshares reduced their value. *Id*. at 633. The policy changes, however, also granted the timeshare owners access to defendant's other properties. This created an unresolveable conflict between those class members who believed the policy changes reduced the value of their timeshares and those who believed they increased their value, thus preventing class certification. *Id*. Similarly, in *Boca Raton Comm. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679 (S.D. Fla.

4

2006), class certification was denied when some class members engaged in the same racketeering misconduct as the defendant.

Here, defendants contend a conflict arises because if Torch's slot machines are illegal, then gambling on them would be a misdemeanor under Missouri law and class members would not want to be represented by plaintiffs who could expose them to criminal liability. The argument ignores that Section 572.020, RSMo., only criminalizes those who "knowingly engages in gambling," while Section 572.010(4), RSMo., excludes from the definition of "gambling" licensed gambling under Chapter 313, RSMo. The complaint alleges Torch's machines mimic the licensed slot machines. *Complaint* ¶ 46, 66. It does not allege that any plaintiff or class member knew that these were illegal machines. In any case, owning and promoting the illegal slot machines is a very different activity from merely being the sucker who plays them. Thus, unlike in *Boca Raton*, nothing in the record suggests that the class includes members engaging in the same "racketeering activity" as defendants.[2]

Plaintiffs willingness to face potential criminal prosecution to protect the interests of the absent class members establishes their dedication and adequacy.

---

[2] Defendants' argument that Torch's slot machines "involve no element of chance" [Doc. 70 at 11] is an argument on the merits and immaterial for class certification. In any case, defendants are wrong. Under Missouri law, "chance" means "something that happens unpredictably without any discernible human intention or direction," *Harris v. Missouri Gaming Comm'n*, 869 S.W.2d 58, 62 (Mo. 1994), abrog. other grounds, *City of Aurora v. Spectra Comm. Grp., LLC*, 592 S.W.3d 764 (Mo. 2019), which describes the consumer's experience playing a Torch slot machine.

5

## II. This class action is clearly superior to deferring to Torch's pending declaratory judgment action.

Defendants argue that the court should not certify a class in deference to Torch's pending declaratory judgment action in which Torch seeks a ruling on the central legal issue of whether its slot machines are illegal under Missouri law. This is a unique argument and is uniquely misguided. No matter what the state court decides it will not resolve the claims of plaintiffs or the class.

On the RICO count, if the court finds the machines illegal, Torch will be bound here by the decision — and perhaps the other defendants will be as well because of their close privity with Torch, *Emerald Pointe, LLC v. Taney Cty.*, No. 6:21-cv-03222-RK, 2022 U.S. Dist. LEXIS 151870, at *23 (W.D. Mo. Aug. 24, 2022) (currently on appeal), citing *Williston v. Vasterling*, 536 S.W.3d 321, (Mo. App. 2017) — but none of the plaintiffs' or the class's claims will be resolved. Another action, a class action, will still be required to determine whether there was a RICO enterprise engaged in a pattern of racketeering activity and all of the other findings necessary to resolve the claims.

And if the court finds the machines to be legal, the RICO claims will still not be resolved because plaintiffs and the class will not be bound by the decision because of the lack of privity between them and any party in the declaratory judgment action. So, again, another class action will be required.

As to the MPA and Section 434.030 claims, neither will be resolved by the decision in the declaratory judgment action. As with RICO, a finding that

6

Torch's slot machines are not illegal will not be binding on plaintiffs or the class. And while it may be the case that illegality is an element of a claim under Section 434.030,[3] it is clear that it is not part of a claim under the MPA. The MPA sweeps far wider than "illegal" conduct and protects consumers from a broad range of deceptive business practices. Section 407.020, RSMo.[4]

Bottom line is that the class action is a superior forum for resolving the issues because the declaratory judgment action will resolve nothing.

## III. The class is ascertainable.

Defendants argue the class is not ascertainable because plaintiffs cannot presently identify all of the class members and because plaintiffs intend to use advertising and other methods to reach out to class members who would then file claims. Defendants mischaracterize the claims process as opting-in.

Defendants are wrong on both arguments.

"A class may be ascertainable when its members may be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). "Ascertainability does not require that a plaintiff must be able to identify all class members at the time of class certification; rather, a plaintiff need only show that class members can be identified." *Planned Parenthood Ark. & E. Oklahoma v. Selig*, 313 F.R.D. 81, 92 (E.D. Ark. 2016); *see also In re Tetra-*

---

[3] Plaintiffs do not concede this. Rather, whether illegality is part of the claim is a merits issue that will require extensive briefing to resolve.

[4] Gambling losses are recoverable under the MPA. *Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120, 131 (Mo. App. 2009).

7

*cycline Cases*, 107 F.R.D. 719, 728 (W.D. Mo. 1985) ("The class need not be so ascertainable from the definition that every potential member can be identified at the commencement of the action"). It is not necessary that every class member obtain a recovery. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,* 821 F.3d 992, 997 (8th Cir. 2016) (reversing denial of certification on ascertainability even though some class members will have no right to recovery).

Our class definition sets objective criteria for identifying class members. Unfortunately, defendants diligently avoided making records identifying their players. Thus class members will need to present themselvese and confirm class membership. A need to review individual attestations to confirm class membership does not defeat certification. *See, e.g., McKeage*, 847 F.3d at 998 (certification affirmed where "intensive file-by-file review" of class member's contracts required); *Hays v. Nissan N. Am., Inc.*, 4:17-CV-00353-BCW, 2021 U.S. Dist. LEXIS 47208 at *9, 2021 WL 912262 (W.D. Mo. Mar. 8, 2021) (class is acertainable if class members can be identified, even if doing so would be burdensome).

Defendants insist plaintiffs have a "cogent plan for identifying class members" based on "opinions by a class notice expert." Defendants' argument goes to manageability, not ascertainablility. Refusal to certify for manageability "is never favored." *In re Workers' Comp.*, 130 F.R.D. 99, 110 (D. Minn. 1990).[5]

---

[5] Plaintiffs have a plan, which includes creating a website for the class, placing signs at each location where Torch slot machines are hosted with information linking to the website, and placing internet ads for the website keyed to the subject matter of the case. *Miller Dec.* [Doc. 30-7] at ¶ 17.

8

This will not be an opt-in class. Membership in the class does not depend on opting-in. Requiring proof of claims is not an opt-in requirement. *Biben v. Card*, 789 F. Supp. 1001, 1006 (W.D. Mo. 1992). Signing up through the website for future individual notice is also not an opt-in. This is designed to help class members by getting them more notice than the constitutionally-required minimum. When individual notice is "not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017); *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 676-77 (7th Cir. 2013) (sticker notices on offending ATMs plus publication provided adequate notice).

## CONCLUSION

This is an appropriate case for class certification. The key issues in the case are common and they predominate over any individual issue. The plaintiffs would be good class representatives. They are not in it for the money: they are in it to protect their communities and the absent members of the class, including the children they see playing these machines in restaurants and elsewhere:

> Q. What are you hoping to get out of this lawsuit?
>
> A. Well, I would like the Torch machines to be removed from my neighborhood because it's affecting my neighborhood, my elderly people. And — and to recover some of my losses.

9

*Exhibit 1* at 5 (testimony of plaintiff Mary Bolden).

> Q. Okay. Ms. McGee, what is it that you want out of this lawsuit?
>
> A. A few things. I seen this kid playing the machine at the gas station, that really bothered me. So either they should remove them, if they're illegal, or have it where the kids can't get to it. …

*Exhibit 3* at 2 (testimony of plaintiff Monica McGee).

> Q. … What do you think the interests of the class are?
>
> A. … And, you know, I want the machines out. That's my personal thing. If I got a dime, zero, I don't care. If them machines were out of there, that would be, you know, Christmas every day for me, and I guarantee a lot of other people.

*Exhibit 1* at 16, 17 (testimony of plaintiff Jeffrey Cordaro).

> Q What are you hoping to get out of this lawsuit? …
>
> A Get these machines out of the easily reached public.
>
> Q Were you promised any money?
>
> A No.
>
> Q Are you hoping to make any money?
>
> A Honestly, I don't care.

*Exhibit 1* at 7 (testimony of plaintiff Joshua Wilson).

The motion for class certification should be granted.

JACOBSON PRESS P.C.

By: /s/ Joe D. Jacobson
Joe D. Jacobson #33715
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Tel: (314) 899-9789
Direct: (314) 899-9790
Fax: (314) 899-0282
Jacobson@ArchCityLawyers.com

and

AMUNDSEN DAVIS LLC

Gene J. Brockland #32770
Christopher O. Miller #70251
120 S. Central Ave., Suite 700
Clayton, Missouri 63105
Tel: (314) 719-3700
Fax: (314) 719-3721
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com

Attorneys for plaintiffs Patrick Romano, Joshua Wilson, Krystal Christensen, Jeffrey Cordaro, Carmen Weaver, Monica McGee, and Mary Bolden

**CERTIFICATE OF SERVICE**

The filing attorney certifies that on August 7, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic case filing system upon all participants in the Court's electronic case filing system.

11