IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PATRICK ROMANO, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:23-CV-04043-BCW |
| ) | |
| TORCH ELECTRONICS, LLC et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court are Defendants Torch Electronics, LLC, Steven Miltenberger, and Warrenton Oil Company's motion to dismiss ("Motion to Dismiss One") (Doc. #28) and Defendants Mohammed Almuttan, Rami Almuttan, and Mally, Inc.'s motion to dismiss ("Motion to Dismiss Two") (Doc. #37). The Court, being duly advised of the premises, grants Motion to Dismiss One (Doc. #28) and grants in part and denies in part Motion to Dismiss Two (Doc. #37).

## BACKGROUND

A. The parties

Plaintiffs Patrick Romano, Joshua Wilson, Krystal Christensen, Jeffery Cordaro, Carmen Weaver, Monica McGee, and Mary Bolden ("Plaintiffs") are individuals who reside in the State of Missouri. (Doc. #1). Plaintiffs filed the instant action on behalf of themselves and those similarly situated. Plaintiffs' motion for class certification is currently pending with this Court. (Doc. #30).

Defendant Torch Electronics, LLC ("Torch") is a Missouri Limited Liability Company. Torch owns and operates thousands of electronic slot machines in the state of Missouri.

1

Defendant Steven Miltenberger ("Miltenberger") is an individual residing in the State of Missouri. Miltenberger is a member of Torch and its highest ranking officer overseeing day-to-day operations.

Defendant Warrenton Oil ("Warrenton Oil") is a Missouri corporation. It owns and operates gas stations and convenience stores throughout the State of Missouri, including approximately 54 locations branded as the "Fast Lane."

Defendants Mohammed and Rami Almuttan (the "Almuttan Brothers") are individuals residing in the State of Missouri. They own and operate gas stations and convenience stores throughout the City of St. louis and St. Louis County.

Defendant Mally, Inc. ("Mally") is a Missouri Corporation. At all relevant times, Defendant Mohammed Almuttan served as Mally's president, secretary, and a member of its Board of Directors. The Almuttan brothers are shareholders of Mally and manage its day-to-day operations.

**B. The Controversy**

Torch installs and operates its slot machines at convenience stores, gas stations, bars, restaurants, and other public establishments throughout the State of Missouri. To do so, Torch makes agreements with the owners of the above-mentioned establishments governing the responsibilities of each party with respect to the slot machine. Relevant here, Torch, through Miltenberger, made such agreements with Warrenton Oil and Mally to operate slot machines at their convenience stores and gas stations. However, Plaintiffs allege, among other things, that the slot machines are illegal and poorly regulated. Plaintiffs also allege that consumers are unable to avoid Torch's slot machines due to their pervasiveness in places of public accommodation and their enticing features. Accordingly, on March 3, 2023, Plaintiffs filed a three-count complaint in

this Court seeking damages and an injunction arising out of their use of Torch's slot machines. (Doc. #1).

The complaint includes other factual allegations applicable to both Plaintiffs' individual allegations and Plaintiffs' class-wide allegations. The specific counts are as follows: Count I, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Count II, violations of the Missouri Merchandising Practices Act ("MMPA"), and Count III, money lost under Mo. Rev. Stat. § 434.030. Each Count appears to be alleged against all Defendants.[1]

On April 28, 2023, Defendants Torch, Miltenberger, and Warrenton Oil filed Motion to Dismiss One arguing for dismissal of Count I and an Order limiting the relief sought under Count III to claims accruing on or after December 2, 2022. (Doc. #28). On May 12, 2023, Plaintiffs filed their response opposing dismissal of Count I but agreeing the Court should enter an Order limiting Count III to claims accruing on or after December 2, 2022. (Doc. #35).

On May 19, 2023, Defendants Mohammed Almuttan and Mally, Inc. ("Mally"), filed Motion to Dismiss Two. (Doc. #37)[2]. As in Motion to Dismiss One, Mohammed Alumttan and Mally also argue the Court should dismiss Count I. As to Count III, Mohamed Alumttan and Mally agree the Court should at least limit the relief sought to claims accruing on or after December 2, 2022. However, Mohammed Almuttan and Mally also argue for outright dismissal of Count III because it alleges a violation of an unconstitutional law, Mo. Rev. Stat. § 434.030.

---

[1] However, Counts I and II are the only counts that explicitly states it is alleged against all Defendants. (Doc. #1). The Court therefore assumes, given the nature of the allegations contained in Count I and Count II, all named Defendants are subject to Count III, as well.
[2] On May 23, 2023, Rami Almuttan filed a motion to join in Motion to Dismiss Two. (Doc. #41). Rami Almuttan's motion does not add any additional argument other than to state that the complaint does not distinguish conduct attributable to himself and conduct attributable to his brother, Mohammed Almuttan. (Doc. #42).

3

On May 28, 2023, Plaintiffs filed an opposition reasserting similar arguments regarding why Count I should not be dismissed. (Doc. #51). Regarding Count III, Plaintiffs argue § 434.030 is not unconstitutional.

Since the parties agree Count III should be limited to claims accruing on or after December 2, 2022, Defendants' motions to dismiss are granted in this respect. Therefore, this Order considers only: (1) whether Count I states a claim upon which relief can be granted, and (2) whether Count III should be dismissed because § 434.030 is unconstitutional.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal based on a plaintiff's failure to state a claim upon which relief can be granted. "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Kelly v. City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016) (citations omitted). "A claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cole v. Homier Dist. Co., Inc., 599 F.3d 856, 861 (8th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Id. (quoting Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005)).

## ANALYSIS

Defendants seek partial dismissal of the complaint under Fed. R. of Civ. P. 12(b)(6). (Docs. #28, #37, & #41). As to Count I, Defendants argue Plaintiffs do not have standing to assert their civil RICO claim. As to Count III, only Defendants Mohammed Almuttan, Rami Almuttan, and Mally argue Mo. Rev. Stat. § 434.030 is unconstitutional.

## A. Count I is dismissed because Plaintiffs do not have standing under 18 U.S.C. § 1964(c).

In both motions dismiss (Docs. #28, #37, & #41), Defendants argue the Court should dismiss Count I because Plaintiffs do not have standing to sue on a civil RICO claim under 18 U.S.C. § 1964(c). Defendants' standing argument is two-fold. First, Defendants argue Plaintiffs cannot satisfy the "injury" requirement because Plaintiffs' alleged gambling losses are not a tangible injury to property or business. Secondly, Defendants argue Plaintiffs cannot satisfy the "proximate cause" requirement because Plaintiffs' independent decision to utilize Torch's slot machines is the proximate cause of their injuries rather than any alleged racketeering activity.

In opposition, Plaintiffs assert they have met both the "injury" and "proximate cause" requirements such that they have standing under § 1964(c). Specifically, Plaintiffs argue that, in combination with their alleged gambling losses, they have also alleged the slot machines are rigged which is sufficient to establish injury under § 1964(c). With respect to causation, Plaintiffs argue Defendants' racketeering activity is the proximate cause of their injuries because the act of utilizing the slot machine is involuntary due to the pervasive placement of the machines in public accommodations.

Title 18 U.S.C. § 1964(c) governs a party's right to assert a civil RICO claim. To establish statutory standing under § 1964(c), a party must show they have "experienced injury to [their] business or property [which] occurred 'by reason of' a RICO violation." Bowman v. W. Auto Supply Co., 985 F.2d 383, 384 (8th Cir. 1993). "A showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest." Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012) (citing Regions Bank v. J.R. Oil Co., LLC, 387 F.3d 721, 728 (8th Cir. 2004)). Furthermore, to prove the injury occurred "by reason" of a RICO violation, a party must show "defendant's violation not only was a 'but for' cause of [the

5

party's] injury, but was the proximate cause as well." Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992); Hemi Grp., LLC v. City of New York, N.Y., 559 U.S. 1, 9 (2010).

Here, Plaintiffs' alleged injury is the money lost due to Plaintiffs' use of Defendants' "illegal gambling" slot machines. (Doc. #1). While the Eighth Circuit Court of Appeals has not yet considered whether losing money while playing an allegedly illegal slot machine constitutes a tangible injury to business or property for standing purposes under § 1964(c), other courts have held that it does not. See Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1087 (9th Cir. 2002) (dismissing similar gambling-based civil RICO claims); Price v. Pinnacle Brands, Inc., 138 F.3d 602, 607 (5th Cir. 1998) (holding entitlement to state law remedies for gambling losses does not satisfy injury requirement for standing on a civil RICO claim); Adell v. Macon Cnty. Greyhound Park, Inc., 785 F. Supp. 2d 1226, 1241 (M.D. Ala. 2011) (finding that illegal gambling losses unaccompanied by allegations of fraud affecting those loses do not qualify as RICO injuries to business or property); Green v. Aztar Corp., No. 02 C 3514, 2003 WL 22012205, at *2 (N.D. Ill. Aug. 22, 2003) ("Courts consistently hold that private plaintiffs alleging injuries resulting from their own gambling cannot establish 'injury to business or property' under RICO."). Specifically, courts have held this way because the purported gambling losses represent a property *interest* rather than an *injury* to property or business as required by § 1964(c). Adell, 785 F. Supp. 2d at 1239. Considering Gomez's tangible injury standard, the Court finds these out of circuit cases persuasive. 676 F.3d at 660.

Accordingly, Plaintiffs have not satisfied the injury requirement for standing purposes under § 1964(c). While Plaintiffs argue courts have found the injury requirement satisfied if a party alleges that the gambling game at issue is rigged, Plaintiffs have not made similar allegations in their complaint. Cf. Adell, 785 F. Supp. 2d at 1239 ("[A] RICO injury may . . . exist[] had there

6

Case 2:23-cv-04043-BCW   Document 76   Filed 08/21/23   Page 6 of 13

been allegations that the gambling activity engaged in by the plaintiff was manipulated[.]"). Instead, Plaintiffs allege "[t]he payout ratio between the cash deposited into Torch's slot machines by consumers and the cash paid out to the consumers (the "Net Payout %") is drastically lower than the minimum standard for slot machines established by 11 CSR 45-5.190[.]" (Doc. #1 at ¶ 67). The complaint further alleges that instead of paying out the funds to consumers, the excess net proceeds are used "to hire lobbyists and contribute to political action committees to influence Missouri lawmakers to enact legislation to legalize its illegal slot machines." (Doc. #1 at ¶ 70). But Plaintiffs do not allege that slot machine itself was rigged "such that [Plaintiffs] did not in fact receive the chance to win that [which] was purchased." Adell, 785 F. Supp. 2d at 1239.

Even if Plaintiffs could satisfy the injury requirement, they cannot show the injury occurred "by reason of" a RICO violation. Bowman, 985 F.2d at 384. Here, Plaintiffs argue the chain of causation is not broken by their use of the slot machines such that Defendants' RICO activity remains the proximate cause of their injuries. Specifically, Plaintiffs state they did not voluntarily use the slot machines at issue because "the slot machines were thrust upon them unwanted, irresistible like the Sirens of Greek Myth." (Doc. #35 at 10). However, Plaintiffs provide no authority to support the contention that their use of the slot machines was involuntary simply because the machines are readily accessible. Rather, the proximate cause of Plaintiffs' purported injury was their "knowing and voluntary gambling[.]" Green, 2003 WL 22012205 at *3; see also In Re Mastercard, 313 F.3d 257, 264 (5th Cir. 2002) (no proximate causation established for gambling-based losses because parties "cannot use RICO to avoid meeting obligations they voluntarily took on."); Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 187-88 (3rd Cir. 2000) (voluntary participation in illegal but non-fraudulent gambling not compensable as plaintiff "can avoid any injury simply by walking away."). Therefore, because Plaintiffs have not

7

satisfied § 1964(c)'s statutory standing requirement, the motions to dismiss (Docs. #28, #37, & #41) are granted as to Count I.

   B. **Count III is limited to claims accruing on or after December 2, 2022, but the motion to dismiss Count III because Mo. Rev. Stat. § 434.030 is denied.**

In Motion to Dismiss Two, Defendants Mohammed Almuttan, Rami Almuttan, and Mally argue Count III should be dismissed because Mo. Rev. Stat. § 434.030 is unconstitutional and therefore Plaintiffs have not stated a claim upon which relief can be granted. (Doc. #37). Specifically, Defendants emphasize § 434.030 allows a party to recover for "any" gambling losses even though the Missouri Constitution has since been amended to legalize certain types of gambling activity. Defendants therefore argue § 434.030 is unconstitutional because it allows recovery even if the gambling activity at issue is constitutionally authorized. In opposition, Plaintiffs argue the Court should not dismiss Count III because a constitutional interpretation of § 434.030 exists, namely, that it only applies to gambling activities not authorized by statute or by the Missouri Constitution.

Federal courts are "bound by decisions of the highest state court when interpreting state law." Progressive N. Ins. Co. v. McDonough, 608 F.3d 388, 390 (8th Cir. 2010). "If the highest state court has not decided [the] issue [federal courts] must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority." Id. (citing Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 534 (8th Cir. 2006)).

Since it appears the issue of § 434.030's constitutionality has not yet been considered by the Missouri Supreme Court after more recent amendments to Missouri's constitution legalizing certain types of gambling, resolution of Motion to Dismiss Two requires this Court to predict how the Missouri Supreme Court would resolve it.

Under Missouri law, a court "presumes a statute is valid and declares it unconstitutional only when the statute's challenger demonstrates a clear violation of the constitution." All Star Awards & Ad Specialties, Inc. v. HALO Branded Sols., Inc., 642 S.W.3d 281, 288 (Mo. 2022). To this end, the party "challenging the validity of the statute has the burden of proving the act clearly and undoubtedly violates the constitution." O'Brien v. Dep't of Publ. Safety, 589 S.W.3d 560, 563 (Mo. 2019) (citations omitted). Furthermore "if one interpretation of a statute results in the statute being constitutional while another interpretation would cause it to be unconstitutional, the constitutional interpretation is presumed to have been intended." Blaske v. Smith & Entzeroth, Inc., 821 S.W.2d 822, 838-39 (Mo. 1991).

Furthermore, in resolving the issue of a statute's constitutionality "canons of statutory construction . . . are employed only when a statute is ambiguous." Wilson v. City of St. Louis, 662 S.W.3d 749 (Mo. 2023), reh'g denied (Apr. 4, 2023) (holding "[c]onstitutional construction is not required if the words at issue are plain and unambiguous.") (citations omitted). To this end, a "statute is ambiguous when its plain language does not answer the current dispute as to its meaning." BASF Corp. v. Dir. of Revenue, 392 S.W.3d 438, 444 (Mo. 2012) (citations omitted).

Section 434.030 states as follows: "[a]ny person who shall lose any money or property at any game, gambling device or by any bet or wager whatever, may recover the same by a civil action." Since the plain language § 434.030 does not resolve the instant dispute, the Court finds the statute is ambiguous. BASF Corp., 392 S.W.3d at 438. Accordingly, the Court next considers extrinsic matters to determine the legislatures intent in adopting § 434.030. Cook v. Newman, 142 S.W.3d 880, 884-87 (Mo. Ct. App. 2004) ("Only when a statute's language is ambiguous or uncertain or if its plain meaning would lead to an illogical result will extrinsic matters, such as the

9

statute's history, surrounding circumstances and objectives to be accomplished through the statute, be considered.").

"Almost every state has some statutory or constitutional provision making wagers illegal to some degree . . . [and] [m]any states also make provision for recovery of money or property paid out as a result of wagering losses." 7 Williston on Contracts § 17:8 (4th Ed.). In enacting such laws, it is generally a legislature's intent "to lessen and if possible prevent gambling . . . [because] wagering agreements in this country have generally been held to be opposed to public policy." Id. Section 434.030 in the "Contracts against Public Policy" chapter of the Missouri Revised Statutes is one such statute. Williams v. Wall, 60 Mo. 318, 320 (1875) ("The central idea of [§ 434.030] . . . is to discourage and suppress gaming by the most effective of all methods," which is to prevent the gambler "from retaining the spoils of his nefarious vocation[.]").

Section 434.030 was last amended in 1953, and its current format, suggests that a party may recover losses due to "any" form of gambling, betting, and/or wagering. § 434.030. Since 1953, however, the Missouri Constitution was amended to authorize certain types of gambling activities subject to certain restrictions. See Mo. Const. art. III, § 39(a) (authorizing bingo in 1980); § 39(b) (authorizing legislature to adopt Missouri state lottery law in 1984); § 39(c) (legalizing betting on horse racing in 1986); § 39(e) (authorizing riverboat gambling on the Missouri and Mississippi Rivers in 1994); § 39(f) (authorizing raffles and sweepstakes conducted by charitable or religious organizations in 1998). While Missouri courts have not yet interpreted § 434.030 in light of these amendments, the Missouri Senate has attempted to add language to § 434.030 specifying it does not apply to gaming losses incurred while participating in constitutionally authorized gambling activities.[3]

---

[3] S.B. 0008, 88th Gen, Ass., 1st Reg. Sess. (Mo. 1995) https://www.senate.mo.gov/95info/bills/SB008.htm (attempting to exclude losses from licensed gaming activities from § 434.030); S.B. 0486, 88th Gen. Ass., 2nd Reg

Chapter 572 of the Missouri Revised Statutes, establishing crimes relative to gambling, provides further guidance in this regard. BASF Corp., 392 S.W.3d at 444 ("[W]hen construing a statute, [the Missouri Supreme Court] considers statutes involving similar or related subject matter when the statutes illuminate the meaning of the statute being construed."). Section 572.010(4) explicitly states that gambling "does not include any licensed activity" or participation in other games already authorized by other sections of Chapter 572. Section 572.015 further notes that "[n]othing in this chapter prohibits constitutionally authorized activities under Article III, Sections 39(a) to 39(f) of the Missouri Constitution." To be clear, Chapter 572 of the Missouri Revised Statutes is not directly controlling as to § 434.030. However, it is illustrative regarding the legislatures intent to differentiate between constitutionally protected activities and illegal gambling activity after the aforementioned amendments to the Missouri Constitution.

It follows, then, that the Missouri legislature intends § 434.030 to apply only to those gambling activities not already authorized by separate statute or by the Missouri Constitution. BASF Corp., 392 S.W.3d at 444 ("It is presumed that consistent statutes relating to the same subject are intended to be read consistently and harmoniously in their many parts."). Accordingly, Defendants Mohammed Almuttan, Rami Almuttan, and Mally have not met their burden to show § 434.030 "clearly and undoubtedly" violates the Missouri Constitution because the Court must presume the Missouri legislature intended this constitutional interpretation. O'Brien, 589 S.W.3d at 563; State ex rel. Kansas City Symphony v. State, 311 S.W.3d 272, 278 (Mo. Ct. App. 2010) (courts "should reject an interpretation of a statute that would render it unconstitutional, when the statute is open to another plausible interpretation by which it would be valid."). Therefore, while

---

Sess. (Mo. 1996) SB486 - Changes to the Gaming Commission Laws (mo.gov) (same); S.B. 0343, 89th Gen. Ass., 1st Reg. Sess. (Mo. 1997) SB343 - Revises Powers of the Missouri Gaming Commission (mo.gov) (same).

11

Count III remains limited to claims accruing on or after December 2, 2022, Defendants Mohammed Almuttan, Rami Almuttan, and Mally's argument to dismiss Count III is denied.

### C. The Court declines to exercise supplemental jurisdiction over the remaining state law claims; therefore, the instant action is dismissed.

In the complaint, Plaintiffs assert jurisdiction is proper "through federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise out of violations of, among other federal statutes, 18 U.S.C. § 1962." (Doc. #1). However, due to the disposition of Count I, the Court no longer has original jurisdiction over the instant action and declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Baker v. Bentonville Sch. Dist., No. 22-2669, 2023 WL 4778203 at *11 (8th Cir. July 27, 2023) ("A district court's decision whether to exercise supplemental jurisdiction over pendent state-law claims after dismissing every claim over which it had original jurisdiction is purely discretionary.") (citations omitted); Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 749 (8th Cir. 2009) ("Where, as here, resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction.") (citations omitted). Therefore, the instant action is dismissed. Accordingly, it is hereby

ORDERED Motion to Dismiss One (Doc. #28) is GRANTED. It is further

ORDERED Rami Almuttan's motion to join (Doc. #41) is GRANTED. It is further

ORDERED Motion to Dismiss Two (Doc. #37) is GRANTED IN PART AND DENIED IN PART. It is further

ORDERED the instant action is DISMISSED.

IT IS SO ORDERED.

DATE: <u>August 21, 2023</u>

<u>/s/ Brian C. Wimes</u>
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT